IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

CHONG LENG LEE,

    Petitioner,

v.                              Case No. 22-CV-620

RANDALL HEPP,

    Respondent.

**RESPONSE OPPOSING PETITIONER'S
MOTION FOR STAY AND ABEYANCE**

Warden Randall Hepp, Respondent, submits this response opposing Petitioner Chong Leng Lee's request to stay litigation of his federal habeas corpus petition and hold it in abeyance while he pursues additional claims in the Wisconsin state courts. Lee has not met any of the requirements for a stay articulated in *Rhines v. Weber*, 544 U.S. 269 (2005), let alone all three. This Court should therefore deny Lee's request.

# ARGUMENT

Pursuant to *Rhines*, district courts may stay a habeas petition and hold it in abeyance while the petitioner seeks to exhaust state-court remedies as to his unexhausted claims. *Rhines*, 544 U.S. at 274–76. However, the Supreme Court in *Rhines* did not suggest that this procedure—known as "stay-and-abeyance"—should be automatic or even commonplace. *See id.* at 276–79.

Rather, the Court declared that "stay and abeyance should be available only in limited circumstances" to avoid undermining the twin goals of the Antiterrorism and Effective Death Penalty Act ("AEDPA"): "reduc[ing] delays in the execution of state and federal criminal sentences" and encouraging petitioners to seek relief from the state courts before turning to the federal courts for relief. *Id.* at 276–77. To that end, district courts should grant requests to stay habeas petitions and hold them in abeyance only if the petitioner makes three showings: (1) "there [is] good cause for the petitioner's failure to exhaust his claims first in state court"; (2) the claims the petitioner wants to exhaust are "potentially meritorious"; and (3) the petitioner has not engaged in "intentionally dilatory litigation tactics." *Id.* at 277–78.

Lee has made none of these three showings. For starters, he fails to demonstrate good cause for his failure to exhaust his claims in state court. *Id.* at 277. In fact, it is unclear from his motion what he means to offer as good cause excusing his failure to exhaust his new claims. He cites a litany of

2

Case 2:22-cv-00620-WCG    Filed 08/02/22    Page 2 of 11    Document 11

hurdles he purportedly faced over the last few years, but he fails to explain how those obstacles stopped him from presenting his claims in state court but did not stop him from raising those claims in a federal habeas petition. (Dkt. 9:1–2.) And while he seemingly blames his appointed appellate counsel for pursuing other claims during his direct appeal instead of those he now wishes to exhaust, Lee fails to explain if he ever consulted appellate counsel about those claims or whether appellate counsel refused to honor his wishes to pursue them. In short, Lee has not demonstrated good cause for his failure to exhaust his newly developed claims in state court.

Second, Lee has not shown that his unexhausted claims are "potentially meritorious." *Rhines*, 544 U.S. at 278. Two of his three unexhausted claims allege that his attorneys were ineffective in their handling of his evidence-destruction claims: (1) he argues that trial counsel—having filed a pretrial motion arguing that the State's destruction of evidence warranted dismissal or the suppression of any in-court identification of Lee by three of the State's witnesses—should have raised an "objection" when the circuit court *granted* the motion in part by excluding those witnesses; and (2) he argues that appellate counsel—despite pursuing a claim on appeal that the circuit court afforded Lee an inadequate remedy for the State's destruction of evidence—should also have raised a separate claim that trial counsel was ineffective for not making such an objection. (Dkt. 1:8, 10.)

3

Those two claims are not "potentially meritorious." *Rhines*, 544 U.S. at 278. To show that his trial counsel was ineffective, Lee had to establish that his attorney's performance was both deficient and prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687–95 (1984). To prove prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Lee fails to explain how his attorneys could be deemed constitutionally ineffective for failing to "object" to the trial court granting Lee's motion in part by preventing the State from calling three witnesses who identified Lee as the shooter in a homicide. Clearly, the argument that dismissal was the appropriate remedy was preserved for appeal by trial counsel, because appellate counsel *did* bring that claim on appeal, and the court of appeals addressed it. (Ex. 1:19–22.) So there was no ineffectiveness of trial counsel in this regard for appellate counsel to allege. Trial counsel had obtained the partial victory on the motion (exclusion) and preserved the issue for appeal that a greater victory (dismissal) was warranted. Lee lost on that issue in the court of appeals, but the argument that Lee's attorneys were ineffective for not making some kind of further "objection" on the issue is utterly frivolous, not potentially meritorious.

