# SUPREME COURT OF THE UNITED STATES

Case No. _____

---

### CHONG LENG LEE

Petitioner,

vs.

### STATE OF WISCONSIN

Respondent(s)

### ON PETITION FOR A WRIT OF CERTIORARI TO THE

### WISCONSIN COURT OF APPEALS DISTRICT III.

---

### PETITION FOR WRIT OF CERTIORARI

---

CHONG LENG LEE #439266

P.O. BOX 351

WAUPUN, WI 54963

PRO SE

QUESTIONS PRESENTED FOR REVIEW

1.      IS DISMISSAL AVAILABLE TO REMEDY A BRADY VIOLATION AND ALSO DID CHONG
        ESTABLISH A BRADY VIOLATION THAT WARRANTS DISMISSAL?

2.      DOES A YOUNGBLOOD VIOLATION REQUIRE DISMISSAL WHEN BAD-FAITH IS CONCEDED
        BY THE STATE?

3.      DOES THE VIOLATIONS IN THIS CASE REACH THE CRITERIA OF THE DUE PROCESS
        CLAUSE AND STOP CHONG FROM HAVING A FUNDAMENTALLY FAIR TRIAL?

4.      DOES THE POLICE'S ACTIONS BY DESTROYING AND THEN REPLACING OTHER
        EVIDENCE TO SECURE A CONVICTION CONSTITUTE A VIOLATION OF A DEFENDANT''S
        RIGHT TO DUE PROCESS?

5.      DOES THE ABSENCE OF TRANSCRIPTS ENTITLE CHONG TO A NEW TRIAL WHEN THE
        MISSING TRANSCRIPTS ARE NEEDED TO IDENTIFY ERRORS?

6.      DOES THE MISSING TRANSCRIPTS VIOLATE THE COURT REPORTER ACT?

7.      DOES THE MISSING TRANSCRIPTS STOP CHONG FROM HAVING A MEANINGFUL APPEAL
        WHEN APPELLATE ATTORNEY IS DIFFERENT FROM TRIAL ATTORNEY?

I

## LIST OF PARTIES

All parties appear in the caption of the case on the cover page.

## RELATED CASES

There are no other related case to this case in criminal courts.

II

# TABLE OF AUTHORITIES

## CASES CITED

Arizona v. Youngblood,
488 U.S. 51 (1988) ..............................................5,11,14,16,17,19

Brady v. Maryland,
373 U.S. 83 (1963) .....................................................2,5,11

California v. Trombetta,
467 U.S. 479 (1984)....................................................11,13,14

Cost v. State,
417 Md. 360, 10 A. 3d 184 (Md. 2010).........................................15

Gov't of Virgin Islands v. Fahie,
419 F. 3d 249 (3rd Cir. 2005)..............................................2,11

Lolly v. State,
611 A. 2d 956 (Del. 1992)....................................................15

McCarty v. Gilchrist,
646 F 3d 1281 (10th Cir. 2011)..............................................2,15

State v. Greenwold II,
189 Wis. 2d 59, 525 N.W. 2d 294 (Ct. App. 1994).............................15,16

State v. Hahn,
132 Wis. 2d 351, 392 N.W. 2d 464 (Ct. App. 1986)..............................14

State v. Harris,
2008 WI 15, 307 Wis. 2d 555, 745 N.W. 2d 397..................................10

State v. Huggett,
2010 WI App 69, 324 Wis. 2d 786, 783 N.W. 2d 675..............................16

State v. Jordan,
73 Ohio App. 3d 524, 597 N.E. 2d 1165 (1992)...............................12,19

State v. Lang,
176 Ariz. 475, 862 P.2d 235, 245 (Ariz. Ct. App. 1993).......................15

State v. Luedtke,
2015 WI 42, 362 Wis. 2d 1, 863 N.W. 2d 592.................................15,16

State v. Machner,
92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979)...............................23

State v. Oinas,
125 Wis. 2d 487, 373 N.W.2d 463 (Ct. App. 1985)..............................13

State v. Perry,
136 Wis. 2d 92, 401 N.W.2d 748.............................................3,20,24,25

State v. Youngblood,
153 Ariz. 50, 743 P.2d 592 (Ariz. Ct. App. 1986)..................................16

United States v. Agurs,
427 U.S. 97, 96 S. Ct. 2392 (1976)...............................................11

United States v. Chapman,
524 F.3d 1073 (9th Cir. 2008)..................................................2,10

United States v. Davis,
578 F.2d 277 (10th Cir. 1978)..................................................2,10

United States v. Day,
697 A.2d 31 (D.C. 1997)..........................................................15

United States v. Evans,
888 F.2d 891 (D.C. Cir.1989)......................................................2

United States v. Pasha,
797 F.3d 1122 (D.C. Cir. 2015)................................................2,11

United States v. Roberts,
779 F.2d 565 (9th Cir. 1986).....................................................14

STATUTES, RULES, AND OTHER SOURCES

18 U.S.C. § 1512                                                    2

28 U.S.C. § 753                                                    2, 20

Wis. Const. Art. I § 21.(1)                                         20

Wis. Stat. §809.62 (1r)(c)(2)                                        2

Norman C. Bay, Old Blood, Bad Blood, and Youngblood:  Due Process, Lost Evidence
and the limits of Bad faith, 86 Wash. U.L. Rev. 241, 296 (2008)...............15

Dismissal of Case Against Defendants With Prejudice As Discovery Sanctions Against
State, 10 A.L.R. 7th Art. 6 (2016)...........................................15

IV

# TABLE OF CONTENTS

OPINIONS BELOW ............................................................1

JURISDICTION ..............................................................1

CONSTITUTIONAL AND STATUTORY PROVISIONS....................................2

STATEMENT OF THE CASE .....................................................3

REASONS FOR GRANTING THE WRIT .............................................9

CONCLUSION ................................................................

