UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CHONG L. LEE,

        Petitioner,

v.                                    Case No. 22-C-620

RANDALL HEPP,

        Respondent.

## DECISION AND ORDER DENYING PETITIONER'S MOTION TO STAY AND SCREENING THE PETITION

Petitioner Chong Lee, who is currently incarcerated at Waupun Correctional Institution, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Lee was convicted in Outagamie County Circuit Court of first-degree intentional homicide with use of a dangerous weapon, felon in possession of a firearm, and two counts of intimidating a witness as a party to a crime. He was sentenced to life in prison.

Lee's § 2254 petition asserts six grounds for relief. Dkt. No. 1. On June 8, 2022, Magistrate Judge William E. Duffin determined that the petition contained both exhausted and unexhausted claims and directed Lee to either file an amended petition that did not include any unexhausted claims or a motion for stay and abeyance. Dkt. No. 6. Lee subsequently filed a motion to stay on July 7, 2022. The action was reassigned to this Court on August 1, 2022. For the following reasons, Lee's motion to stay will be denied.

The background facts are taken from the Wisconsin Court of Appeals' decision affirming the judgment of conviction. *State v. Lee*, No. 2018AP1741-CR, 2020 WI App 6, 390 Wis. 2d 426, 939 N.W.2d 427 (Table). At approximately 1:50 a.m. on December 8, 2013, police responded to a call regarding a possible gunshot at the Luna Lounge in Appleton, Wisconsin. When officers

arrived, they found the victim, who had been fatally shot in the head, on the floor near the bar's entrance. A Luna Lounge security guard told police that "two Asian individuals" had left the scene after the shooting and that they were wearing white vests and white hats. *Id.* ¶ 3. Video footage from nearby traffic cameras and a security camera inside the Luna Lounge showed three individuals, who were later identified as Joe Thor, Paul Lee, and Phong Lee, running out of the building just after the shooting. The security camera footage also showed other individuals, including Chong Lee, exiting the Luna Lounge shortly after the shooting. Chong Lee and Paul Lee were brothers.

On December 11, 2013, police interviewed three possible witnesses to the shooting: Watou Lee, Mikey Thao, and Ryan Thao. None of the witnesses identified Chong Lee as the shooter. Ryan Thao provided a description of the shooter's clothing and stated that the shooter had come from the bar into the foyer area with other people. Mikey Thao and Watou Lee also provided a description of the shooter. All three witnesses told police that they were "very concerned" for their safety and "did not want to be identified" or "get involved" in the case. *Id.* ¶ 4. That same day, police interviewed Paul Lee at his place of work. They did not ask Paul Lee about Chong Lee during the interview because they did not have any information at the that time suggesting that Chong Lee was the shooter. After about one and a half hours, Paul Lee was taken into custody and transported to the Appleton police station. Other officers interviewed "several females" in Milwaukee who stated that Chong Lee had "made some statements to them admitting to doing the shooting." *Id.* ¶ 6. Joe Thor also told police that Chong Lee had admitted to being the shooter and disposing of the gun. On December 12, 2013, police interviewed Paul Lee two more times while he was in custody at the police station. During the second interview, Paul Lee told police that Chong Lee was the shooter.

On December 16, 2013, a criminal complaint was filed charging Chong Lee with one count of first-degree intentional homicide by use of a dangerous weapon and one count of possession of a firearm by a felon. An information filed in March 2014 added four counts of felony intimidation of a witness as a party to the crime.

The State did not disclose to the defense that police had interviewed Watou Lee, Mikey Thao, and Ryan Thao. The recordings of the interviews were retained for seven or eight months, then police destroyed them. An officer later testified that the recordings were destroyed because the witnesses had requested that the police not disclose their identities and the police "knew through discovery the defense would be able to obtain" the recordings. *Id.* ¶ 8. But at some point, police inadvertently disclosed the identities of Watou Lee, Mikey Thao, and Ryan Thao to the defense. Police reinterviewed them in April 2015, and recordings and reports of those interviews were provided to the defense. Based on that evidence, one of Chong Lee's attorneys noted during a May 2015 motion hearing that it was clear police had interviewed the three witnesses before, and she requested "all reports, notes, and recordings of the initial interviews of these three individuals." *Id.* ¶ 9. The defense then learned that the recordings of the December 2013 interviews had been destroyed.

