**RECEIVED**

**03-07-2019**

**CLERK OF COURT OF APPEALS OF WISCONSIN**

STATE OF WISCONSIN
COURT OF APPEALS
DISTRICT III
Case No.  2018AP1741-CR

---

STATE OF WISCONSIN,

      Plaintiff-Respondent,

      v.

CHONG L. LEE,

          Defendant-Appellant.

---

On Notice of Appeal to Review the Judgment of Conviction and the Order Denying Motion for Postconviction Relief in the Circuit Court for Outagamie County, the Honorable Gregory B. Gill, Jr. Presiding.

---

## BRIEF AND APPENDIX OF DEFENDANT-APPELLANT

---

ANA L. BABCOCK
State Bar No. 1063719
Attorney for Defendant-Appellant

BABCOCK LAW, LLC
130 E. Walnut Street, St. 602
P.O. Box 22441
Green Bay, WI 54305
(920) 884-6565
ababcock@babcocklaw.org

Exhibit 2

TABLE OF CONTENTS

STATEMENT OF ISSUES PRESENTED...............1

POSITION ON ORAL ARGUMENT AND PUBLICATION...................................................1

STATEMENT OF FACTS....................................2

ARGUMENT.......................................................9

I.  CHONG LEE WAS DENIED HIS RIGHT TO DUE PROCESS WHEN THE STATE FAILED TO DISCLOSE EXCULPATORY EVIDENCE...............................................9

  A.  Introduction and Standard of Review.....9
  B.  Legal Principles................................10
  C.  The State Failed to Disclose Favorable and Material Evidence to Chong…..........11
  D.  Dismissal is the Only Adequate Remedy…......................................15
  E.  The Circuit Court's Decision..…...........17

II.  CHONG LEE WAS DENIED HIS RIGHT TO DUE PROCESS WHEN POLICE INTENTIONALLY DESTROYED APPARENTLY EXCULPATORY EVIDENCE TO PREVENT HIM FROM OBTAINING THIS EVIDENCE...........................................17

  A.  Introduction and Standard of Review…17
  B.  Legal Principles................................18
  C.  The Evidence was Apparently Exculpatory....................................18
  D.  The State Acted in Bad Faith…............21

E.  The Circuit Court Applied the Wrong Remedy..........................................22

   1.  The remedy balancing test is inapplicable where the government destroyed evidence in bad faith; rather, dismissal is required.................................22

   2.  Even if the balancing test remains viable, the court did not conduct a proper balancing analysis.................................24

III.  CHONG LEE HAS BEEN DENIED THE RIGHT TO A MEANINGFUL APPEAL DUE TO THE ABSENCE OF TRANSCRIPTS............26

   A.  Introduction.....................................26
   B.  Legal Principles and Standard of Review......................................27
   C.  Chong has Established a Colorable Need for the Missing Transcript..................28
   D.  The Record Cannot be Reconstructed................................31

   E.  The Circuit Court's Decision................31

CONCLUSION.................................................33

CERTIFICATION AS TO FORM/LENGTH............34
CERTIFICATE OF COMPLIANCE WITH RULE 809.19(12).......................................................35
CERTIFICATE AS TO APPENDICES..................36

APPENDIX.......................................................37
TABLE OF CONTENTS OF APPENDIX...............38

# TABLE OF AUTHORITIES

STATUTES
Wis. Const. art I, § 21..................................................27

CASES
*Arizona v. Youngblood*,
   488 U.S. 51 (1988)....................4, 15, 18-19, 22-23

*Brady v. Maryland*,
   373 U.S. 83 (1963)...................................4, 10, 15

*California v. Trombetta*,
   476 U.S. 479 (1984)..........................................18

*Kyles v. Whitley*,
   514 U.S. 419 (1995)..........................……….11

*U.S. v. Bagley*,
   473 U.S. 667 (1985)..........................................10

*U.S. v. Leon*,
   468 U.S. 897 (1984)..........................................24

*Gov't of Virgin Islands v. Fahie*,
   419 F.3d 249 (3rd Cir. 2005)..............................16

*Lolly v. State*,
   611 A.2d 956 (Del. 1992)…………………..…….23

*McCarty v. Gilchrist*,
   646 F.3d 1281 (10th Cir. 2011)..........................23

*U.S. v. Chapman*,
   524 F.3d 1073 (9th Cir. 2008)............................16

*U.S. v. Day,*
      697 A.2d 31 (D.C. 1997)................................23

*U.S. v. Loud Hawk,*
      628 F.2d 1139 (9th Cir. 1979)...........................23

*U.S. v. Roberts,*
      779 F.2d 565 (9th Cir. 1986)......................22-24

*U.S. v. Pasha,*
      797 F.3d 1122 (D.C. Cir. 2015).........................16

*State v. Bannister,*
      2007 WI 86,
      302 Wis. 2d 158, 734 N.W.2d 892..................32

*State v. Greenwold I,*
      181 Wis. 2d 881,
      512 N.W.2d 237 (Ct. App. 1994)...........18-19, 23

*State v. Greenwold II,*
      189 Wis. 2d 59,
      525 N.W.2d 294 (Ct. App. 1994)...............21, 23

*State v. Hahn,*
      132 Wis. 2d 351,
      392 N.W.2d 464 (Ct. App. 1986)...............22-23

*State v. Harris,*
      2004 WI 64,
      272 Wis. 2d 80, 680 N.W.2d 737. ..................15

*State v. Huggett,*
      2010 WI App 69,
      324 Wis. 2d 786, 783 N.W.2d 675 ............23-25

*State v. Lang*,
862 P.2d 235 (Ariz. Ct. App. 1998)................23

*State v. Lock*,
2012 WI App 99,
344 Wis. 2d 166, 823 N.W.2d 378................10

*State v. Luedtke*,
2015 WI 42,
362 Wis. 2d 1, 863 N.W.2d 592................17-21

*State v. Machner*,
92 Wis. 2d 797,
285 N.W.2d 905 (Ct. App. 1979)...................29

*State v. Perry*,
136 Wis. 2d 92,
401 N.W.2d 748 (1987)....................27, 30-31, 33

*State v. Raflik*,
2001 WI 129,
248 Wis. 2d 593, 636 N.W.2d 690................28

*State v. Youngblood*,
734 P.2d 592 (Ariz. Ct. App. 1986)................23

OTHER SOURCES

Norman C. Bay, *Old Blood, Bad Blood, and Youngblood: Due Process, Lost Evidence, and The Limits of Bad Faith*, 86 Wash. U. L. Rev. (2008)....................................................23-24

## STATEMENT OF ISSUES

I.  Whether Lee was denied his right to due process when the State failed to disclose exculpatory evidence?

   Although Lee raised this issue before the circuit court, the court evaluated this issue as a destruction of evidence claim, addressed in issue II.

II. Whether Lee was denied his right to due process when the State intentionally destroyed apparently exculpatory evidence to prevent him from obtaining this evidence?

   The circuit court concluded that Lee established a due process violation: that the evidence was potentially exculpatory and that police acted in bad faith. It denied Lee's motion to dismiss and instead suppressed the witnesses.

III. Whether Lee was denied the right to a meaningful appeal due to the absence of transcripts?

   The circuit court answered no.