4

Case 2:22-cv-00620-WCG    Filed 08/02/22    Page 4 of 11    Document 11

Lee's claim that appellate counsel was ineffective would fail even if appellate counsel had not argued the exclusion-versus-dismissal issue. "[A]ppellate counsel's performance is deficient under *Strickland* only if she fails to argue an issue that is both 'obvious' and 'clearly stronger' than the issues actually raised." *Makiel v. Butler*, 782 F.3d 882, 898 (7th Cir. 2015). "Proving that an unraised claim is clearly stronger than a claim that was raised is generally difficult 'because the comparative strength of two claims is usually debatable.'" *Id.* (quoting *Shaw v. Wilson*, 721 F.3d 908, 915 (7th Cir. 2013)). Failure to raise a claim is prejudicial only if there is a reasonable probability that the outcome of the appeal would have been different had the claim been raised. *Winters v. Miller*, 274 F.3d 1161, 1167 (7th Cir. 2001).

Here, there are at least two reasons that we know there is no reasonable probability that the outcome of Lee's appeal would have been different had appellate counsel argued that trial counsel was ineffective as to the exclusion-versus-dismissal issue. First, as explained above, trial counsel could not be deemed ineffective for obtaining a partial victory and preserving the argument for a greater victory on appeal. Second, given that the Wisconsin Court of Appeals affirmed the circuit court's exercise of discretion in crafting an appropriate remedy short of dismissal, we can safely say that the same court would have held that trial counsel was not ineffective for not making some kind of further "objection" had appellate counsel so argued.

5

Lee's third unexhausted claim is equally meritless and relies on a misrepresentation of the record. To be clear, the judge who presided over Lee's trial and postconviction proceedings neither "testified" nor "became a witness." (Dkt. 1:10.) Rather, as Lee acknowledges, the judge merely explained to the parties that he had no independent recollection about a particular moment at Lee's trial, and he described his routine practice of marking any juror questions as exhibits. (Dkt. 1:10.)

To prove a due process violation, the party claiming judicial bias must overcome the strong presumption that the adjudicator acted honestly and with integrity. *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). The judge presiding over Lee's trial and postconviction proceedings is assumed to be a person "of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances." *Id.* at 55 (citation omitted).

"Due process is violated not only where an adjudicator is biased in fact, but also where a situation presents a particularly high probability of bias. *Withrow*, 421 U.S. at 47, 95 S. Ct. 1456. The inquiry as to whether such a probability exists is an objective one." *Alston v. Smith*, 840 F.3d 363, 368 (7th Cir. 2016). The issue, pertinent here, is whether the average judge in the position of the judge who presided over Lee's proceedings was likely to be neutral, or whether there was a potential for bias sufficiently strong to

overcome the presumption of honesty and integrity. *Id.* A due process violation is proven on the rare occasion when there is an impermissibly high risk that the adjudicator is biased, such as when "the adjudicator has a pecuniary interest in the outcome," or has been the target of abuse or criticism by a party. *Withrow*, 421 U.S. at 47.

Lee does not explain how describing general courtroom practices or conceding a lack of memory rendered the presiding judge biased, nor does he explain why appellate counsel could be deemed constitutionally ineffective for failing to bring such a claim. (Dkt. 1:10–11.) And to the extent that he believes that the judge was biased, he procedurally defaulted that claim because he failed to fairly present it to the state courts through one complete round of state-court review, and the Wisconsin courts would not hold such a claim procedurally barred. *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004).

In summary, Lee has not shown that his unexhausted claims are potentially meritorious.