# INDEX TO APPENDIX

APPENDIX A      Wisconsin Court of Appeals District III decision
                390 Wis. 2d 426, 939 N.W. 2d 427 (table), 2020 WI App 6.

APPENDIX B      Decision denying motion to reconsider.

APPENDIX C      Motion to reconsider.

APPENDIX D      Written order denying admissibility of "beat this case." (r.95)

APPENDIX E      Letter to Stephanie Thao referencing "beat this case." (R.167)

APPENDIX F      Question from jury and court's response.  (R.271)

APPENDIX G      Excerpt from May 25, 2015 motion hearing. (R.328)

APPENDIX H      Excerpt from September 29, 2015 motion hearing. (R. 330)

APPENDIX I      Exerpt from January 8, 2016 motion hearing. (R.331)

APPENDIX J      Excerpt from February 3, 2016 oral ruling.  (R.332)

APPENDIX K      Excerpt from February 26, 2018 Machner hearing. (R.396)

APPENDIX L      Excerpt from May 1, 2018 Machner hearing. (R.397)

APPENDIX M      Qral ruling on Postconviction motion. (R.398)

APPENDIX N      Order denying Petition For Review to Wisconsin State Supreme
                Court.

Case 2:22-cv-00620-WCG    Filed 08/02/22    Page 6 of 31    Document 11-3

IN THE

SUPREME COURT OF THE UNITED STATES

PETITION FOR WRIT OF CERTIORARI

Petitioner respectfully prays that a writ of certiorari be issued to review the judgment below.

OPINIONS BELOW

The opinion of the highest state court to review the merits appears at (APP.A) to the petition and is reported at 390 Wis. 2d 426, 939 N.W. 2d 427 (table), 2020 WI APP 6.

JURISDICTION

The date on which the highest state court decided on this case was December 17, 2019. A copy of that decision appears at APP A.

A timely petition for rehearing was thereafter denied on the following date January 7, 2020, and a copy of that order appears at APP. B and C.

A timely petition for review was thereafter denied by the Wisconsin Supreme Court on July 15, 2020, and a copy of that order appears at APP. N.

The Jurisdiction of this Court is invoked under 28 U.S.C. 1257 (a).

1

## CONSTITUTIONAL AND STATUTORY PROVISIONS

This case presents intriguing issues of first impression and will resolve unanswered questions in United States law and laws of Wisconsin. See Court reporter Act, 28 U.S.C. §753, Due Process Clause, Fifth and Fourteenth Amendment of the United States Constitution, 18 U.S.C §1512, Federal Rules of Criminal Procedures, Federal Rules of Appellate Procedures, and Wis. Stat. §809.62 (1r) (c) (2).

First, this case will resolve the issue of whether dismissal is an available remedy for a **Brady** violation (**Brady v. Maryland,** 373 U.S. 83, 87 (1963)), a question which has many jurisdiction divided. Some courts have suggested that a new trial is the harshest sanction available. See e.g., **United States v. Davis,** 578 F. 2d 277, 280 (10th Cir. 1978); **United States v. Evans,** 888 F. 2d 891, 897 n. 5 (D.C. Cir. 1989). Other jurisdictions have concluded that dismissal is an available remedy to a **Brady** violation. See. e.g., **U.S. v. Chapman,** 524 F. 3d 1073, 1086 (9th Cir. 2008); **U.S. Pasha,** 797 F. 3d 1122 1139 (D.C. Cir. 2015); **Gov't. of Virgin Islands v. Fahie,** 419 F. 3d 249, 254-55 (3rd Cir. 2005).

Second this case will also address whether dismissal is required where police destroy key evidence in bad-faith, an issue that has divided many courts. See **McCarty v. Gilchrist,** 646 F. 3d 1281, 1288 (10th Cir.)(collecting cases).

This case also presents a third issue that is also suitable for review. The absence of a complete transcript of the trial, and does it mandate reversal when it makes appellate review more difficult, and whether the particular

2

omission from the transcript prejudices the defendant's right to appeal. The Wisconsin Court of Appeals decision in this case is in conflict with their leading case. See **State v. Perry,** 136 Wis. 2d 92, 99, 101, 401 N.W. 2d 748 (1987). It is also in conflict with 28 U.S.C.A §753 (b); Fed. R. App. P. 10 (c).

## STATEMENT OF THE CASE

In the early morning of December 8, 2013, police responded to a call that there was a possible gunshot fired at the Luna Lounge in Appleton, WI. R. 401:62-63, 89. When officers arrived, they found the victim on the ground near the entrance to the bar with blood on the left side of his head. Id. at 68-69, 75. The victim died from that gunshot wound. R. 403; 39, 53. A security gaurd at Luna was in close proximity to the shooting, and he directed law enforcement to two Asian individuals, wearing white vest and white hat, who quickly ran out the door and turned right. R. 401;70, 95, 101-03, 119-20. Law enforcement reviewed the footages from traffic cameras and cameras from inside the bar and identified these three individuals as Joe Thor, Paur Lee (aka Paul), and Phong Lee. These suspects ran toward a dumpster area, and police collected two items of clothing from inside that dumpster, a white vest, and a Chicago Bulls hat. Id. at 82-88. Joe Thor and Phong Lee admitted to discarding those clothing. R. 402: 143; 406; 41-42.