In September 2015, Chong Lee moved to dismiss the first-degree intentional homicide charge, arguing that police had violated his right to due process by failing to disclose, and later destroying, the recordings of the December 2013 interviews of Watou Lee, Mikey Thao, and Ryan Thao. Chong Lee requested, in the alternative, that the court suppress "any in court identification of Chong" by Watou Lee, Mikey Thao, and Ryan Thao and any testimony by those witnesses that "links Chong to the homicide in this case." *Id.* ¶ 10 (alterations omitted). The court found that police had violated Chong Lee's right to due process by destroying potentially exculpatory evidence in bad faith. The court determined, however, that dismissal of the homicide charge was

not an appropriate remedy and instead prohibited the State (but not Chong Lee) from calling Watou Lee, Mikey Thao, and Ryan Thao to testify at trial.

Chong Lee's trial began in February 2016 and lasted eleven days. At trial, there was evidence that seven individuals had heard Chong Lee confess to his involvement in the shooting. An officer also testified that Paul Lee had told police that Chong Lee was the shooter.

Before the trial, the court ruled that Chong Lee's statements to others that he would "beat this case" were inadmissible. *Id.* ¶ 12. Nevertheless, one witness, during her testimony, read a letter Chong Lee had written to her following his arrest that included the statement, "I'm pretty sure I'll beat this case though." *Id.* Chong Lee's trial attorneys did not object to that testimony. The jury asked to see the letter during deliberations. While there is no transcript of any discussion between the court and the parties regarding the jury's request, the record shows that the letter was provided to the jury.

The jury found Lee guilty of first-degree intentional homicide with use of a dangerous weapon, felon in possession of a firearm, and two counts of intimidating a witness as a party to a crime. Lee subsequently moved for postconviction relief, arguing, among other things, that his trial attorneys were ineffective by failing to object when the witness read the letter during her trial testimony.

At a *Machner* hearing, Lee's lead trial attorney testified that she had no recollection as to why the defense did not object when the letter was read at trial. While she agreed that there likely were "discussions" between the circuit court and the parties about "issues that came up" after the jury began deliberating, she had no specific memory of those discussions. *Id.* ¶ 14. During her testimony, the court similarly stated that it had no "independent recollection" of any discussion regarding the jury's request to see the letter. *Id.*

4

Co-counsel also testified that he could not recall why the defense did not object when the letter was read at trial. He explained that the parties spent "quite a bit of time in chambers going through" various pieces of evidence and that the court made rulings in chambers as to what evidence was admissible. He stated, "I don't have a specific recollection as to this letter and what the decisions were, but I do remember that we tried to carefully go through these before they were being presented to the witnesses as far as what was coming in and what was not coming in." *Id.* ¶ 15. Counsel further testified that he remembered the jury had asked questions during its deliberations and that he believed the parties reconvened in the courtroom to discuss those questions. But he could not recall whether he objected during those discussions to the court sending the letter to the jury.

After the hearing, Lee argued that he had been denied his right to a meaningful appeal because there were no transcripts of the court's discussions with the parties regarding the admissibility of the letter and the jury's request to review it during deliberations. He asserted that, due to the lack of transcripts, he was "unable to show that counsel was deficient in failing to object because it is quite possible that counsel did object when this issue was address[ed] in chambers." *Id.* ¶ 17 (alterations in original). Lee argued, in the alternative, that "if counsel did object in chambers, and the Court nonetheless ruled the evidence admissible, [Chong] cannot show that the Court erroneously exercised [its] discretion because there is no record of the Court's reasoning." *Id.* (alterations in original).

The court denied the postconviction motion. It rejected Lee's claim that any missing transcripts deprived him of his right to a meaningful appeal, concluding that Lee had not demonstrated a "colorable need" for those transcripts. *Id.* ¶ 17. The court nevertheless concluded that Chong Lee could not show that the absence of the transcripts caused him any prejudice. Lee appealed, and the Wisconsin Court of Appeals affirmed.

Lee asserts three unexhausted claims in his petition: (1) trial counsel was ineffective in failing to object when the circuit court granted the defendant's pretrial motion arguing that the State's destruction of evidence warranted dismissal or the suppression of any in-court identification of Lee by three of the State's witnesses; (2) appellant counsel was ineffective in failing to argue that trial counsel was ineffective for not making such an objection; and (3) the circuit court was biased and his appellate counsel provided ineffective assistance by failing to raise the issue of bias.