## POSITION ON ORAL ARGUMENT AND PUBLICATION

   Oral argument is appropriate in this case under Rule 809.22 as Lee's arguments are substantial and do not fall under the class of clearly frivolous upon which oral argument may be denied under Rule 809.22(2)(a). This case is appropriate for publication under Rule 809.23 as it applies an established rule of law to a

1

factual situation that is significantly different from that in published opinions.

## STATEMENT OF THE FACTS

In the early hours of December 8, 2013, police responded to a call that there was possible a gunshot fired at the Luna Lounge in Appleton. R. 401:62-63, 89. When officers arrived, they found the victim on the ground near the entrance to the bar with blood on the side of his head. *Id.* at 68-69, 75. The victim died of a gunshot wound to the left side of his head. R. 403:39, 53. A security guard at Luna was in close proximity to the shooting, and he directed law enforcement to two Asian individuals, wearing a white vest and white hat, who quickly rushed out of the bar after the shooting and turned right. R. 401:70, 95-95, 101-03, 119-20. Law enforcement reviewed footage from traffic cameras in the area and identified three individuals running from the bar. *Id.* at 82-83. The three individuals were identified as Joe Thor, Paul Lee, and Phong Lee. *Id.* at 84-85. These suspects ran to a dumpster area and two of them discarded their clothing. *Id.* at 87-88.

Police narrowed in on Paul Lee,[1] who was wearing a white vest and ran with his hands in his pockets. *Id.* at 85; R. 406:163. Police learned that just before the shot rang out, Paul was involved in an argument with the victim, and Paul punched the victim. R. 401:223-24. Security camera footage revealed that Paul had an object in his hands, and

---

[1] Paul's first name is Paur, but he goes by Paul. R. 403:144. He will be referred to as Paul in this brief.

police believed this item was a gun. R. 399:164-165. Police arrested Paul for the homicide. R.331:30.

At the time Paul was arrested, police had no information to indicate that the defendant, Chong Lee,[2] was the shooter. R. 399:131. Over the course of multiple interrogations, police repeatedly accused Paul of being the shooter, falsely told Paul that five individuals identified him as the shooter, and told Paul that he would be going to prison for life. *Id.* at 160-61, 64-65. Paul was told that the only option for him to not be charged was to name the shooter. *Id.* at 165-66. Paul denied any involvement. *Id.* at 130. One of the officers eventually suggested to Paul that Chong may have been the shooter: Paul was told "either you did it or your brother did it." *Id.* at 205, 207. Paul then said Chong was the shooter. *Id.* at 232-33. Thereafter, police told Paul "we've built this great case against you. Now all we gotta do is we gotta get rid of that case to show that it wasn't you, that it was, in fact, your brother." R. 243:6. Police then arrested Chong. *Id.* at 87.

Chong was subsequently charged with the homicide.[3] R. 1. The complaint was based almost exclusively on various witnesses who claimed that Chong confessed to the crime. R. 1. Despite the fact that there were at least 150 people in Luna that evening, the complaint referenced no eyewitnesses identifying the shooter. *See id.*; R. 328:66 However,

---

[2] There are multiple key individuals with the last name "Lee" in this case, including the defendant, Chong Lee, Paul Lee, Phong Lee, and Watou Lee. First names will be used to designate these individuals.

[3] Chong was initially charged with first-degree intentional homicide and a felon in possession of a firearm. R 1. The State subsequently added four counts of felony intimidating witnesses and one count of soliciting perjury. R 7.

3

*police had three eyewitnesses who identified the shooter.* R. 328:31, 35-36, 38-39, 50; R. 330:85-86; R. 331:34, 36-39. Specifically, on December 11, 2013, the same day police arrested Paul, police interviewed three witnesses to the shooting: Ryan Thao, Mikey Thao, and Watou Lee. R. 328:31, 35-36; R. 331:30. All three witnesses identified the shooter and gave descriptions of the shooter's clothing, personal characteristics, and direction of travel. R. 328:31, 35-36, 38-39, 50; R. 330:85-86; R. 331:34, 36-39. None of these three witnesses identified Chong as the shooter. R. 328:38; R. 331:35, 38.

The interviews with these witnesses were recorded, and the recordings were maintained in evidence for seven or eight months; however, police intentionally withheld this evidence from the defense, explaining that these witnesses did not want their identities disclosed. R. 328:25-27, 32, 35-37. In preparation for trial, police realized that these witnesses were inadvertently disclosed to the defense via the "whiteboard," which contained photographs and names of all the individuals in the vicinity of the shooting. *Id.* at 43, 63. After police realized the defense was now aware of these witnesses, "[they] knew through discovery the defense would be able to obtain [this evidence]," so they destroyed the evidence. *Id.* at 65.

Chong filed a motion to dismiss, or alternatively suppress, on grounds that the State had violated both *Brady* and *Youngblood* in failing to disclose, and subsequently destroying, the evidence relating to these three witnesses. R. 91; R. 97. *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Arizona v. Youngblood*, 488 U.S. 51 (1988). The circuit court

concluded that Chong established that the destroyed evidence was potentially exculpatory, that police acted in bad faith, and that "action is warranted." R. 332:9-11, 13. The court, however, stated that dismissal is "unreasonable in light of the facts and circumstances associated with this case." *Id.* at 13. Instead, the court suppressed the testimony of these three witnesses. *Id.* Based on the court's ruling, the jury never heard from the only witnesses who could identify the shooter and who did not identify Chong as the shooter. R. 328:38; R. 331:35, 38; R. 400- R. 410.

This case involved a myriad of additional pretrial issues,[4] including whether the State could present evidence to the jury that Chong said he would "beat this case." R. 30:1. The State filed three separate briefs vigorously arguing for the admission of Chong's reference to "beat this case" on grounds that these statements showed a consciousness of guilt. R. 37; R. 71; R 89. The circuit court ruled that reference to "beat the case" was inadmissible because the statement was irrelevant and would only confuse matters. R. 95.

The case proceeded to an eleven-day jury trial. R. 400- R. 410. The State had no physical evidence implicating Chong as the shooter; instead, the State's case was based primarily on the testimony of several witnesses who claimed Chong confessed to them. First, the State presented three witnesses from a house party in Milwaukee who said that Chong admitted involvement in the shooting. R. 402:34, 60, 71-72. Specifically, Via Thao testified that Chong said,

---

[4] Several of the pretrial issues raised have considerable appellate merit; however, given the space limitations and the number of issues already raised, Chong does not maintain these claims.