Third and finally, Lee has seemingly engaged in "intentionally dilatory litigation tactics." *Rhines*, 544 U.S. at 278. Recall that Lee's state direct appeal proceedings concluded over two years ago, when the Wisconsin Supreme Court denied his petition for review on July 15, 2020. (Ex. 2.) He then took over four months to file a petition for certiorari in the Supreme Court, which was denied on May 24, 2021. (Exs. 3:1, 31; 4.) He then waited until May 25, 2022—the day

7

his one-year period of limitations expired—to file his federal habeas petition with this Court. (Dkt. 1.) Lee did not file his state court collateral motion on his new claims until May 11, 2022. (Dkt. 1:4.) That nearly one-year wait does not show diligence. Lee's list of excuses for that delay do not justify taking nearly a year after the Supreme Court denied his petition for certiorari to do anything.

Between the time Lee's certiorari petition was denied on direct review and the time he filed his collateral motion in the state court on his unexhausted claims, he was not spending his time diligently attempting to exhaust his unexhausted claims via a collateral motion. Rather, he was spending his time and energy litigating his separate civil case. (*See* Case No. 21-CV-37.) There, he has used his litigation of *this* habeas action (which he has not been diligently pursuing) as an excuse for needing more time in *that* action. (Dkt. 34 in Case No. 21-CV-37.) Lee is playing both ends against the middle in order to obtain more time in his various cases. The simple fact is that he has not been diligent with respect to his state court collateral motion.

Finding the diligence requirement to be satisfied in a case like this would make the requirement virtually nonexistent. Diligence does not permit a petitioner to intentionally take no action in state court and then file his habeas action on the last day it is due shortly after he files his state court motion on the assumption that the federal court will simply rubber stamp his stay

8

motion. A *Rhines* stay is not intended to be a rubber stamp procedure. It is explicitly intended to be used only in "limited circumstances." *Rhines*, 544 U.S. at 276–77.

Moreover, one cannot ignore that Lee bears the blame for some of the hurdles he has faced. For example, Lee complains that "a majority of his legal paperwork" was "either lost or destroyed by the prison staff" during a time that he was "sent to segregation for a retaliation issue." (Dkt. 9:1.) Ignoring for the time being that Lee is responsible for his own behavior that landed him in a segregation unit, the very paperwork he filed with this Court reveals that (1) prison staff seized only items that he either failed to properly secure in a locked footlocker or that did not bear his name and number as required under institution rules, and (2) he was advised how to retrieve his paperwork if he could verify that it belonged to him. (Dkt. 9-1:4–5.) Had he simply followed those rules and protocols, there would be no need to hunt down his prior attorney to recover his files. (Dkt. 9:1.)

Additionally, neither the complexity of his legal issues, the restrictions on law library access, nor Lee's supposed COVID-19 diagnoses explain the bulk of his delays. His health service request form suggests that he had been suffering from various symptoms for two months as of January 9, 2022. (Dkt. 9-1:6.) While Respondent is sympathetic to the difficulties in his recovery, Lee does not explain what he was doing between May 24, 2021, and November 9,

9

2021, that prevented him from exhausting his claims in the state courts during that time. Moreover, that he prepared and filed his federal habeas petition in a timely fashion (on the exact last date it was due) reveals that his faculties were perfectly sharp, and any restrictions placed on his law library access did not stop him from exhausting his claims in the state courts; he merely showed no sense of urgency in exhausting his claims until he was ready to file his federal habeas petition. That is not a reason to stay Lee's habeas petition and hold it in abeyance so he can pursue additional claims in the Wisconsin state courts.

In sum, because Lee has failed to satisfy any of the *Rhines* showings, let alone all three, "[a]llowing for a stay in this situation would be contrary to the Supreme Court's directive that 'stay and abeyance should be available only in limited circumstances.'" *Yeoman v. Pollard*, 875 F.3d 832, 838 (7th Cir. 2017) (quoting *Rhines*, 544 U.S. at 277). Accordingly, this Court should deny Lee's request.

# CONCLUSION

This Court should deny Lee's request for stay and abeyance.

Dated this 2nd day of August 2022.

    Respectfully submitted,

    JOSHUA L. KAUL
    Attorney General of Wisconsin

    Electronically signed by:

    <u>s/John W. Kellis</u>
    JOHN W. KELLIS
    Assistant Attorney General
    State Bar #1083400

    Attorneys for Respondent

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-7081
(608) 294-2907 (Fax)
kellisjw@doj.state.wi.us