Police narrowed in on Paur Lee (hereinafter Paul), who was wearing a white jacket and ran with his hand in his pocket. R. 406: 163; 404:62; and 401:85. Police learned that just before the shot, Paul was in a verbal and

3

physical altercation with the victim and as Paul punched the victim a gun went off simultaneously. R. 401:223-24. Security camera footage revealed that Paul had an object in his hand, and police believed this item to be a gun. R. 339:164-65. Police arrested Paul for the homicide. R. 331:30.

At the time Paul was arrested police had no information to indicate that the defendant Chong Lee (hereinafter Chong), was the shooter. R. 399:131. Over the course of multiple police interrogations, police repeatedly accuse Paul of being the shooter, told Paul that several individuals identified Paul as the shooter, and told Paul that he would be going to prison for life. Id. at 160-61, 164-65. Paul was told that the only option for him not to be charged was for him to name the shooter. Id. at 165-66. Paul denied any involvement. One of the officers (SGT. Chue Lee Thao) then suggest to Paul, "your brother Chong is the shooter." After a few attempts of denying Chong was the shooter, Paul was told, "either you did it or your brother did it." Id. at 205, 207. Paul then said Chong was the shooter. Thereafter, police told Paul, "we've built this great case against you. Now all we gotta do is get rid of that case to show it wasn't you, that it was in fact, your brother Chong." R. 243:6. Police then arrested Chong. Id. at 87.

Chong was subsequently charged with the homicide. R. 1. The complaint was based exclusively on various witnesses who claimed that Chong confessed to the crime. R.1. Despite the fact that there were at least 150 patrons in Luna that evening, the complaint referenced no eyewitnesses identifying the shooter. R. 328:66. Specifically on December 11, 2013, the same-day Paul was arrested, police interviewed three witnesses to the shooting: Ryan Thao, Mickey Thao, and Watou Lee. All three of these individuals identified the shooter and gave descriptions of the shooter's clothing, personal characteristics, and direction of travel. None of these witnesses said the

4

shooter was Chong and Mickey Thao knew Chong personally as he grew up with Chong. He thought that Chong was still in prison. R. 328:31-50; 330:85-86; 331:34, 36-39.

The interviews with these three witnesses were recorded, and the recordings were maintained in evidence for seven to eight months after the defendant was charged with the homicide. However, after a few motions to compel evidence, police intentionally withheld this evidence and later at a pretrial hearing after discovering they had inadvertently disclosed this evidence through a whiteboard (which contained eyewitnesses names and officer badge numbers next to witnesses they interviewed), to defense, officers went back and re-interviewed these three witnesses and then, "[they] knew through discovery the defense would be able to obtain [this evidence]," so the police destroyed the 2013 interviews. R.328:25-27, 32, 35-37, 43, 63-65.

Chong filed a motion to dismiss on grounds that the State had violated both **Brady** and **Youngblood** in failing to disclose, and subsequently destroying, the evidence relating to these three witnesses. R. 91:97. See **Brady v. Maryland,** 373 U.S. 83, 87 (1963); **Arizona v. Youngblood,** 488 U.S. 51 (1988). The circuit court concluded that Chong established that the destroyed evidence was potentially exculpatory, that police acted in bad-faith, and that "action is warranted." R. 332:9-11,13. However, the court stated that dismissal was unwarranted due to the facts and circumstances associated with this case. Id. at 13. Instead, the court suppressed these three witnesses. Based on the court's ruling, the jury never heard from the only witnesses who could identify the shooter and who did not identify Chong as the shooter. R. 328:38; 331:35, 38; 400; 410.

5

This case involved a myraid of additional pretrial issues, including whether the State could present evidence to the jury that Chong said he would "beat this case." R. 30:1. The State filed three separate briefs vigorously arguing for the admission of Chong's reference to "beat this case" on grounds that these statements showed a consciousness of guilt. R. 37; 71; and 89. The circuit court ruled that references to "beat this case" was inadmissible because the statement was irrelevant and would only confuse matters. R. 95.

This case proceeded to an eleven day trial. R. 400; 410.   At trial, the State asked one of their witnesses, Stephanie Thao, to read a letter Chong wrote her, in which Chong said, "I'm pretty sure I'll beat this case though." During deliberations, the jury asked to see that letter. R. 27. However, there is no transcript of the jury's question to the court, any arguments of counsel, or the court's decision in response to the jury's request. The jury found Chong guilty of the homicide, felon in possession of a firearm, and two counts of intimidation of witnesses.

Chong subsequently filed a postconviction motion asserting that trial counsel was ineffective for a variety of reasons, including that counsel failed to object to the admission of the letter in which Chong said, "I'm pretty sure I'll beat this case though" and failed to object when the jury asked to see this letter. R. 248:8-9. When Chong questioned trial counsel about their actions at the evidentiary hearing, new facts emerged.  Lead defense counsel, Attorney Debra Vishney, could not recall nor offer any explanations as to why an objection was not made.  R. 396:35.  She recalled that there were discussions before the verdict was received.  She agreed that the

6

reference to "beat this case" should not have been in evidence but could not recall how this evidence ultimately got before the jury, whether counsel failed to object or whether the court admitted the evidence over objection of counsel. Id. at 37-43.

Co-counsel, Attorney Evan Weitz, agreed that references to "beat this case" was inadmissible. R. 397:20. Attorney Weitz could not recall why he did not object to this reference given the court's prior ruling. Id. at 21-22. He recalled that the parties spent "quite a bit of time in chambers" going through various pieces of evidence, and that the court made rulings in chambers as to what evidence was admissible. He could not reccall whether he objected in chambers to this reference coming into evidence. As to the letter going to the jury at its request, Attorney Weitz recalled that when the jury presented questions, the parties would reconvene in the courtroom to address the questions. Attorney Weitz could not recall if he objected to the letter containing "beat this case" going to the jury. Id. at 22-26. The postconviction Judge, who presided over the trial, indicated that he does not "have an independent recollection" of the discussions relative to the jury questions. R. 396:37-38.