Although a district court may stay a habeas petition and hold it in abeyance while a petitioner exhausts state court remedies, stays "should be available only in limited circumstances." *Rhines v. Weber*, 544 U.S. 269, 277 (2005). The Supreme Court noted in *Rhines* that "[s]taying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings. It also undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition." *Id.* Federal district courts may issue a stay when (1) the petitioner demonstrates good cause for failing to exhaust his claims first in state court, (2) the unexhausted claims are not plainly meritless, and (3) the petitioner has not engaged in abusive litigation tactics or intentional delay. *Yeoman v. Pollard*, 875 F.3d 832, 837 (7th Cir. 2017) (citing *Rhines*, 544 U.S. at 277–78).

Lee has not established good cause for his failure to present his unexhausted claims to the Wisconsin courts. The Wisconsin Court of Appeals affirmed Lee's conviction on December 17, 2019, Dkt. No. 11-1, and the Wisconsin Supreme Court denied his petition for review on July 15, 2020. Dkt. No. 11-2. The United States Supreme Court denied Lee's petition for a writ of certiorari on May 24, 2021. Dkt. No. 11-4. Lee filed his state court collateral motion on his new

6

claims on May 11, 2022, and the instant § 2254 petition on May 25, 2022, the day his one-year statute of limitations expired.

Lee generally asserts that the case is highly complex and involves an "overwhelming" amount of evidence, discovery, and transcripts; he was sent to segregation and the majority of his legal paperwork was lost or destroyed by prison staff; he made efforts to contact his appellate attorney to recover his files but she did not respond; he contracted COVID-19 three to four times; and the COVID-19 pandemic has stopped most activity at his institution, impacting the amount of time he is able to spend in the law library. While Lee has identified several obstacles that he purportedly faced over the past few years, he has not explained how those circumstances prevented him from presenting his claims in the state courts but did not prevent him from filing a timely habeas petition in this Court. Lee acknowledged that, during the time in question, he was able to litigate "five or six" other civil and criminal cases, including two cases in the Seventh Circuit, three in the Eastern District of Wisconsin, and one in Wisconsin state court, and that he was able to meet deadlines in those cases. Lee has not demonstrated good cause for failing to present his claims to the state courts before seeking federal habeas relief.

In addition, there is no merit to Lee's unexhausted claims. Lee claims that trial counsel was ineffective for failing to object after the court partially granted Lee's pretrial motion arguing that the State's destruction of evidence warranted dismissal or the suppression of any in-court identification of Lee by three of the State's witnesses. He also asserts that appellate counsel should have asserted on appeal that trial counsel was ineffective for not making such an objection. A claim of ineffective assistance of counsel is governed by well-established law set forth by the United States in *Strickland v. Washington*, 466 U.S. 668 (1984). The petitioner must show that (1) counsel's representation was deficient in that it fell below an objective standard of reasonableness and (2) counsel's deficient performance deprived him of a fair trial. *Id.* at 687–88.

7

Lee has not explained how his attorney's conduct could be deemed constitutionally ineffective for failing to object to the circuit court partially granting Lee's motion and preventing the State, but not Lee, from calling the three witnesses. Trial counsel preserved Lee's argument that dismissal was the appropriate remedy for appeal, and appellate counsel brought that claim on appeal. In short, trial counsel was not deficient. Because Lee's ineffective assistance of trial counsel claim fails, it follows that his appellate counsel was not ineffective for failing to raise it on appeal.

Lee also claims that he is entitled to federal relief under § 2254 because of judicial bias. He asserts that the circuit court "became a witness" during the *Machner* hearing when the court stated that it had no independent recollection of any discussion regarding the jury's request to see the letter. Dkt. No. 1 at 10. Lee argues that the judge should have recused himself based on bias because he would not "rule against his own errors." *Id.* Judicial bias can amount to a denial of due process. *See Withrow v. Larkin*, 421 U.S. 35, 46 (1975). "Due process is violated not only where an adjudicator is biased in fact, but also where a situation presents a particularly high probability of bias." *Alston v. Smith*, 840 F.3d 363, 368 (7th Cir. 2016) (citation omitted). The objective inquiry is "whether the average judge in his position is 'likely' to be neutral, or whether there is an unconstitutional 'potential for bias.'" *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 881 (2009).