"he shot a guy"; Peter Moua testified that Chong told him "he got him"; and Kong Vang testified that Chong said, "he shot somebody . . . .to protect his brother." *Id.*

Next, the State presented Melanie Thao and Stephanie Thao, who testified that Chong admitted the shooting to them: Stephanie testified that "he said he was the one who did it[,]" and Melanie's statement to police, that "he said he shot the guy[,]" was read during her testimony as impeachment evidence. R. 404:142, 197. During Stephanie's testimony, the State asked her to read a letter Chong had written her, in which Chong said, "I'm pretty sure I'll beat this case though." R. 404:219-20. The defense did not object. *See id.*

Finally, the State presented the testimony of the three initial suspects seen quickly running out of Luna and disposing of their clothing in a dumpster: Joe Thor, Paul Lee, and Phong Lee. R. 401:70, 84, 85; R. 402:87-88, 123; R. 403:144; R. 406:5. Joe Thor, who police threatened could be charged as a party to the crime, testified that "He said he did it." R. 406:24, 41. Phong Lee was asked whether he ever spoke with Chong about the incident, and he denied such. R. 402:146. Phong subsequently "[pled] the fifth." *Id.* at 150. The State then moved to compel his testimony and the court ordered him to testify, thereby giving him immunity. *Id.* at 168-69. Phong continued to deny any recollection of previously saying Chong confessed to him. *Id.* at 175-76. The State then called Sgt. Thao, who testified that Phong told police that Chong said he "popped a guy." R. 409:22. Similarly, the State attempted to get Paul Lee to testify that Chong confessed to him, but he denied recollection. R. 403:179. The State subsequently called Off. Schira

who testified that Paul told him "that Chong had come to his house sometime on Monday and said that he had fucked up, pardon my language, and that he had shot the guy." R 406:178. Paul testified that police forced him to say it was Chong. R. 403:191.

During deliberations, the jury asked to see the letter Chong wrote to Stephanie Thao. R. 271. However, there is no transcript of the jury's question to the court, any arguments of counsel, or the court's decision in response to the jury's request.[5] *See* R. 410:188; R. 391:1. The jury found Chong guilty of the homicide, felon in possession of a firearm, and two counts of intimidation of a witness; Chong was acquitted of the remaining two counts of intimidation of a witness. R.391:3-6.

Chong subsequently filed a postconviction motion asserting that trial counsel was ineffective, for a variety of reasons, including that counsel failed to object to the admission of the letter in which Chong said, "I'm pretty sure I'll beat this case though," and failed to object when the jury asked to see that letter. R. 298:8-9.[6] When Chong questioned trial counsel on their actions at the evidentiary hearing, new facts emerged. Lead defense counsel, Attorney Vishny, could not offer any explanation as to why an objection was not made. R. 394:35. She recalled that there were discussions before the verdict was received. R. 396:37-38. She agreed that reference to "beat the case" should not have been in evidence but could not recall how this

---

[5] It appears from the transcripts that after the jury was sent out to deliberate, the court reporter was relieved, and a different court reporter came in to transcribe the verdict. R. 410:188; R. 391

[6] Chong asserted additional grounds, which he either withdrew at the postconviction level or does not maintain on appeal.

7

evidence ultimately got before the jury, whether counsel failed to object or whether the court admitted the evidence over objection. *See id.* at 41-43.

Co-counsel, Attorney Weitz, agreed that reference to "beat the case" was inadmissible. R. 397:20. Attorney Weitz could not recall why he did not object to this reference given the court's prior ruling. *Id.* at 21-22. He recalled that the parties spent "quite a bit of time in chambers" going through various pieces of evidence, and that the court made rulings in chambers as to what evidence was admissible. *Id.* at 22. Attorney Weitz could not recall whether he objected in chambers to this reference coming into evidence. *Id.* at 23. As to the letter going to the jury at its request, Attorney Weitz recalled that when the jury presented questions, the parties reconvened in the courtroom to discuss the questions. *Id.* at 24-25. Attorney Weitz could not recall whether he objected to the letter containing "beat this case" going to the jury. *Id.* at 26. The postconviction judge, who also presided over the trial, indicated that he does not "have an independent recollection" of the discussions relative to the jury questions. R. 396:37-38.

Chong subsequently asserted that he has been denied the right to a meaningful appeal due to the lack of transcripts. R. 305:8-15. Specifically, because Chong is unable to determine how or why the "beat this case" reference, previously deemed inadmissible, got before the jury, he cannot identify where his claim of error lies: whether his claim is that trial counsel was ineffective in failing to object or whether the circuit court erroneously admitted this evidence over counsel's objection. *Id.* at 12. The circuit court concluded "that the why question to the allowance of

the statement is not one of the type of question that would lead to a showing of prejudice." R. 398:21. The court explained that Lee was acquitted of the charges to which the statement pertained and, to the extent it was considered as part of the homicide charge, the statement was meaningless in light of the other evidence. *Id.* This appeal follows.

ARGUMENT

I. CHONG LEE WAS DENIED HIS RIGHT TO DUE PROCESS WHEN THE STATE FAILED TO DISCLOSE EXCULPATORY EVIDENCE

A. Introduction and Standard of Review

Three days after the shooting, police interviewed three witnesses who saw the shooter: these witnesses gave a description of the shooter's clothing, personal characteristics, and direction of travel. R. 328:31, 35-36, 38-39, 50; R. 330:85-86; R. 331:34, 36-39. None of these witnesses identified Chong as the shooter. R. 328:38; R. 331:35, 38. On the same date these witnesses were interviewed, police arrested Paul Lee for the homicide. R. 331:30. Paul was subsequently released, and the State ultimately charged Chong with the homicide. R. 399:197; R. 1.

The evidence to support probable cause in the complaint is circumstantial: the State did not point to any eyewitness testimony identifying Chong as the shooter. R 1. Notably missing from the complaint is any reference to these three eyewitnesses. *See id.* The interviews with these three witnesses were recorded, and the recordings were maintained in evidence for seven or eight months; however, police intentionally

withheld this evidence from the defense, explaining that these witnesses did not want their identities disclosed. R. 328:25-27, 31-33, 35-37.

In preparing for trial, police learned that the names of these three witnesses had been inadvertently disclosed to the defense via the "whiteboard," which contained photographs of individuals who were in the vicinity of the shooting. *Id.* at 43, 63. Police then "knew through discovery the defense would be able to obtain [this evidence]," so they destroyed it. *Id.* at 65. The recordings were never recovered, and police were unable to recall the specifics of the witnesses' original statements. R. 328: 50-52; R. 330:6, 86, 96-98; R. 331:34, 36-39.

In evaluating this issue, this Court accepts the circuit's court's finding of historical facts unless clearly erroneous. *State v. Lock*, 2012 WI App 99, ¶94, 344 Wis. 2d 166, 823 N.W.2d 378. The ultimate determination of whether a *Brady* violation occurred is a due process issue that presents a question of law, which this Court reviews de novo. *Id.*

B. Legal Principles

A defendant is denied the right to due process when the prosecution fails to disclose evidence that is favorable to the defendant. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Evidence is considered favorable to the defendant when "if disclosed and used effectively it may make the difference between conviction and acquittal." *U.S. v. Bagley*, 473 U.S. 667, 676 (1985). To establish a *Brady* violation, the defendant must show that the evidence was favorable to him and that it was material. *Id.* at 675. Evidence is material if

"there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* at 682. The *Brady* rule applies even if police fail to disclose the exculpatory evidence to the prosecutor. *Kyles v. Whitley*, 514 U.S. 419, 438 (1995).

### C. The State Failed to Disclose Favorable and Material Evidence to Chong

On December 11, 2013, three days after the shooting, police interviewed three witnesses to the shooting: Ryan Thao, Mikey Thao, and Watou Lee. R. 328:31, 35-36. During these interviews, all three witnesses identified the shooter and gave descriptions of the shooter's clothing, personal characteristics, and direction of travel. R. 328:38-39, 50; R. 330:85-86; R. 331:34-39. None of these three witnesses identified Chong Lee as the shooter. R. 328:38; R. 331:35, 38. Police recorded all three interviews and held the recordings in evidence. R. 328:31-32, 35-37.