Chong subsequently asserted that he has been denied the right to a meaningful appeal due to the lack of transcripts. R. 305:8-15. Specifically, because Chong is unable to determine how or why the "beat this case" reference, previously deemed inadmissible got before the jury, he cannot identify where his claim of error lies: whether his claim is that trial counsel was ineffective in failing to object or whether the Circuit Court erroneously admitted this evidence over trial counsel's objection. Id. at 12. The Circuit Court concluded that "the why question to the allowance of the statement is not one of the type

7

of question that would lead to a showing of prejudice." R. 398:21.

Chong appealed and argued that: 1) the State violated his right to due process under **Brady** by failing to disclose the December 2013 interviews of Mickey Thao, Ryan Thao, and Watou Lee during the seven to eight months the police possessed them and that dismissal is the only adequate remedy; 2) the State violated his right to due process under **Youngblood** by destroying any record of the December 2013 interviews and that dismissal is required; and 3) that the missing transcripts deprived Chong of his right to a meaningful appeal. The Court of Appeals affirmed the conviction. see App. A, ¶ 1.

As to the **Brady** issue, the Court of Appeals concluded that Chong failed to show that the evidence was favorable or that it was material to a dtermination of his guilt. Id., ¶ 22. As such, the Court of Appeals did not address whether dismissal is an available remedy. As to the **Youngblood** issue, the Court of Appeals agreed with the Circuit Court's analysis that the destroyed evidence was only potentially exculpatory and that the police acted in bad-faith. Id., ¶¶ 41,44. The Court rejected Chong's argument that dismissal is mandatory when police destroy evidence in bad-faith and held that circuit courts have discretion in determining the appropriate remedy. Id., ¶ 47. The Court further concluded that the circuit court exercised proper discretion in declining to dismiss the case. Id., ¶ 48. Finally, the Court of Appeals held that the absence of transcripts relating to the admission of the "beat this case" evidence did not deny Chong the right to a meaningful appeal. Id., ¶ 60. The Court explained that Chong could have argued on appeal that the circuit court erred in its decision to admit this evidence (even though there is no indication that the circuit court even made a decision), reasoning that the Court of Appeals would have independently reviewed the record to determine whether proper discretion was exercised. Id., ¶¶ 56, 59.

On January 3, 2020, Chong filed a motion for reconsideration as to the Court's ruling on the transcript issue. see App. C. Chong argued that he reasonably believed that where he is unable to establish potential error due to the absence of transcripts, his remedy is that which is mandated by the Perry case, a new trial. Id. Given the Court's ruling that he could have directly raised this claim, Chong asked the Court to remand the case to allow him to do so. Id. The Court of Appeals denied the motion. see App. B.

On January 22, 2020, Chong filed a Petition For Review to the Supreme Court of Wisconsin and on July 15, 2020, that petition was denied. see App N. This petition follows that order.

## REASONS FOR GRANTING THIS PETITION

I. DISMISSAL IS AN AVAILABLE REMEDY FOR A **BRADY** VIOLATION AND CHONG ESTABLISHED A **BRADY** VIOLATION AND SUCH VIOLATION WARRANTS DISMISSAL

 A. Introduction

At trial, the State presented no witnesses who could identify the shooter in this case. However, just after the shooting, police interviewed three eyewitnesses who gave a description of the shooter's clothing, direction of travel, and personal characteristics. None of these witnesses identified Chong as the shooter. The interviews with these three witnesses were recorded and the recordings were maintained in evidence for seven to eight months; however, police never disclosed this evidence to the defense during this time and after multiple motions to compel from defense, police learned that they had inadvertently disclosed this evidence to defense team. Police then "knew through discovery the defense would be able to obtain [this evidence]," so

9

they destroyed it. R. 328:25-27, 32, 35-37, 43, 63-65. The recordings were never recovered, and police were unable to recall the specifics of the witnesses original statements.

Although Chong is entitled to relief under the **Trombetta/youngblood** destruction of evidence line of cases, he is also entitled to relief under **Brady**, given that the State maintained this evidence for seven to eight months after defense put in multiple motions to compel, yet failed to disclose it in a timely manner and had it not been [inadvertently disclosed] to the defense, this evidence would have remained undisclosed and defense would have never known about it. Given the intent and egregiousness of the Government's conduct and the incurable prejudice to Chong, dismissal is warranted.

B.  Dismissal is an available remedy for a **Brady** violation

Wisconsin has generally recognized that the remedy for a **Brady** violation is a new trial.  **State v. Harris**, 2008 WI 15, ¶ 62, 307 Wis. 2d 555, 745 N.W. 2d 397. This remedy however, presumes that the defendant has obtained and is able to present the exculpatory material at a new trial. There are certain circumstances, such as the case here, where the States failure to disclose exculpatory evidence forever deprives a defendant of the opportunity to have a fair trial. In these circumstances, dismissal is warranted, and Chong ask this Court to accept this case to so hold.