Here, the circuit court did not testify at the hearing or "become a witness." Dkt. No. 1 at 10. Instead, it explained to the parties that it did not have an independent recollection about the jury requesting the letter and described its practice of marking juror questions as exhibits. *See id.* ("I know that questions that would be asked, whether it's during a trial or afterwards, I would mark those as exhibits."). Lee has not explained how the circuit court was biased or overcome the strong presumption that the circuit court acted with "honesty and integrity." *Withrow*, 421 U.S. at 47. To the extent Lee asserts that appellate counsel was ineffective for not raising this argument on

8

appeal, because Lee's claim that the circuit court was biased ultimately fails, it again follows that appellate counsel was not ineffective for failing to raise the issue on appeal.

For these reasons, Lee's motion to stay is denied. In his motion, Lee requests, in the event the Court denies the stay, that the Court dismiss the unexhausted claims and allow him to proceed with the exhausted claims. Accordingly, Lee's unexhausted claims will be dismissed, and the Court will proceed to screen the remaining claims in the petition.

The Court must give the case prompt initial consideration pursuant to Rule 4 of the Rules Governing § 2254 Cases, which reads:

> If it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner. If the petition is not dismissed, the judge must order the respondent to file an answer, motion, or other response within a fixed time . . . .

Rule 4, Rules Governing § 2254 Cases. During the initial review of habeas petitions, the Court looks to see whether the petitioner has set forth cognizable constitutional or federal law claims and exhausted available state court remedies.

Lee asserts the following grounds for relief: (1) the State violated his right to due process by failing to disclose the December 2013 interviews of Watou Lee, Mikey Thao, and Ryan Thao; (2) the State violated his right to due process by intentionally destroying the recordings of those interviews; (3) missing transcripts deprived him of his right to a meaningful appeal; and (4) ineffective assistance of trial counsel based on trial counsel's failure to object to hearsay statements, pursue a motion to suppress Lee's statements, and object to evidence that was previously ruled to be inadmissible from being heard by the jury and reaching the jury during deliberations. From the face of the petition, the Court cannot conclude that the claims lack merit. Therefore, Lee will be allowed to proceed on these claims. Respondent may, of course, raise the issue of procedural default, among other defenses, in response to the petition.

9

**IT IS THEREFORE ORDERED** that Lee's motion to stay (Dkt. No. 9) is **DENIED**. Lee's unexhausted grounds for relief are dismissed.

**IT IS FURTHER ORDERED** that within 60 days of the date of this order Respondent shall either file an appropriate motion seeking dismissal or answer the petition, complying with Rule 5 of the Rules Governing § 2254 Cases, and showing cause, if any, why the writ should not issue.

**IT IS FURTHER ORDERED** that unless Respondent files a dispositive motion in lieu of an answer the parties shall abide by the following schedule regarding the filing of briefs on the merits of Lee's claims: (1) Lee shall have 45 days following the filing of Respondent's answer within which to file his brief in support of his petition; (2) Respondent shall have 45 days following the filing of Lee's initial brief within which to file a brief in opposition; and (3) Lee shall have 30 days following the filing of Respondent's opposition brief within which to file a reply brief, if any.

If Respondent files a dispositive motion in lieu of an answer, this briefing schedule will be suspended and the briefing schedule will instead be as follows: (1) Lee shall have 30 days following the filing of Respondent's dispositive motion and supporting initial brief within which to file a brief in opposition; and (2) Respondent shall have 15 days following the filing of Lee's opposition brief within which to file a reply brief, if any.

Pursuant to Civil L.R. 7(f), the following page limitations apply: briefs in support of or in opposition to the habeas petition or a dispositive motion filed by respondent must not exceed thirty pages and reply briefs must not exceed fifteen pages, not counting any caption, cover page, table of contents, table of authorities, and/or signature block.

**IT IS FURTHER ORDERED** that, pursuant to the Prisoner E-Filing Program, Lee shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is in effect at Columbia Correctional Institution,

Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility. If the Lee is no longer incarcerated at a Prisoner E-Filing Program institution, he will be required to submit all correspondence and legal material to:

> Honorable William C. Griesbach
> c/o Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 125 S. Jefferson Street, Suite 102
> Green Bay, WI 54301

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Because Lee's filings will be electronically scanned and entered on the docket upon receipt by the clerk, Lee need not mail to counsel for Respondent copies of documents sent to the Court.

Dated at Green Bay, Wisconsin this 26th day of September, 2022.

> s/ William C. Griesbach
> William C. Griesbach
> United States District Judge