The same day police interviewed these witnesses, they arrested Paul Lee for the homicide. R. 331:30. While Paul was in custody, police gave him an ultimatum: "either you did it or your brother did it." R. 399:206-07; *see also* R. 242:12. Paul then said that Chong confessed to the shooting, and police shifted their focus to Chong, who was ultimately charged with the murder. R. 242:22; R. 399:87; R 1. Notably, the complaint is silent as to any eyewitnesses identifying Chong as the shooter and it relied almost exclusively on various witnesses claiming Chong confessed the shooting to them. *See* R. 1. Indeed, the complaint

makes no reference to these three witnesses' identification of the shooter, which would have provided the strongest support for probable cause. *See id.*

Police maintained these recordings in evidence for seven or eight months, but neither the statements nor the recordings of these witnesses were provided to the defense. R. 328:25-27, 32, 35-37. In preparation for trial, police realized that these witnesses were inadvertently disclosed to the defense via the whiteboard. *Id.* at 63. After police realized the defense was now aware of these witnesses, "[they] knew through discovery the defense would be able to obtain [this evidence]," so police destroyed it. *Id.* at 65. The police admitted to intentionally destroying the recordings to prevent the defense from accessing them. *Id.* The police were unable to recover the recordings, and they did not retain any notes or reports relating to these witnesses. R. 330:6; R. 331:34. In addition, the officers who took the original statements of these witnesses–and who made the decision to destroy this evidence–lacked a clear recollection of the contents of those statements. R. 330:85-86; R. 331:34, 36-39. As a result, Chong faced a challenging burden in establishing what this evidence would have shown. However, the information police could recall relating to these witnesses' initial statements, coupled with how police used–and did not use–this evidence reveals their favorable, material, and exculpatory nature.

According to Sgt. Thao, during the December 11 interview, Ryan Thao "provided [a] description of the person that ended up shooting the person." R. 328:50. Sgt. Thao testified that Ryan Thao gave a description of the shooter, the shooter's clothing, and the shooter's

direction of travel, but Sgt. Thao could not recall the specifics of those descriptions. *Id.* at 51; R. 330:86; R. 331:34. Sgt. Thao confirmed that Ryan Thao did not identify Chong as the shooter. R. 326:50-52; R. 329:35.

As to Mikey Thao, Sgt. Thao testified that he was very close to where the shooting occurred, and Mikey Thao identified the shooter by the direction the shooter was traveling. R. 328:36-37. Mikey Thao also gave a description of the shooter's clothing. *Id.* at 37. Sgt. Thao could not recall the specifics but mentioned "it was more of a jacket and some type of two-tone color or different color, and I can't give you precisely the color that he described." *Id.* Mikey Thao did not identify Chong as the shooter. *Id.* at 38

Finally, Sgt. Thao testified that Watou Lee identified the shooter by direction of travel. *Id.* at 39. Watou Lee also gave a description of the shooter's clothing, height, and weight, but Sgt. Thao did not testify to those specifics. R. 331:38-39. Watou Lee did not identify Chong as the shooter. *Id.* at 38. All three witnesses drew maps of where the shooter came from; these maps were also destroyed. *Id.* at 43.

While we do not know who these three witnesses identified as the shooter in their December 11, 2013 interviews, given the officers' lack of recollection and decision to destroy the evidence, we do know they did not identify Chong as the shooter. R. 328:38; R. 331:35, 38. It is axiomatic that any evidence identifying someone other than Chong as the shooter would have been favorable and material in determining whether the State proved beyond a reasonable doubt that Chong was the shooter. This information would have been even more crucial in this

circumstantial case where there was no physical evidence connecting Chong as the shooter, where no witnesses saw Chong shoot the victim, and where the State's case was based primarily on witnesses claiming Chong confessed. The limited information the defense was able to gain from the forgetful officers–that none of these three witnesses identified Chong as the shooter–is alone sufficient to establish that this evidence is, or was, material. Perhaps more importantly, the way police used–and did not use–this evidence reveals the powerful exculpatory nature of these witnesses' initial statements.

The same date as these interviews occurred, police arrested someone else: Paul Lee. R. 331:30. The logical conclusion from this is that these witnesses' statements supported the theory that Paul was the shooter. At a minimum, the statements of these witnesses could not have considerably undermined probable cause to believe Paul was the shooter. In addition, the compliant is based primarily on the statements of the other suspects, claiming that Chong confessed the crime to them. R. 1. Notably missing from the complaint is any eyewitness identification or description of the shooter, yet police had three witnesses who provided just that. R. 328:38-39, 50; R. 330:85-86; R. 331:34-39. Eyewitness testimony identifying Chong as the shooter would have given considerably more strength to the State's case, transforming it from one of circumstantial evidence to direct proof of guilt. This begs the question, *why not then include these witnesses*? The only reasonable conclusion is that these witnesses did not support the State's theory that Chong was the shooter. By destroying the evidence relating to these witnesses for the purpose of preventing Chong from obtaining this

evidence, "police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant." *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).

The State's failure to disclose these three witnesses' December 11, 2013 statements, in which these witnesses identified the shooter but did not identify Chong as the shooter, undermines confidence in the jury's finding that Chong pulled the trigger, particularly where the jury heard from no eyewitnesses as to the shooter's identity. The State had this evidence in its possession for seven or eight months yet never disclosed it to the defense. R. 328:25-27, 32, 35-37. Indeed, the State actively and intentionally concealed this evidence from the defense. *Id.* at 65. As a result, a *Brady* violation occurred. *Brady*, 373 U.S. at 87.

D. Dismissal is the Only Adequate Remedy

A new trial is generally the standard remedy for a *Brady* violation. *State v. Harris*, 2004 WI 64, ¶ 62, 272 Wis. 2d 80, 680 N.W.2d 737. This remedy, however, presumes that the defendant has obtained and is able to present the exculpatory material at a new trial. *See id.*, ¶¶ 17-28. In this case, Chong can never obtain the exculpatory evidence of these three witnesses' December 11, 2013 statements; the State made sure of that by intentionally destroying any record of their statements. R. 328:65. As a result, Chong is unable to ever present this evidence, and a new trial would not remedy the harm. The only remedy for the State's egregious conduct in this case is dismissal.

Other jurisdictions have concluded that dismissal is available for *Brady* violations. *U.S. v. Chapman*, 524 F.3d 1073, 1086-87, (9th Cir. 2008); *U.S. v. Pasha*, 797 F.3d 1122, 1139 (D.C. Cir. 2015); *Gov't of Virgin Islands v. Fahie*, 419 F.3d 249, 254-55 (3rd Cir. 2005). In *Fahie*, the Third Circuit provided a thoughtful analysis on the issue of whether dismissal is warranted for a *Brady* violation. *Fahie*, 419 F.3d 249. The court first concluded that although the United States Supreme Court has never directly addressed the issue, "it has left open the possibility of barring retrial in response to particularly egregious due process violations." *Id.* at 252 . In these cases, the willfulness of the government's actions and the prejudice to the defendant are highly relevant in determining whether the violation warrants dismissal. *Chapman*, 524 F.3d at 1086-87; *Pasha*, 797 F.3d at 1138-39; *Fahie*, 419 F.3d at 252-55.