Other jurisdictions disagree on whether dismissal is available to remedy a **Brady** violation. Some courts have suggested that a new trial is the harshest sanction available. See e.g., **United States v. Davis**, 578 F. 2d 277, 280 (10th Cir. 1989). Other jurisdictions have concluded that dismissal is available to remedy a **Brady** violation. See e.g., **United States v. Chapman**, 524 F. 3d

10

1073, 1086 (9th Cir. 2008); **United States v. Pasha,** 797 F. 3d 1122, 1139 (D.C. Cir. 2015); **Gov't of Virgin Islands v. Fahie,** 419 F. 3d 249, 254-55 (3rd Cir. 2005). In **Fahie,** the Third Circuit noted that although the United States Supreme Court has never directly addressed the issue, "it has left open the possibility of barring retrial in response to particularily egregious due process violations." **Fahie,** 419 F. 3d at 252.

This Court, in a series of cases, has attempted to clarify the guidelines for the situation of suppressed or destroyed evidence. Thus, in the landmark case of **Brady v. Maryland,** 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), this Court held that the suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. In **U.S. v. Agurs,** 427 U.S. 97, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976), this Court held that where a specific request for a piece of evidence is made, the test for reversal is whether the suppressed evidence might have affected the outcome of the trial, but where a more general request for exculpatory information is made, the standard is whether the omission of evidence by the prosecution resulted in the denial of a fair trial. Here, the destroyed evidence could have been used for impeachment purposes and could have been used to identfy the shooter. In **California v. Trombetta,** 467 U.S. 479, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984), this Court rejected a claim that test results indicating the concentration of alcohol in the blood of two motorists should be suppressed on the grounds that the State had failed to preserve the breath samples used in the test. In **Arizona v. Youngblood,** 488 U.S. 51, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988), a prosecution for sexual molestation of a 10-year old boy, this Court held that the defendant was not denied due process by failure of the police to refidgerate the boy's clothing

11

and to perform tests on seman samples, thereby preserving potentially useful evidence for the defendant. This Court explained that failure of the police to preserve potentially useful evidence is not a denial of due process of law unless the defendant can show bad faith on the part of the police. Here in this case there is no doubt of what the police's intentions were. As the police admitted it at the pretrial hearing "they knew through discovery the defense would be able to obtain that evidence so they decided nothing would be retained." See R. 328:65 To destroy exculpatory evidence only to replace it with other evidence is in itself a due process violation. See **State v. Jordan,** 73 Ohio App. 3d 524, 597 N.E. 2d 1165 (1992).

Before the court of appeals, the State acknowledged that this **issue** presents an open question under Wisconsin law, but urged the court not to resolve this issue, asserting that it was not ripe. See State's Brief at 14. Ultimately, the court of appeals did not reach this issue, as it concluded that there was no Brady violations. See App. A. This Court should accept this case to resolve this issue and should hold that some **Brady** violations, like the one here, require dismissal.

### C. Chong established a **Brady** violation

This Court should accept this case to resolve the remedy issue discussed above. Chong also ask that this Court apply that rule to the facts of his case to determine whether he is entitled to relief. Given the highly factual nature of whether Chong has established a **Brady** violation, the mandate that petitions be as short as possible, and Chong's looming word count limit, Chong will not fully develop this subsidiary issue in this petition.

12

D. Dismissal is the only adequate remedy

The facts of this case illustrates why dismissal must be a remedy when a new trial will not cure the prejudice resulting from the State's conduct. In this case, Chong can never obtain the exculpatory evidence of these witnesses' December 11, 2013 statements; the State made sure of this by intentionally destroying anything relating to these three eyewitnesses. As a result, Chong is unable to ever present this evidence, and a new trial would not remedy the harm. The only remedy to rectify the State's malicious and egregious conduct is dismissal.

This Court should resolve the unanswered question as to whether dismissal is a remedy available for a **Brady** violation, should answer that question in the affirmative, should conclude that a **Brady** violation occured, and should hold that such violation commands dismissal of this case.

II.    WHETHER DISMISSAL IS REQUIRED FOR A **YOUNGBLOOD** VIOLATION?  ALSO,
       WHETHER THE **YOUNGBLOOD** VIOLATION IN THIS CASE MANDATE DISMISSAL.

A. Dismissal is mandatory when police destroy evidence in bad faith

In **Trombetta**, this Court held that the State has a duty to preserve "evidence that might be expected to play a significant role in the suspect's defense." **California v. Trombetta,** 467 U.S. 479, 488 (1984). The focus under **Trombetta** is on the "constitutional materiality" of the evidence, that is, the apparently exculpatory value of the evidence. **Id.** at 489; **see also State v. Oinas,** 125 Wis. 2d 487, 490, 373 N.W. 2d 463 (Ct. App. 1985). When a defendant establishes a **Trombetta** violation, the "circuit court must

13

choose between barring further prosecution or supressing . . . the State's most probative evidence." **Trombetta**, 467 U.S. at 487. In determining a remedy for a **Trombetta** violation, the Wisconsin Court of Appeals explained that circuit courts are to balance "the quality of the Government's conduct and the degree of prejudice to the accused." **State v. Hahn**, 132 Wis. 2d 351, 362, 392 N.W. 2d 464 (Ct. App. 1986)(quoting **United States v. Roberts**, 779 F. 2d 565, 569 (9th Cir. 1986)).

Subsequently, in **Youngblood**, this Court expanded on **Trombetta** by addressing the role that law enforcement's intent in destroying evidence plays in the analysis. **Youngblood**, 488 U.S. 51, 58 (1988). **Youngblood** held that where police act in bad faith, a defendant need only show that the evidence was "potentially useful" to establish a due process violation. **Id.** at 57-58.