In this case, dismissal is warranted. First, the government's actions in destroying this evidence was willful, intentional, made with "forethought," and in bad faith. R. 332:10-12. The government had this evidence in its possession for several months yet failed to disclose it to Chong. Indeed, once police realized that Chong had become aware of these witnesses and would be able to obtain their statements, it destroyed all evidence. R. 328:65. Second, the prejudice to Chong is substantial. In a typical *Brady* case, a defendant is able to bring a claim because he learns of the information at some point. It follows then that the harm of non-disclosure can be remedied by affording the defendant a new trial where he can present the evidence. But here, Chong cannot present the entirety of the witnesses' December 2013 statements because police destroyed them and are unable to recall specifics

as to their statements. Chong is left without powerful exculpatory evidence and a new trial is meaningless without that evidence. The only remedy that will cure the harm of the government's flagrant misconduct in this case is dismissal.

E. The Circuit Court's Decision

Chong filed a motion to dismiss, or alternatively suppress, on grounds that the State violated both *Brady* and *Youngblood* in failing to disclose the evidence relating to these three witnesses. R. 91; R. 97. The State responded to both claims. R. 102. The circuit court; however, addressed only the destruction of evidence aspect of Chong's claim, discussed below. R. 332:9-14.

II. CHONG LEE WAS DENIED HIS RIGHT TO DUE PROCESS WHEN POLICE INTENTIONALLY DESTROYED APPARENTLY EXCULPATORY EVIDENCE TO PREVENT HIM FROM OBTAINING THIS EVIDENCE

A. Introduction and Standard of Review

As discussed above, the State had material and exculpatory evidence in its possession for seven or eight months that it failed to disclose to Chong in violation of *Brady*. The State's subsequent destruction of this evidence serves as additional grounds for dismissal. In reviewing this issue, this Court will uphold the circuit court's finding of historical fact unless clearly erroneous. *State v. Luedtke*, 2015 WI 42, ¶ 37, 362 Wis. 2d 1, 863 N.W.2d 592. The Court reviews the issue of whether the State's destruction of

evidence violated the defendant's right to due process de novo. *Id.*

B. Legal Principles

In *Trombetta*, the Supreme Court held that the Due Process Clause of the Fourteenth Amendment requires that the State preserve all evidence that is apparently exculpatory. *California v. Trombetta*, 476 U.S. 479, 485-89 (1984). Subsequently in *Youngblood*, the Court expanded and refined the *Trombetta* rule. *Youngblood*, 488 U.S. 51. The Court held that where the defendant has established that police acted in bad faith in failing to preserve evidence, he need show only that the evidence was potentially useful. *Id.* at 57-58; *State v. Greenwold II*, 189 Wis. 2d 59, 67, 525 N.W.2d 294 (Ct. App. 1994); *Luedtke*, 362 Wis. 2d 1, ¶ 7. Where the defendant has established that the evidence was apparently exculpatory, a determination of bad faith is irrelevant. *Id.* Accordingly, "[a] defendant's due process rights are violated if police: (1) failed to preserve the evidence that is apparently exculpatory; or (2) acted in bad faith by failing to preserve evidence which is potentially exculpatory. *Greenwold II*, 189 Wis. 2d at 67.

C. The Evidence was Apparently Exculpatory

As an initial matter, the evidence in this case went far beyond "potentially useful." The term "potentially useful" has been broadly interpreted to include evidence "which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Youngblood*, 488 U.S. at 57. Evidence is potentially useful even where it is much more likely to provide inculpatory, rather than exculpatory results, such as

is the case where blood samples are discarded. *Luedtke*, 362 Wis. 2d 1, ¶ 56.

For example, in *Youngblood*, in the course of investigating a sexual assault of a child, police collected clothing from the child that contained evidence as to the possible identity of the perpetrator. *Youngblood*, 488 U.S. at 52-53. Police, however, did not refrigerate the clothing, and the testing was rendered inconclusive. *Id.* at 54. At trial, the defendant presented expert testimony that additional testing *could* have been done on the item, which *could* have exonerated the defendant, had the clothing been properly stored. *Id.* at 54-55. The Court deemed this evidence to be only potentially useful. *See id.* at 59.

In *Greenwold*, the defendant was charged with homicide by intoxicated use of a motor vehicle. *State v. Greenwold I*, 181 Wis. 2d 881, 882, 512 N.W.2d 237 (Ct. App. 1994). The issue at trial was whether the defendant or the decedent was driving at the time the car crashed. *Id.* at 882. Police conducted a limited investigation following the crash, moving the vehicle to an impound lot, which was not temperature controlled. *Id.* at 882-83. Police later conducted a more extensive investigation of the car and discovered blood inside, which could have supported the defendant's theory that he was not driving at the time of the crash. *Id.* at 884. However, the results of testing on the blood were inconclusive, as high temperatures could have had a detrimental effect on the samples. *Id.* at 883. The court held that this evidence was only potentially useful because the exculpatory value of the blood samples was not apparent. *Id.* at 885-86.

Case 2:22-cv-00620-WCG    Filed 11/11/22    Page 25 of 44    Document 26-3

Similarly, in *Luedtke*, the defendants[7] were charged with operating with a controlled substance, and lab testing confirmed the presence of substances in the defendants' blood. *Luedtke*, 362 Wis. 2d 1, ¶ 2. The samples, however, were subsequently destroyed, in accordance laboratory procedures, before the defendant had a chance to conduct its own testing. *Id.,* ¶ 3. The court explained that the samples were only potentially exculpatory because they were already subjected to testing that indicated the samples were more inculpatory than exculpatory. *Id.,* ¶ 56.

Here, the circuit court concluded that the evidence was only potentially exculpatory, without explanation. R. 332:10. This evidence, however, was much stronger than in the cases cited above, where all that can be said is that additional testing *could* have been conducted, the results of which *might* have been exculpatory. Here, the exculpatory value was much more than a possibility, as we know that these witnesses did not identify Chong as the shooter. R. 328:38; R. 331:35, 38.

As discussed above, the way the State used–and did not use– this evidence underscores the powerful exculpatory nature of these witnesses' initial statements. The same date the police interviewed these three witness, they arrested someone else: Paul Lee. R. 331:30. In addition, although the State had three eyewitnesses who identified the shooter, the State did not rely on these critical witnesses to support probable cause that Chong was the shooter. *See* R. 1. Instead, the State resorted to witnesses purporting that Chong confessed to them, many of whom were suspects. *Id.* The only reasonable conclusion for the

---

[7] *Luedtke*'s claims were consolidated with the similar claims of *Weissinger*.

State's omission of these three eyewitnesses is that they did not support its theory that Chong was the shooter. The State's handling of these witnesses' statements following the discovery that the defense had become aware of them even further highlights the exculpatory nature. If not exculpatory, why go so far as to destroy any evidence? This brings us to bad faith, which permeates the record in this case.