The law is clear that courts have discretion in determining the appropriate remedy for a **Trombetta** violation. **Trombetta**, 467 U.S. at 487 (the "court must choose between barring further prosecution or supressing... the State's most probative evidence."). However, Wisconsin has yet to address whether circuit courts have such discretion where bad faith is at issue. Chong submits that where the circuit court has found that police acted in bad faith in destroying evidence, dismissal is mandatory. When dealing with apparently exculpatory evidence under a **Trombetta** violation the intent of the Government is irrelevant (**Youngblood**, 488 U.S. at 57), so it makes sense that intent becomes relevant in evaluating the harshness of the remedy to impose. But where a **Youngblood** violation is at issue, intent is part of the threshold question. **Id.** at 57-58. Where the court has already found that police acted in bad faith, analyzing the bad faith of police becomes redundant and irrelevant in the remedy analysis.

The court of appeals in this case concluded that bad faith comes in varying degrees and that the bad faith at issue in this case was not of a "high degree" See APP A at ¶ 49. Chong submits that bad faith embodies a single degree of **mens rea,** reserved for the most egregious of actions. Good faith (or perhaps a more apt term "not in bad faith") encompasses a broad spectrum of conduct, whether that be that evidence was destroyed in accordance with routine procedures (**State v. Luedtke,** 2015 WI 42, ¶ 56, 362 Wis. 2d 1, 863 N.W. 2d 592), that police failed to ensure evidence was preserved (**Youngblood,** 488 U.S. at 57-58), or that police were negligent in handling evidence (**Greenwold II,** 189 Wis. 2d 68). On the other hand, bad faith embodies a single degree of malice requiring a defendant to establish the high burden that "officers acted with official animus or made a conscious effort to destroy the exculpatory evidence." Luedtke, 362 Wis. 2d 1, ¶ 46 (quoting **Greenwold II,** 189 Wis. 2d at 69).

Other jurisdictions are split as to whether a **Youngblood** violation requires dismissal or whether the court has discretion in imposing alternative remedies. **McCarty v. Gilchrist,** 646 F. 3d 1281, 1288 (10th Cir. 2011)(**collecting cases**). Some jurisdictions hold that the only remedy for the bad faith destruction of potentially exculpatory evidence is dismissal. Id. (citing **State v. Lang,** 176 Ariz. 475, 862 P. 2d 235, 245 (Ariz. Ct. App. 1993); **Lolly v. State,** 611 A. 2d 956, 960 (Del. 1992); **United States v. Day,** 697 A. 2d 31, 36 (D.C. 1997); **Cost v. State,** 417 Md. 360, 374, 10 A. 3d 184 (Md. 2010); **Norman C. Bay, Old Blood, Bad Blood, and Youngblood: Due Process, Lost Evidence, and The Limits of Bad Faith,** 86 Wash. U.L. Rev. 241, 296 (2008), **Dismissal of Case Against Defendants with Prejudice as Discovery Sanctions Against State,** 10 A.L.R. 7th Art. 6 (2016).

Although **Youngblood** did not directly address the remedy for a violation, as it found no violation, the remedy contemplated by this court was dismissal.

**Youngblood,** 488 U.S. at 52 (reviewing the decision of the Arizona Court of Appeals in **State v. Youngblood,** 153 Ariz. 50, 734 P. 2d 592, 596 (Ariz. Ct. App. 1986) concluding that dismissal is required). Similarly, following **Youngblood,** the Wisconsin cases analyzing this issue have all contemplated dismissal as the remedy. See **Greenwold II,** 189 Wis. 2d at 63 (reviewing the circuit court's order dismissing homicide charges); **Hugget,** 324 Wis. 2d 786, ¶¶ 25-28 (reviewing the circuit court's order dismissing homicide charge); **Luedtke,** 362 Wis. 2d 1 ¶¶ 5, 17, (reviewing the circuit court's order denying defendant's motion to dismiss).

Finally, requiring dismissal where a **Youngblood** violation occurs will have an important deterrent effect. When police act in bad faith, they "the police by their conduct indicat that the evidence could form a basis for exonerating the defendant." **Youngblood,** 488 U.S. at 58. Such conduct on the part of the police has no place in this justice system, and automatic dismissal for this behavior will ensure that the integrity of this justice system stay true.

As the State conceded in **Hugget,** "while dismissal may be proper where the State has acted in bad faith in failing to preserve exculpatory evidence (at least 'apparently exculpatory' evidence), dismissal should not be an automatic remedy in cases' not involving bad faith." 324 Wis. 2d 786, ¶ 26.

B. The Circuit Court and the Court of Appeals agree that a **Youngblood** violation occurred

The circuit court found, and the court of appeals agreed, that a **Youngblood** violation occurred in this case. See **App. A.** That is, that the police acted in bad faith in destroying potentially exculpatory evidence. Id. Due to the

highly factual nature of this aspect of the analysis, the findings of the lower courts, and the mandate that petitions be as short as possible, Chong will not fully develop this subsidiary issue in this petition. Chong notes, though, that he maintains his position that the evidence in this case went beyond potentially exculpatory and satisfied the standard of apparently exculpatory. Ultimately, such distinction is of no consequences because when police act in bad faith , as is the case here, Chong need only show that the evidence was potentially exculpatory. **Youngblood,** 488 U.S. at 57-58. As discussed above, this Court should hold that where bad faith has been established, dismissal is required. Because police maliciously and with intent chose to destroy this evidence after given notice through motions that the defendant was seeking such evidebce to use at trial, either for impeachment purposes or to exonerate him, dismissal is required.