### D. The State Acted in Bad Faith

A defendant seeking to establish bad faith faces a high burden: he must show that "officers acted with official animus or made a conscious effort to destroy the exculpatory evidence"; negligence is insufficient. *Luedtke*, 362 Wis. 2d 1, ¶ 46 (quoting *Greenwold II*, 189 Wis. 2d at 69). Chong has shown bad faith. Indeed, the circuit court concluded that Chong established bad faith. R. 332:10. The court explained that police were aware of the potentially exculpatory nature of this evidence when they initially interviewed these witnesses, maintained the recordings for several months before destruction, maintained these witnesses on the "whiteboard," and subsequently reinterviewed these witnesses. *Id.* at 11. The court further found that the decision to destroy the recordings was made with "forethought," and that destroying the recordings was inconsistent with the spirit of the department's retention policies. *Id.* at 12.

The police made an intentional decision to destroy the evidence because "[they] knew through discovery the defense would be able to obtain [this evidence.]" R. 328:65. The State's conduct in this case is the precise type of bad faith that *Youngblood* sought to remedy, where "police themselves by their conduct

indicate that the evidence could form a basis for exonerating the defendant." *Youngblood*, 488 U.S. at 58.

E. The Circuit Court Applied the Wrong Remedy

The circuit court concluded that the evidence was potentially exculpatory, that police acted in bad faith, and that "action is warranted." R. 332:9-11, 13. The court, however, stated that dismissal is "unreasonable in light of the facts and circumstances associated with this case." *Id.* Instead, the court suppressed the testimony of these three witnesses. *Id.* After *Youngblood* introduced bad faith into the equation, the only proper remedy where a defendant has established bad faith is dismissal. But, even if this Court concludes that circuit courts may make a discretionary selection of a different remedy, the court erroneously exercised that discretion in this case.

1. The remedy balancing test is inapplicable where the government destroyed evidence in bad faith; rather, dismissal is required

In *Hahn*, this Court held that "[w]hen the government has destroyed criminal evidence, the imposition of a sanction is within the court's discretion[,]" relying on the Ninth Circuit's decision in *Roberts*. *State v. Hahn*, 132 Wis. 2d 351, 361, 392 N.W.2d 464 (Ct. App. 1986)(citing *U.S. v. Roberts*, 779 F.2d 565, 568-69 (9th Cir. 1986)). In *Roberts*, the court explained that the decision to impose sanctions when the government destroys evidence involves balancing "'the quality of the Government's conduct and the degree of prejudice to the accused.'" *U.S. v. Roberts*, 779 F.2d at 569 (9th Cir. 1986)(quoting *U.S. v. Loud*

*Hawk*, 628 F.2d 1139, 1152 (9th Cir. 1979). *Hahn*, however, was decided before *Youngblood* and *Greenwold I & II,* which introduced bad faith into the analysis. *Hahn*, 132 Wis. 2d 351; *Youngblood*, 488 U.S. at 57-58; *Greenwold I*, 181 Wis. 2d at 885-86; *Greenwold II*, 189 Wis. 2d at 67. As this Court recognized in *Huggett*, "it is unclear whether the balancing test referenced in *Hahn* remains viable." *State v. Huggett*, 2010 WI App 69, ¶ 25, 324 Wis. 2d 786, 783 N.W.2d 675.

The remedy contemplated in *Youngblood*, where the Court introduced bad faith, was dismissal. *Youngblood*, 488 U.S. at 52; *State v. Youngblood*, 734 P.2d 592, 592 (Ariz. Ct. App. 1986). Following *Youngblood,* Wisconsin has evaluated these cases with dismissal as the remedy. *Greenwold I*, 181 Wis. 2d at 886; *Greenwold II*, 189 Wis. 2d at 71; *Huggett*, 324 Wis. 2d 786, ¶¶ 25-28; *Luedtke*, 362 Wis. 2d 1, ¶¶ 5, 17. Several courts have held that dismissal is the only remedy available under *Youngblood*. *See e.g., McCarty v. Gilchrist*, 646 F.3d 1281, 1288 (10th Cir. 2011); Norman C. Bay, *Old Blood, Bad Blood, and Youngblood: Due Process, Lost Evidence, and The Limits of Bad Faith*, 86 Wash. U. L. Rev. 241, 296 (2008).[8]

Bad faith is a difficult burden for a defendant to prove and will be established in only the rarest of

---

[8] Citing *State v. Lang*, 862 P.2d 235, 245 (Ariz. Ct. App. 1993) (construing *Youngblood* to require dismissal); *Lolly v. State*, 611 A.2d 956, 960 (Del. 1992) ("[T]he court is left with an all or nothing proposition . . . ."); *United States v. Day*, 697 A.2d 31, 36 (D.C. 1997) (dismissal is the appropriate sanction under *Youngblood*).

cases.[9] Where a *Youngblood* violation has been established, there has already been a weighing of the government's conduct (bad faith) against the prejudice to the defendant (the exculpatory value of the destroyed evidence). *See Roberts*, 779 F.2d at 569. As a result, the balancing test is not appropriate in cases where bad faith has already been established. In addition, mandating dismissal in cases where the government destroys evidence in bad faith will have an important deterrent effect to safeguard against future violations. *See U.S. v. Leon*, 468 U.S. 897, 906 (1984). In arguing *Huggett*, the State acknowledged that "'While dismissal may be proper where the State has acted in bad faith in failing to preserve exculpatory evidence (at least 'apparently exculpatory' evidence) dismissal should not be an automatic remedy in cases' not involving bad faith." *Huggett*, 324 Wis. 2d 786, ¶ 26. Dismissal should be automatic where the defendant has shown bad faith reaching the egregiousness of police conduct in this case.

> 2. Even if the balancing test remains viable, the court did not conduct a proper balancing analysis

In this case, the circuit court concluded that Chong satisfied the *Youngblood* test by finding that the evidence was potentially exculpatory and that the government acted in bad faith. R. 332:10. The court declined to dismiss the case, explaining that this remedy is "unreasonable in light of the facts and circumstances associated with this case. That said, the alternative remedy of suppression is appropriate."

---

[9] The question of the proper remedy "is largely theoretical given the paucity of cases finding bad faith, yet it is important and demonstrates a startling lack of agreement on a basic question." Bay, *supra* at 296.

*Id.* at 13. The court, however, did not explain what particular "facts and circumstances" made dismissal unreasonable and suppression appropriate. *See id.* Here, the remedy of suppression actually had a more detrimental effect on Chong's case. As discussed above, each of these eyewitnesses gave a description of the shooter: none of them identified Chong as that person. R. 328:38-39, 50; R. 330:85-86; R. 331:34-39. In this circumstantial case, without any other witnesses identifying the shooter, the testimony of these three witnesses would have established reasonable doubt as to whether Chong was the shooter.

Chong acknowledges that dismissal is a drastic remedy, but this remedy has been approved even in a homicide case. *Huggett*, 324 Wis. 2d 786, ¶ 1. The facts of this case are even more concerning than *Huggett*. First, in *Huggett*, the exculpatory evidence was in the possession of a third-party (the cell phone provider), not the State. *Id.*, ¶ 17. While this Court concluded that the State need not have had exclusive possession of the evidence, the fact that the government in this case did have sole possession of this evidence, heightens the concern. *See id.*, ¶ 16. Second, this is not a case where evidence was passively destroyed, like in *Huggett* where the cell phone company deleted the evidence consistent with its retention policies. *Id.*, ¶ 10. While a defendant need not show that the State affirmatively destroyed evidence, as opposed to passively allowed evidence to be destroyed, the fact that police did so in this case makes the government's conduct more egregious. *See id.*, ¶ 20. This is particularly true where police intentionally destroyed the evidence because they knew the defendant would be able to obtain it. R.