C. If dismissal is not automatic for a **Youngblood** violation, the Circuit Court erred in selecting the remedy of suppression of these witnesses

In raising this issue before the trial court, Chong moved to dismiss or, alternatively, supress "any in court identification of Chong Lee by any witness interviewed by law enforcement in which law enforcement destroyed the recorded statement of said witness [and] ... any testimony that links Chong Lee to the homicide in this case." The circuit court concluded that dismissal was unreasonable in light of the facts and circumstances associated withthe case. Instead, the court ordered that "the [court] (sic) shall be prohibited from calling Ryan Thao, Mikey Thao, and Watou Lee." ("sic" notation in original transcript).

The court's selection of remedy did not right the wrong in this case. In

17

the December 2013 interviews, these witnesses identified the shooter and did not identify Chong as that individual. R. 328:37-38 Thus, this evidence would have presented reasonable doubt as to whether Chong was the shooter, and prohibiting the testimony of theses witnesses had a more detrimental effect.

The court of appeals rejected this argument, concluding that the circuit court's ruling did not prevent Chong from calling these witnesses and that Chong had evidence of these witnesses' subsequent Aprol 2015 statements. See App. A at ¶¶ 50, 52. According to the court of appeals, the circuit court prohibited only the State from calling these witnesses. Id. at ¶ 52. As an initial point, this conclusion is not entirely accurate.The circuit court's precise ruling was that "the [court] (sic) shall be prohibited from calling Ryan Thao, Mikey Thao, and Watou Lee." See App. J at 13. (Emphasis added)

While the court of appeals implicitly interpreted the circuit court's ruling as "the State shall be prohibited from calling...[,]" it is unclear whether the circuit court intended such, whether the court was prohibiting the testimony of these witnesses altogether, whether the court's words should be taken at face value, or something else. Id. In any event calling these witnesses without evidence of their December 2013 interviews would have been fruitless. By April 2015, it was clear that these witnesses were iinculpating Chong. Without the content of the December 2013 interviews to impeach these witnesses, anything dealing with their April 2015 interviews was harmful.

This Court in Youngblood has stated, ("We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to

18

preserve potentially useful evidence does not constitute a denial of due process of law"). 488 U.S. at 58, 109 S. ct. 333. Here, the bad faith was conceded and admitted to by the police. In their own words "they knew through the discovery process, the defense would be able to obtain it", they chose to destroy it. R. 328:65. They knew that by withholding this evidence and not disclosing it to the defense it would impair the defendant to have a fair trial. After they found out that they had inadvertently disclosed these witnesses to the defense, they chose to go replace or substitute the December 2013 interviews with the April 2015 interviews to implicate Chong to secure a conviction. This action in itself constitute a violation of Chong's right to due process under the Due Process Clause and the only way to cure this prejudice is to dismiss this case. See **State v. Jordan,** 73 Ohio App. 3d 524, 597 N.E. 2d 1165 (1992).


III.     WHETHER THE ABSENCE OF TRANSCRIPTS ENTITLE CHONG TO A NEW TRIAL?


    A.  Introduction

Prior to trial, after lengthy litigation, the circuit court ruled that the State could not present evidence that Chong said he would "beat this case." R. 95. However, this evidence was ultimately presented to the jury through testimony. In addition, during deliberations, the jury asked to see the letter wherein Chong wrote that he would "beat this case," and the court sent that letter to the jury. R. 271 Chong asserts that trial counsel was deficient in failing to object to this evidence. During the postconviction process, Chong learned that critical portions of the trial were not transcribed including various in-chambers evidentiary hearings as well as the discussions and rulings that took place in response to the jury's questions. Because there

are no transcripts of these portions of the proceedings, Chong cannot assert a claim relative to the improper admission of the "beat this case" evidence.

B. Legal Principles

The **Court Reporter Act,** which was enacted in 1944, provides in pertinent part that:

> each session of the court and [] every other
> proceeding designated by rule or order
> of the court or by one of the judges []... shall
> be record[ed] verbatim [, including]... all
> proceedings in criminal cases had in open court...

28 U.S.C. § 753(b).

Similarly, the Wisconsin Constitution guarantees a defendant an absolute right to appeal. **Wis. Const. art I, § 21(1).** As part of this guarantee, a defendant has the right to a "meaningful" appeal. **State v. Perry, 136 Wis. 2d 92, 98-99,** 401 N.W. 2d 748 (1987). To ensure the defendant has a right to a "meaningful appeal", the "law requires that a defendant be furnished a full transcript-or a functionally equivalent substitute that, in a criminal case, beyond a reasonable doubt, portrays in a way that is meaningful to the particular appeal exactly what happened in the course of trial." **Id. at 99.** An incomplete record that prevents a defendant "from demonstrating possible errors constitutes a constitutional deprivation of the right to appeal." **Id.** Where an incomplete record denies the defendant the right to a meaningful appeal, a new trial must follow. **Id.**

If a portion of the trial record is missing, a defendant need only

20

show a "colorable need" for the missing portion of the record.  **Id.**
**at 108.**  A defendant has a "colorable need" for a missing portion of the record
when evidence of that missing portion might lend to a claim of prejudicial error
on appeal. **Id. at 101.**  A defendant need not establish prejudicial error; he
need only allege "that there is some likelihood that the missing portion would
have shown error that was arguably prejudicial." **Id. at 103.**  At the same time,
the possible "error cannot be of such a trivial nature that it is clearly
harmless." **Id. at 108.**

Once the defendant demonstrates a "colorable need" for the missing portion
of the record, the duty then shifts to the circuit court "to determine whether
the missing portion of the record can be constructed." **Id. at 101.**  If the
record cannot be reconstructed beyond a reasonable doubt and without speculation
the remedy is a new trial.  **Id.**

C.  Chong has established a colorable need for the missing transcripts

Prior to trial, Chong sought to exclude any references he made over the
phone or in writing that he would "beat this case."  The State filed three
separate briefs vigorously arguing for the admission of Chong's reference to
"beat this case" on grounds that these statements showed a consciousness of
guilt.  The circuit court ruled that the reference to "beat this case" was
inadmissible because the statement was irrelevant and would only confuse matters.