326:65. The intentional destruction of any evidence of these three witnesses, who could identify the shooter and who did not identify Chong, with the purpose of preventing this evidence from being disclosed to the defense, rendered the trial fundamentally unfair. The only suitable remedy for the egregious wrong in this case is dismissal.

## III. CHONG LEE HAS BEEN DENIED THE RIGHT TO A MEANINGFUL APPEAL DUE TO THE ABSENCE OF TRANSCRIPTS

### A. Introduction

Prior to trial, after lengthy litigation, the court ruled that the State could not present evidence that Chong said he would "beat this case." R. 95. However, this evidence was ultimately presented to the jury through testimony. R. 404:220. In addition, during deliberations, the jury asked to see the letter wherein Chong wrote that he would "beat this case," and the court sent the letter to the jury. R. 271. Chong asserted that trial counsel was deficient in failing to object to this evidence. R. 298. During the postconviction process, however, Chong learned that critical portions of the trial were not transcribed, including various in-chambers evidentiary hearings as well as the discussions and rulings that took place in response to the jury's questions. Because there are no transcripts of these portions of the proceedings, Chong cannot assert a claim relative to the improper admission of the "beat this case" evidence.

B. Legal Principles and Standard of Review

The Wisconsin Constitution guarantees a defendant an absolute right to appeal. Wis. Const. art I, § 21(1). As part of this guarantee, a defendant has the right to a "meaningful" appeal. *State v. Perry*, 136 Wis. 2d 92, 98-99, 401 N.W.2d 748 (1987). To ensure the defendant has a right to a "meaningful" appeal, the "law requires that a defendant be furnished a full transcript—or a functionally equivalent substitute that, in a criminal case, beyond a reasonable doubt, portrays in a way that is meaningful to the particular appeal exactly what happened in the course of trial." *Id.* at 99. An incomplete record that prevents a defendant "from demonstrating possible error constitutes a constitutional deprivation of the right to appeal." *Id.* Where an incomplete record denies the defendant the right to a meaningful appeal, a new trial must follow. *Id.*

If a portion of the trial record is missing, a defendant need show only a "colorable need" for the missing portion. *Id.* at 108. A defendant has a "colorable need" for a missing portion of the record when evidence of that missing portion might lend to a claim of prejudicial error on appeal. *Id.* at 101. A defendant need not establish prejudicial error; he need only allege "that there is some likelihood that the missing portion would have shown an error that was arguably prejudicial." *Id.* at 103. At the same time, the possible "error cannot be of such a trivial nature that it is clearly harmless." *Id.* at 108.

Once the defendant demonstrates a "colorable need" for the missing portion of the record, the duty then shifts to the circuit court "to determine whether

the missing portion of the record can be reconstructed." *Id.* at 101. If the record cannot be reconstructed beyond a reasonable doubt and without speculation, the remedy is a new trial. *Id.* If the circuit court finds that reconstruction is possible, this Court reviews the reconstruction procedure under an erroneous exercise of discretion standard. *State v. Raflik*, 2001 WI 129, ¶ 36, 248 Wis. 2d 593, 636 N.W.2d 690. Whether the reconstruction is adequate is reviewed de novo. *See id.*, ¶ 32.

### C. Chong has Established a Colorable Need for the Missing Transcripts

Prior to trial, Chong sought to exclude any references he made over the phone or in writing that he would "beat this case." R. 30 at 1. The State filed three separate briefs vigorously arguing for the admission of Chong's reference to "beat this case" on grounds that these statements showed a consciousness of guilt. R. 37; R. 71; R. 89. The circuit court ruled that reference to "beat this case" was inadmissible because the statement was irrelevant and would only confuse matters. R. 95.

Despite the court's ruling, the State presented evidence to the jury that Chong said he would "beat this case." Specifically, the State introduced these statements to the jury through Stephanie Thao, via a letter Chong purportedly wrote to Thao. R. 404:220. During deliberations, the jury asked to see the letter. R. 271. There is, however, no transcript of the discussion following the jury's question, of any arguments of counsel, or of the court's decision on how

to respond to the jury.[10]  The record simply shows that the court sent the letter to the jury with the majority of its original form redacted; however, one key portion, "I'm pretty sure I'll beat this case tho[,]" was not redacted.  *Id.* at 2-4; R. 167.

The transcripts do not reflect any objection from trial counsel as to the admission of the "beat this case" reference or to the jury viewing the letter with the phrase "beat this case."  Based on the circuit court's plain ruling that this phrase was not to be presented to the jury, Chong asserted in his postconviction motion that counsel was ineffective in failing to object. R. 298 at 1, 8-9.  When Chong questioned counsel on their actions at the *Machner*[11] hearing, new facts emerged.  Lead defense counsel, Attorney Vishny, could not offer any explanation as to why an objection was not made. R. 396:35.  Attorney Vishny agreed that reference to "beat this case" should not have been in evidence but could not recall how this evidence ultimately got before the jury, whether counsel failed to object or whether the court admitted the evidence over objection.  *See id.* at 41-43.

Co-counsel, Attorney Weitz, agreed that reference to "beat this case" was inadmissible.  R. 397:20.  Attorney Weitz could not recall why he did not object to this reference given the court's prior ruling.  *Id.* at 21-22.  He did recall though that the parties spent "quite a bit of time in chambers" going through various pieces of evidence, and that the court made rulings in chambers as to what evidence was

---

[10] It appears from the transcripts that after the jury was sent out to deliberate, the court reporter was relieved, and a different court reporter came in to transcribe the verdict.  R. 410:188; R. 391.

[11] *State v. Machner,* 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

admissible. *Id.* at 22. Attorney Weitz could not recall whether he objected in chambers to this reference coming into evidence. *Id.* at 23. As to the letter going to the jury at its request, Attorney Weitz recalled that when the jury presented questions, the parties reconvened in the courtroom to discuss the questions. *Id.* at 24-25. Attorney Weitz could not remember whether he objected to the letter containing "beat this case" going to the jury. *Id.* at 26.

As a result, Chong is unable to determine how or why the "beat this case" reference, previously deemed inadmissible, got before the jury. *See* R. 95. This leaves Chong unable to identify or assert where his claim of error lies: whether his claim is that counsel was ineffective in failing to object or whether the circuit court erroneously admitted this evidence over counsel's objection. Because this evidence was ruled inadmissible and because it was ultimately–for reasons unknown–presented to the jury, Chong has shown "that there is some likelihood that the missing portion would have shown an error that was arguably prejudicial." *Perry*, 136 Wis. 2d at 103.