Despite the court's ruling, the State presented evidence to the jury that
Chong said he would "beat this case."  Specifically, the State introduced these
statements to the jury through Stephanie Thao, via a letter Chong wrote her. R.
404:220.  During deliberations, the jury asked to this letter. R. 271.  There

21

is, however, no transcripts of the discussions following the jury's questions, of any arguments of counsel, or of any decision on how the court responded to the jury. The record simply shows that the court sent the letter to the jury with the majority of its original form redacted; however, one key portion, "I'm pretty sure I'll beat this case tho[,]" was not redacted. **Id. at 2-4; R.167.**

The transcripts do not reflect any objection from trial counsel as to the admission of the "beat this case" reference or to the jury viewing the letter with the phrase "beat this case." Based on the circuit court's plain ruling that this phrase was not to be presented to the jury, Chong asserted in his postconviction motion that counsel was ineffective in failing to object. R. 298 at 1, 8-9. When Chong questioned counsel on their actions at the Machner hearing, new facts emerged. Lead defense counsel, Attorney Vishney, could not offer any explanation as to why an objection was not made. R. 396:35. Attorney Vishney agreed that reference to "beat this case" should not have been in evidence but could not recall how this evidence ultimately got before the jury whether counsel failed to object or whether the court admitted the evidence over objection. See **Id. at 41-43.**

Co-counsel, Attorney Weitz, agreed that reference to "beat this case" was inadmissible. R. 397:20. Attorney Weitz could not recall why he did not object to this reference given the court's prior ruling. **Id. at 21-22.** He did recall though that the parties spent "quite a bit of time in chambers" going through various pieces of evidence, and that the court made rulings in chambers to this reference coming into evidence. **Id. at 23.** As to the letter going to the jury at its request, Attorney Weitz recalled that when the jury presented questions, the parties reconvened in the courtroom to discuss the questions. **Id. at 24-25.** Attorney Weitz could not remember whether he objected to the letteer containing "beat this case" going to the jury. **Id. at 26.**

As a result, Chong is unable to determine how or why the "beat this case" reference, previously deemed inadmissible, got before the jury. See R. 95. This leaves Chong unable ti identify or assert where his claim of error lies: whether his claim is that counsel was ineffective in failing to object or whether the circuit court erroneously or intentionally admitted this evidence over counsel's objection. Because this evidence was ruled inadmissible and because it was ultimately-for reasons unknown-presented to the jury, Chong has shown "that there is some likelihood that the missing portion would have shown an error that was arguably prejudicial." **Perry,** 136 Wis. 2d at 103.

While Chong is not required to show prejudice, he has done so. First, his comment that he would "beat this case" supported the inference that Chong was not seeking to prove his innocence; rather, that he would be acquitted of charges of which he was charged. In colloquial terms, that he would "get off." Second, the State agreed that these statements were incriminating when they vigorously argued for their admission as evidence a "consciousness of guilt." R. 37, 71, 89. Finally, the jury took particular note of these statements in deliberations, requesting to see the letter in which Chong purportedly told Thao he would "beat this case." R. 271. Accordingly, Chong has satisfied the notably low threshold of establishing "that there is **some likelihood** that the missing portion would have shown an error that was **arguably** prejudicial." **Perry,** 136 Wis. 2d at 103 (emphasis added).

D. The record cannot be reconstructed

During the postconviction process, Chong attempted to reconstruct the record; however, defense counsel could not recall the contents of these off-the-record discussions. R. 396:37, 39, 40-43; R. 397:23-26. The State offered

24

no reconstruction of the record. See R. 306. Ultimately, the court indicated that it does not "have an independent recollection" of the discussions relative to the jury questions. R. 396:37-38. Based on the testimony of counsel and the comments of the court, it is impossible to speculate as to what occurred off-the-record, much less recreate an accurate record beyond a reasonable doubt. Accordingly, a new trial is warranted. Perry, 136 Wis. 2d at 101.

E. The Court of Appeals' decision is in conflict with Perry

The court of appeals implicitly recognized Chong's colorable need, noting that a party aggrieved by the loss of a record is not made to bear the burden of the loss. See App. A at ¶ 56. However, instead of granting the remedy proscribed by Perry, a new trial (136 Wis. 2d at 101), the court of appeals concluded that the proper remedy was for Chong to directly challenge the court's ruling despite being unable to show that a ruling was even made. App. A at ¶ 56. Here, the incomplete record prevented Chong "from demonstrating possible error[,]" and Chong is entitled to a new trial. See Perry, 136 Wis. 2d at 101. The court of appeals' decision that the incomplete record entitled Chong to directly assert a claim is in conflict with the remedy required by Perry and should be overturned by this Court.

Even more concerning, given the court's ruling, Chong filed a motion for reconsideration, asking the court of appeals to remand the case and permit him to make this argument. See App. C. The court of appeals denied the motion. App. B. Accordingly, Chong is left without any recourse where plainly inadmissible evidence was wrongly presented to, and considered by the jury.

## CONCLUSION

Based on the above reasons, Chong request that this Court grant this petition and vacate the judgment or in the alternative reverse and remand this case for a new trial.

Dated this _17th_ day of November, 2020.

CHONG LENG LEE #439266
P.O. BOX 351
Waupun, WI 53963-0351
PRO SE

26