While Chong is not required to establish prejudice, he has done so. First, his comment that he would "beat this case" supported the inference that Chong was not seeking to prove his innocence; rather, that he would be acquitted of charges of which he was actually guilty. In colloquial terms, that he would "get off." Second, the State agreed that these statements were incriminating when it vigorously argued for their admission as evidencing a "consciousness of guilt." R. 37, 71, 89. Finally, the jury took particular note of these statements in deliberations, requesting to see the letter in which Chong purportedly told Thao he

would "beat this case."  R. 271.  Accordingly, Chong has satisfied the notably low threshold of establishing "that there is *some likelihood* that the missing portion would have shown an error that was *arguably* prejudicial."  *Perry*, 136 Wis. 2d at 103 (emphasis added).

### D. The Record Cannot be Reconstructed

During the postconviction process, Chong attempted to reconstruct the record; however, defense counsel could not recall the contents of these off-the-record discussions.    R. 396:37, 39, 40-43; R. 397:23-26.  The State offered no reconstruction of the record.  *See* R. 306.  Ultimately, the Court indicated that it does not "have an independent recollection" of the discussions relative to the jury questions.  R. 396:37-38.   Based on the testimony of counsel and the comments of the court, it is impossible to speculate as to what occurred off-the-record, much less recreate an accurate record beyond a reasonable doubt. Accordingly, a new trial is warranted.    *Perry*, 136 Wis. 2d at 101.

### E. The Circuit Court's Decision

The circuit court concluded "that the why question to the allowance of the statement is not one of the type of question that would lead to a showing of prejudice[,]" explaining that Chong was acquitted of the charges (two of the intimidation charges) to which the statement pertained. R. 398:21.  However, there is no indication in the record that the jury used this evidence to consider only those charges, as the jury was never instructed to limit its use of this evidence. As the State argued in trying to get this evidence

admitted, this evidence was also relevant to the homicide charge. R. 71 at 1.

In addition, the court concluded that the "beat this case" evidence was meaningless in light of the other evidence, pointing to the various individuals who testified that Chong confessed to them. R. 398:13-15, 21. However, there was considerable reason to doubt these purported confessions. First, several of these witnesses, including Kong Vang, Melanie Thao, and Stephanie Thao, testified that Chong is known for making up stories to impress people and they took his statements as a joke. *See e.g.*, R. 402:75-76; R. 404:168-69; R. 405:17. Second, three of these witnesses, Phong Lee, Paul Lee, and Joe Thor, were the initial suspects who immediately ran from the scene and disposed of their clothing in a dumpster, giving ample motive to falsify their claims. R. 401:70, 82-85, 87-88, 118. Indeed, at trial, Phong and Paul denied implicating Chong and invoked their right against self-incrimination. R. 402:150, 176-77; R. 403:173, 179. Finally, there was considerable evidence that police threatened, coerced, and led several witnesses into claiming that Chong implicated himself in the shooting. R. 402:62-63; R. 403:182; R. 404:170; R. 406:72. In any event, there was no physical evidence to corroborate these purported confessions, and a criminal conviction "will not stand on the basis of a defendant's confession alone"; instead, there must independent evidence to corroborate the confession. *State v. Bannister*, 2007 WI 86, ¶ 23, 302 Wis. 2d 158, 734 N.W.2d 892.

The missing portions of the record are not an "inconsequential omission or a slight inaccuracy in the record"; the admission of this evidence was extensively

litigated and was repeatedly presented to the jury, despite the court's ruling that it was inadmissible. *Perry*, 136 Wis. 2d at 100; R. 30; R. 37; R. 71; R. 89; R. 95; R. 271; R. 404:219-20. As the State argued in trying to get this statement admitted, it evidenced a consciousness of guilt. R. 37, 71, 89. Indeed, the jury took specific note of this evidence, asking to see the letter. R. 271. As a result, Chong has satisfied the notably low threshold of establishing "that there is *some likelihood* that the missing portion would have shown an error that was *arguably* prejudicial." *Perry*, 136 Wis. 2d at 103 (emphasis added). A new trial is required. *Id.* at 99.

## CONCLUSION

For the reasons outlined above, Chong Lee requests that this Court vacate the judgment of conviction and dismiss the case with prejudice as a result of the State's egregious failure to disclose evidence and its subsequent destruction of that evidence. In the alternative, Chong Lee requests that this Court grant him a new trial because he has been denied the right to a meaningful appeal.

Dated this 3rd day of March, 2019

Signed:

_____

Ana L. Babcock
State Bar. No. 1063719
Attorney for Defendant-Appellant

## CERTIFICATION AS TO FORM/LENGTH

I certify that this brief meets the form and length requirements of Rule 809.19(8)(b) and (c) in that it is: proportional serif font, minimum printing resolution of 200 dots per inch, 13 point body text, 11 point for quotes and footnotes, leading of minimum 2 points and maximum of 60 characters per line of body text. The length of the brief is 8,617 words.

Dated this 3rd day of March, 2019

Signed:

_____

Ana L. Babcock
State Bar. No. 1063719
Attorney for Defendant-Appellant

# CERTIFICATE OF COMPLIANCE
## WITH RULE 809.19(12)

I hereby certify that:

I have submitted an electronic copy of this brief, excluding the appendix, if any, which complies with the requirements of §. 809.19(12). I further certify that:

This electronic brief is identical in content and format to the printed form of the brief filed on or after this date.

A copy of this certificate has been served with the paper copies of this brief filed with the court and served on all opposing parties.

Dated this 3rd day of March, 2019

Signed:

_____

Ana L. Babcock
State Bar. No. 1063719
Attorney for Defendant-Appellant

# CERTIFICATE AS TO APPENDICES

I hereby certify that filed with this brief, either as a separate document or as part of this brief, is an appendix that complies with § 809.19(2)(a) and that contains: (1) a table of contents; (2) relevant trial court record entries; (3) the findings or opinion of the trial court; and (4) portions of the record essential to an understanding of the issues raised, including oral or written rulings or decisions showing the trial court's reasoning regarding those issues.

I further certify that if the record is required by law to be confidential, the portions of the record included in the appendix are reproduced using first names and last initials instead of full names of persons specifically including juveniles and parents of juveniles, with a notation that the portions of the record have been so reproduced to preserve confidentiality.

Dated this 3rd day of March, 2019

Signed:

_____

Ana L. Babcock
State Bar. No. 1063719
Attorney for Defendant-Appellant

Case 2:22-cv-00620-WCG    Filed 11/11/22    Page 42 of 44    Document 26-3

APPENDIX

# TABLE OF CONTENTS OF APPENDIX

App. A...…………….……………Written order denying admissibility of "beat this case." (R. 95).

App. B.…………………………... Letter to Stephanie Thao referencing "beat this case." (R. 167).

App. C.…………………………...Question from jury and court's response referencing "beat this case." (R. 271).

App. D.…………………………Excerpt from May 26, 2015 motion hearing (R. 328).

App. E.…………………………Excerpt from September 29, 2015 motion hearing (R. 330).

App. F.…………………………Excerpt from January 8, 2016 motion hearing (R. 331).

App. G.…………………………Excerpt from February 3, 2016 oral ruling hearing (R. 332).

App. H.…………………………Excerpt from February 26, 2018 *Machner* hearing (R. 396).

App. I.…………………………Excerpt from May 1, 2018 *Machner* hearing (R. 397).

App. J.…………………………Oral ruling on defendant's postconviction motion (R. 398).