**RECEIVED**
**05-08-2019**
**CLERK OF COURT OF APPEALS OF WISCONSIN**

STATE OF WISCONSIN

C O U R T   O F   A P P E A L S

DISTRICT III

———————

Case No. 2018AP1741-CR

———————————————————————

STATE OF WISCONSIN,

        Plaintiff-Respondent,

    v.

CHONG LENG LEE,

        Defendant-Appellant.

———————————————————————

ON APPEAL FROM A JUDGMENT OF CONVICTION AND
AN ORDER DENYING POSTCONVICTION RELIEF,
ENTERED IN OUTAGAMIE COUNTY CIRCUIT COURT,
THE HONORABLE GREGORY B. GILL, JR., PRESIDING

———————————————————————

**RESPONSE BRIEF OF PLAINTIFF-RESPONDENT**

———————————————————————

JOSHUA L. KAUL
Attorney General of Wisconsin

SCOTT E. ROSENOW
Assistant Attorney General
State Bar #1083736

Attorneys for Plaintiff-
Respondent

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-3539
(608) 266-9594 (Fax)
rosenowse@doj.state.wi.us

Exhibit 3

# TABLE OF CONTENTS

Page

ISSUES PRESENTED .....................................................1

STATEMENT ON ORAL ARGUMENT AND PUBLICATION........................................................1

INTRODUCTION ........................................................2

STATEMENT OF THE CASE .............................................2

ARGUMENT ............................................................5

    I.    Chong is not entitled to any relief under *Brady* and its progeny. ........................................5

        A.    A defendant faces a high hurdle for proving a *Brady* violation. ..........................5

        B.    Chong has not shown a *Brady* violation. ......................................................6

            1.    The police suppressed evidence under *Brady*. ......................6

            2.    The suppressed evidence was not favorable to the defense. ...........7

            3.    In any event, the suppressed evidence is not material...................9

        C.    Chong is not entitled to dismissal under *Brady*. ........................................... 14

    II.    Chong is not entitled to dismissal on destruction-of-evidence grounds. ...................... 17

        A.    Destruction of evidence does not automatically entitle a defendant to dismissal.................................. 17

        B.    The police did not violate due process by deleting audio recordings of interviews. .......................... 17

            1.    The deleted audio recordings were not apparently exculpatory. .................................. 18

i

2. The police did not destroy potentially useful evidence in bad faith. ........................................ 20

C. Even if the police violated due process, the circuit court properly exercised its discretion in refusing to dismiss this case. ................................ 22

D. Dismissal is not required where bad faith is shown. .......................................... 25

III. Missing transcripts from two non-evidentiary parts of Chong's trial do not entitle him to a new trial. ................................. 28

A. Chong does not have a colorable need for the missing transcripts. ........... 28

B. In any event, the absence of transcripts is harmless. ........................ 33

CONCLUSION .................................................................. 37

## TABLE OF AUTHORITIES

**Cases**

*Arizona v. Fulminante*,
499 U.S. 279 (1991) ........................................................... 11

*Arizona v. Youngblood*,
488 U.S. 51 (1988) ..................................................... 17, 20

*Armstrong v. Daily*,
786 F.3d 529 (7th Cir. 2015) ....................................... 14, 15

*Brady v. Maryland*,
373 U.S. 83 (1963) ........................................................... 1, 6

*California v. Trombetta*,
467 U.S. 479 (1984) ................................................7, *passim*

*Clark v. Mudge*,
229 Wis. 2d 44, 599 N.W.2d 67 (Ct. App. 1999)............... 14

*Gill v. City of Milwaukee*,
850 F.3d 335 (7th Cir. 2017)............................................. 15

*McCarthy v. Pollard,*
  656 F.3d 478 (7th Cir. 2011) .............................................. 18

*Miller v. Hanover Ins. Co.,*
  2010 WI 75, 326 Wis. 2d 640, 785 N.W.2d 493 ................. 31

*Monfils v. Taylor,*
  165 F.3d 511 (7th Cir. 1998) .............................................. 21

*State v. Amundson,*
  69 Wis. 2d 554, 230 N.W.2d 775 (1975),
  *overruled on other grounds by*
  *Wayerski*, 385 Wis. 2d 344 .....................................7, *passim*

*State v. Avery,*
  2011 WI App 124, 337 Wis. 2d 351, 804 N.W.2d 216 ....... 14

*State v. Bembenek,*
  140 Wis. 2d 248, 409 N.W.2d 432 (Ct. App. 1987) ............ 12

*State v. Britt,*
  203 Wis. 2d 25, 553 N.W.2d 528 (Ct. App. 1996) ........ 12, 13

*State v. Brown,*
  2003 WI App 34, 260 Wis. 2d 125,
  659 N.W.2d 110 ................................................................. 30

*State v. Chinavare,*
  185 Wis. 2d 528, 518 N.W.2d 772 (Ct. App. 1994) ............ 19

*State v. Cummings,*
  199 Wis. 2d 721, 546 N.W.2d 406 (1996) .......................... 30

*State v. Delgado,*
  2002 WI App 38, 250 Wis. 2d 689, 641 N.W.2d 490 ......... 29

*State v. Elm,*
  201 Wis. 2d 452, 549 N.W.2d 471 (Ct. App. 1996) ............ 34

*State v. Erickson,*
  227 Wis. 2d 758, 596 N.W.2d 749 (1999) .......................... 29

*State v. Greenwold,*
  181 Wis. 2d 881, 512 N.W.2d 237 (Ct. App. 1994) ...... 20, 26

*State v. Greenwold,*
  189 Wis. 2d 59,
  525 N.W.2d 294 (Ct. App. 1994) ............................ 17, 20, 26

Case 2:22-cv-00620-WCG    Filed 11/11/22    Page 4 of 45    Document 26-4

*State v. Hahn*,
132 Wis. 2d 351, 392 N.W.2d 464 (Ct. App. 1986)...... 22, 26

*State v. Harris*,
2004 WI 64, 272 Wis. 2d 80, 680 N.W.2d 737........6, *passim*

*State v. Hauk*,
2002 WI App 226, 257 Wis. 2d 579,
652 N.W.2d 393 ......................................................... 36, 37

*State v. Hines*,
173 Wis. 2d 850, 496 N.W.2d 720 (Ct. App. 1993)............ 31

*State v. Honig*,
2016 WI App 10, 366 Wis. 2d 681, 874 N.W.2d 589......... 32

*State v. Huggett*,
2010 WI App 69, 324 Wis. 2d 786,
783 N.W.2d 675 ............................................... 17, 22, 24, 26

*State v. Hunt*,
2003 WI 81, 263 Wis. 2d 1, 666 N.W.2d 771..................... 22

*State v. Hunt*,
2014 WI 102, 360 Wis. 2d 576, 851 N.W.2d 434.............. 33

*State v. Jackson*,
2011 WI App 63, 333 Wis. 2d 665, 799 N.W.2d 461......... 32

*State v. Jackson*,
2016 WI 56, 369 Wis. 2d 673, 882 N.W.2d 422................. 14

*State v. Jenkins*,
168 Wis. 2d 175, 483 N.W.2d 262 (Ct. App. 1992)............ 13

*State v. Jeske*,
197 Wis. 2d 905, 541 N.W.2d 225 (Ct. App. 1995)...... 22, 23

*State v. King*,
2005 WI App 224, 287 Wis. 2d 756, 706 N.W.2d 181....... 33

*State v. Luedtke*,
2015 WI 42, 362 Wis. 2d 1, 863 N.W.2d 592........17, *passim*

*State v. Magett*,
2014 WI 67, 355 Wis. 2d 617, 850 N.W.2d 42.................. 33

*State v. Marten-Hoye*,
2008 WI App 19, 307 Wis. 2d 671, 746 N.W.2d 498......... 36

Case 2:22-cv-00620-WCG    Filed 11/11/22    Page 5 of 45    Document 26-4

*State v. McCready,*
   2000 WI App 68, 234 Wis. 2d 110, 608 N.W.2d 762 ......... 25

*State v. Munford,*
   2010 WI App 168, 330 Wis. 2d 575, 794 N.W.2d 264 ....... 18

*State v. Nelson,*
   2014 WI 70, 355 Wis. 2d 722, 849 N.W.2d 317 ................ 33

*State v. Nieves,*
   2017 WI 69, 376 Wis. 2d 300, 897 N.W.2d 363 ................ 34

*State v. Pankow,*
   144 Wis. 2d 23, 422 N.W.2d 913 (Ct. App. 1988) ............. 19

*State v. Parker,*
   2002 WI App 159, 256 Wis. 2d 154, 647 N.W.2d 430 ....... 28

*State v. Perry,*
   136 Wis. 2d 92, 401 N.W.2d 748 (1987) ............... 28, 30, 33

*State v. Prineas,*
   2009 WI App 28, 316 Wis. 2d 414, 766 N.W.2d 206 ......... 34

*State v. Ringer,*
   2010 WI 69, 326 Wis. 2d 351, 785 N.W.2d 448 ................ 31

*State v. Rockette,*
   2006 WI App 103, 294 Wis. 2d 611, 718 N.W.2d 269 ..... 6, 7

*State v. Ronald L.M.,*
   185 Wis. 2d 452, 518 N.W.2d 270 (Ct. App. 1994) ............ 23

*State v. Ryan,*
   2012 WI 16, 338 Wis. 2d 695, 809 N.W.2d 37 ................... 35

*State v. Wayerski,*
   2019 WI 11, 385 Wis. 2d 344, 922 N.W.2d 468 ......... 6, 7, 11

*State v. Weed,*
   2003 WI 85, 263 Wis. 2d 434, 666 N.W.2d 485 ................ 34

*Strickland v. Washington,*
   466 U.S. 668 (1984) ........................................................ 34

*Sukala v. Heritage Mut. Ins. Co.,*
   2000 WI App 266, 240 Wis. 2d 65, 622 N.W.2d 457 ......... 27

*Triplett v. State,*
   65 Wis. 2d 365, 222 N.W.2d 689 (1974) ........................... 36

*Turner v. United States*,
137 S. Ct. 1885 (2017) ................................................. 10, 13

*United States v. Borda*,
848 F.3d 1044 (D.C. Cir.), *cert. denied*,
137 S. Ct. 2315 (2017) ................................................. 10

*United States v. Grintjes*,
237 F.3d 876 (7th Cir. 2001) ......................................... 8, 14

*United States v. Roberts*,
779 F.2d 565 (9th Cir. 1986) ........................................... 26

*Whitlock v. Brueggemann*,
682 F.3d 567 (7th Cir. 2012) ........................................... 15

*Young v. Young*,
124 Wis. 2d 306, 369 N.W.2d 178 (Ct. App. 1985)........... 29

*Youngblood v. W. Virginia*,
547 U.S. 867 (2006) ........................................................ 6

## Statutes

Wis. Stat. § 19.35(1)(am)2.a ............................................ 21

Wis. Stat. § 19.35(1)(am)2.b ............................................ 21

Wis. Stat. § (Rule) 809.22(2)(b) ........................................ 1

Wis. Stat. § (Rule) 809.23(1)(b)1 ...................................... 1

Wis. Stat. § (Rule) 809.23(1)(b)3 ...................................... 1

Wis. Stat. § 905.10 .......................................................... 21

Wis. Stat. § 908.01(3) ...................................................... 12

Wis. Stat. § 908.01(4)(a)1. ............................................... 11

Wis. Stat. § 908.01(4)(a)3. ............................................... 13

Wis. Stat. § 908.02 .......................................................... 13

Wis. Stat. § 908.03 .......................................................... 13

## ISSUES PRESENTED

1.     Is Defendant-Appellant Chong Leng Lee entitled to dismissal of this case under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny?

The circuit court implicitly answered "no."

This Court should answer "no."

2.     Is Chong[1] entitled to dismissal of this case on the grounds that the State destroyed potentially exculpatory evidence?

The circuit court answered "no."

This Court should answer "no."

3.     Is Chong entitled to a new trial on the grounds that two non-evidentiary parts of his trial were not transcribed?

The circuit court answered "no."

This Court should answer "no."

## STATEMENT ON ORAL ARGUMENT AND PUBLICATION

The State does not request oral argument because the briefs adequately set forth the facts and applicable precedent. *See* Wis. Stat. § (Rule) 809.22(2)(b). The State does not recommend publication because "[t]he issues are decided on the basis of controlling precedent and no reason appears for questioning or qualifying the precedent," Wis. Stat. § (Rule) 809.23(1)(b)3., and because "[t]he issues involve no more than the application of well-settled rules of law to a recurring fact situation," Wis. Stat. § (Rule) 809.23(1)(b)1.

---

[1] The State refers to Chong Lee as "Chong" in this brief because another person named "Lee" is mentioned many times in this brief.

# INTRODUCTION

A jury convicted Chong of first-degree intentional homicide for shooting and killing a man during a fight at a nightclub in Appleton in December 2013. Police interviewed possible witnesses right after the shooting and later that month. Three men—Mikey Thao, Ryan Thao, and Watou Lee—asked to remain anonymous because they feared for their safety. To honor that request, police deleted the audio recordings of the interviews with those three men. Police re-interviewed those three men in April 2015. Chong's lawyers were aware of those three men before trial, had recordings of their April 2015 interviews, and had a defense investigator interview at least one of them. Yet Chong did not call them to testify at his trial.

Chong instead moved to dismiss this case because the police had deleted the December 2013 audio interviews with those three men. Chong alternatively moved to prevent the State from introducing any trial testimony from those three men implicating him in the shooting. The circuit court granted Chong's suppression request but denied his motion for dismissal. Chong argues on appeal that the circuit court should have dismissed this case.

This Court should affirm Chong's convictions. The police did not violate Chong's right to due process by deleting their initial audio interviews with Mikey Thao, Ryan Thao, and Watou Lee. And even if that action violated due process, the circuit court properly exercised its discretion when it denied Chong's motion to dismiss.

# STATEMENT OF THE CASE

Joshua Richards was shot in the head and killed at the Luna Lounge in Appleton late at night on December 8, 2013. (R. 1:3.) Police officers "spoke with numerous witnesses about what had occurred." (R. 1:3.) Video footage showed Chong and

2

"several other" people run out of the Luna Lounge about six seconds after the shooting. (R. 1:5.) The shooting happened as Richards was involved in a fight with Joe Thor, Paul Lee, and Phong Lee. (R. 1:4.) Joe Thor and Paul Lee told police that Chong was the shooter. (R. 1:4.)

On December 11, 2013, police interviewed three possible witnesses to the shooting—Watou Lee ("Watou"), Mikey Thao ("Mikey"), and Ryan Thao ("Ryan"). (R. 328:31.) All three men were "very concerned about their safety and they did not want to be identified. They did not want to get involved." (R. 328:44.) They knew that the people who were involved in the shooting had been involved in prior violent acts involving firearms. (R. 331:18–21, 27, 42.) Police audio recorded their interviews with Watou, Mikey, and Ryan. (R. 328:49.) Sometime between early 2014 and July or August 2014, police deleted the audio recordings of those interviews because the men had asked not to be identified. (R. 328:31–32, 35–37, 57–58; 329:53.)

The State charged Chong with first-degree intentional homicide with use of a dangerous weapon and possession of a firearm by a felon. (R. 1:2.) It later added four counts of felony intimidation of a witness. (R. 7.)

A whiteboard at the police station had names and pictures of people who were at or near the Luna Lounge on the night of the shooting. (R. 328:43.) Police provided a picture of the whiteboard to Chong's lawyers, inadvertently disclosing the names and pictures of Watou, Mikey, and Ryan. (R. 328:60, 63–64; 329:54.)

Police then interviewed Watou, Mikey, and Ryan in April 2015. (R. 328:30, 56.) The purpose of the second interviews was to tell those three men that their identities had been revealed to Chong and his lawyers, and to try to persuade them to come forward and be witnesses in this case. (R. 328:35, 64, 71–74; 330:37, 40.)

3

At a pretrial hearing on a motion to compel discovery in May 2015, one of Chong's trial lawyers said that the State had given her "tapes" and "reports" of the April 2015 police interviews of Watou, Mikey, and Ryan. (R. 328:26.) After police officers testified that they had deleted the audio recordings of the December 2013 interviews with those three witnesses, trial counsel said that she was "surprised" to learn that those recordings had been deleted. (R. 328:75.)

Police looked for backup copies of the deleted interviews to give to Chong's lawyers, but the search effort was unsuccessful. (R. 329:52–53; 330:6.)

In September 2015, Chong moved to dismiss this case or to alternatively prevent the State from eliciting incriminating testimony from Watou, Mikey, and Ryan at trial. (R. 91.) Chong argued that the State violated due process by deleting the December 2013 interviews of those three men. (R. 97:5–8.) The circuit court granted Chong's suppression request but denied his motion for dismissal. (R. 332:10–13.)

The parties also litigated a pretrial issue involving the admissibility of Chong's statements to various people saying that he would "beat this case." The State argued that those statements were relevant to proving the witness-intimidation charges and thus were also relevant to Chong's consciousness of guilt on the homicide charge. (R. 89:2–3.) Chong argued that this evidence was not relevant. (R. 72.) The circuit court ruled that this evidence was inadmissible at trial. (R. 95:2.)

Chong had an 11-day jury trial with more than 40 witnesses. (R. 400–410.) As explained in the argument section below, eight witnesses testified that Chong had confessed to the shooting. One witness read a letter from Chong, and the phrase "beat this case" was not redacted. (R. 404:220.) At the jury's request, the court provided the jury with a copy of that

4

letter while it was deliberating. (R. 271.) No discussion of the jury's request was transcribed.

The jury convicted Chong of the homicide count and two witness-intimidation counts, but it acquitted him of the other two witness-intimidation counts. (R. 391:3–5.)

Chong filed a postconviction motion alleging, as relevant here, that his trial lawyers were ineffective by not objecting to the jury hearing his statement that he would "beat this case." (R. 298:8–9.) At a *Machner* hearing, Chong's two trial lawyers did not remember why they did not object to that evidence being admitted or whether they had objected when Chong's letter was given to the jury while deliberating. (R. 396:35, 41–43; 397:21–26.) One of Chong's trial lawyers "suspect[ed]" that the issue might have been discussed during an unrecorded in-chambers conference. (R. 397:22–23.)

Chong then argued that he was entitled to a new trial because he did not have transcripts of the in-chambers conference or the part of the trial where the court provided the deliberating jury with his letter. (R. 305:8–15.)

The circuit court denied Chong's postconviction motion. (R. 308; 398:18–22.) Chong appeals his judgment of conviction and the order denying his postconviction motion. (R. 310.)

## ARGUMENT

## I. Chong is not entitled to any relief under *Brady* and its progeny.

### A. A defendant faces a high hurdle for proving a *Brady* violation.

"In *Brady*, the United States Supreme Court held that 'the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'"

5

*State v. Harris*, 2004 WI 64, ¶ 12, 272 Wis. 2d 80, 680 N.W.2d 737 (quoting *Brady*, 373 U.S. at 87). Since *Brady*, courts have held that "[t]he prosecutor has a duty to disclose this evidence although there has been no formal request by the accused." *Id.* But "there is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Harris*, 272 Wis. 2d 80, ¶ 14 (citation omitted).

"To establish a *Brady* violation, the defendant must show that the State suppressed the evidence in question, that the evidence was favorable to the defendant and that the evidence was 'material' to the determination of the defendant's guilt or punishment." *State v. Rockette*, 2006 WI App 103, ¶ 39, 294 Wis. 2d 611, 718 N.W.2d 269 (citation omitted).

When reviewing a *Brady* claim, this Court upholds the circuit court's factual findings unless they are clearly erroneous, and it determines independently whether a due process violation has occurred. *State v. Wayerski*, 2019 WI 11, ¶ 35, 385 Wis. 2d 344, 922 N.W.2d 468.

### B.    Chong has not shown a *Brady* violation.

Chong meets the first prong of the three-prong *Brady* test, but he fails the final two prongs.

### 1.    The police suppressed evidence under *Brady*.

Under *Brady*, "suppression is nondisclosure or the withholding of evidence from the defense." *Wayerski*, 385 Wis. 2d 344, ¶ 58. "*Brady* suppression occurs when the government fails to turn over even evidence that is 'known only to police investigators and not to the prosecutor.'" *Youngblood v. W. Virginia*, 547 U.S. 867, 869–70 (2006) (per curiam) (citation omitted).

6

The State concedes that a *Brady* suppression occurred here when police destroyed recordings of the December 2013 interviews with Watou, Mikey, and Ryan.

### 2. The suppressed evidence was not favorable to the defense.

Again, to establish a *Brady* violation, "the defendant must show . . . that the evidence was favorable to the defendant." *Rockette*, 294 Wis. 2d 611, ¶ 39. "Evidence that is favorable to the accused encompasses both exculpatory and impeachment evidence." *Harris*, 272 Wis. 2d 80, ¶ 12 (footnotes omitted). "'Exculpatory evidence' is defined as '[e]vidence tending to establish a criminal defendant's innocence.'" *Id.* ¶ 12 n.9 (alteration in original) (citation omitted). "'Impeachment evidence' is defined as '[e]vidence used to undermine a witness's credibility.'" *Id.* ¶ 12 n.10 (alteration in original) (citation omitted).

Chong does not seem to argue that the suppressed evidence was impeaching. And he has not met his burden of proving that it was exculpatory.

When a defendant argues that the State violated *Brady* by destroying evidence, he faces "an impossible task" in proving that the destroyed evidence was exculpatory. *State v. Amundson*, 69 Wis. 2d 554, 577, 230 N.W.2d 775 (1975), *overruled on other grounds by Wayerski*, 385 Wis. 2d 344.[2] For that reason, a destruction-of-evidence claim has lower thresholds for a defendant to overcome than a *Brady* claim. *See California v. Trombetta*, 467 U.S. 479, 486–90 (1984);

_____

[2] The *Wayerski* court overruled the holding in *Amundson* and other cases that evidence is suppressed for *Brady* purposes only if it was in the State's exclusive possession and control. *State v. Wayerski*, 2019 WI 11, ¶¶ 49–50, 385 Wis. 2d 344, 922 N.W.2d 468. Because the State here concedes that evidence was suppressed, this aspect of *Wayerski* and *Amundson* has no bearing on this appeal.

7

*Amundson*, 69 Wis. 2d at 577–79. Chong concedes that he "faced a challenging burden in establishing what [the deleted interviews] would have shown." (Chong's Br. 12.)

Chong has not shown that the deleted interviews from December 2013 were exculpatory. Police officers could not remember many details about those interviews. (R. 328:51–52, 57, 59; 329:8–9, 11, 21–22, 45–46; 331:37.) Two of the three men who gave statements in those interviews—Watou and Ryan—did not know Chong. (R. 328:50; 330:80–81.) As one police officer explained, Watou "obviously" could not identify Chong as the shooter by name because he did not know Chong. (R. 330:81.)

Mikey told police that Chong could have been the shooter, but he was unsure because he thought that Chong was in jail when the shooting happened. (R. 330:80, 100.) Mikey's statement that Chong could have been the shooter was inculpatory, not exculpatory. And Mikey's statement about Chong being in jail was not exculpatory because video evidence showed Chong at the Luna Lounge when the shooting occurred. (R. 1:5; 328:59.) And Watou, Ryan, and Mikey did not identify someone besides Chong as the shooter during a photograph array. In fact, police did not show pictures of Chong or any other possible suspects to Watou, Ryan, or Mikey. (R. 328:50–52; 330:97, 102.)

If anything, the deleted interviews were inculpatory, and "*Brady* does not require disclosure of evidence that is 'more inculpatory than exculpatory.'" *United States v. Grintjes*, 237 F.3d 876, 880 (7th Cir. 2001) (citation omitted). A police officer believed that Watou, Ryan, and Mikey somehow implicated Chong in the shooting. (R. 330:60, 76.) When police officers interviewed those three men in April 2015—after Chong had been charged—the officers tried to persuade them to "come forward" and be witnesses in this case. (R. 328:35, 50, 73–74.) If those three men had exculpated Chong during their December 2013 interviews, it is highly

8

doubtful that police would have interviewed them more than a year later and asked them to come forward. And, tellingly, Chong argued in a pretrial suppression motion that the State should not be able to elicit any inculpatory testimony from those three witnesses at trial. (R. 91:1; 97:12.)

Chong's argument rests on a sleight of hand. He argues that Watou, Ryan, and Mikey "did not identify Chong as the shooter," and "any evidence *identifying someone other than Chong* as the shooter would have been favorable and material." (Chong's Br. 13 (emphasis added).) But failing to identify Chong is not the same as positively identifying someone besides Chong. Chong has not produced any evidence showing that these three witnesses identified someone other than him as the shooter when they were interviewed in December 2013. Chong has not shown, for example, that these three witnesses in December 2013: (1) gave a description of the shooter that was inconsistent with Chong's appearance; (2) identified someone besides Chong in an in-person lineup or photograph array; or (3) identified someone besides Chong by name.

In short, Chong has not shown that the deleted audio recordings were exculpatory. His *Brady* claim thus fails.

### 3. In any event, the suppressed evidence is not material.

"In order to establish a *Brady* violation, the defendant must, in addition to demonstrating that the withheld evidence is favorable to him, prove that the withheld evidence is 'material.'" *Harris*, 272 Wis. 2d 80, ¶ 13. "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* ¶ 14 (citation omitted). When determining whether suppressed evidence was material, a court must

9

"examine the trial record" and "'evaluat[e]' the withheld evidence 'in the context of the entire record.'" *Turner v. United States*, 137 S. Ct. 1885, 1893 (2017) (alteration in original) (citation omitted). Under *Brady*, "[t]he mere possibility that an item of undisclosed information might have helped the defense . . . does not establish 'materiality' in the constitutional sense." *Harris*, 272 Wis. 2d 80, ¶ 16 (alterations in original) (citation omitted).

Chong has not shown that the evidence at issue—deleted audio recordings of police interviews with Mikey, Ryan, and Watou in December 2013—was material for four reasons.

First, as explained above, the suppressed evidence was not exculpatory. And, even if it was exculpatory, it was only slightly so. Evidence with little or no exculpatory value would not have changed the result of Chong's trial.

Second, the suppression did not alter Chong's trial strategy. When assessing a *Brady* claim, a court may consider the effect that the suppression "might have had on the preparation or presentation of the defendant's case." *Harris*, 272 Wis. 2d 80, ¶ 14 (citation omitted). In other words, the court "must consider the nondisclosure 'dynamically' and take into account the numerous predictable impacts the evidence could have on trial strategy." *United States v. Borda*, 848 F.3d 1044, 1067 (D.C. Cir.), *cert. denied*, 137 S. Ct. 2315 (2017). Chong has not shown that the suppression at issue impacted the presentation of his case at trial.

Significantly, the police suppression here did not prevent Chong from introducing exculpatory evidence at trial. In December 2013, police interviewed Mikey, Ryan, and Watou—all of whom were present near the shooting. (R. 328:31, 35–36; 331:29–30.) Police interviewed those three men again in April 2015. (R. 328:30, 56.) Police deleted the audio recordings of the December 2013 interviews. (R. 328:31,

35–37, 57–58). Chong argues that this deletion was a *Brady* violation. But Chong's trial counsel obtained copies of those April 2015 interviews by late May 2015—nine months before trial. (R. 328:25–27.) And, in pretrial filings, Chong argued that these three witnesses gave statements exculpating him in their April 2015 interviews. (R. 97:5–7; 108:3.) Chong even had a defense investigator interview Ryan before trial, and Chong claimed that Ryan gave a description of the shooter that ruled out Chong. (R. 97:5.)

Chong thus could have called Mikey, Ryan, and Watou to testify at trial—even though the police deleted the audio recordings of their December 2013 interviews. And if those three men had identified Chong as the shooter at trial, Chong could have cross-examined them with their prior inconsistent statements that allegedly exculpated him. *See* Wis. Stat. § 908.01(4)(a)1. By deleting these December 2013 audio recordings, the police did not prevent Chong from calling these three witnesses at trial to provide exculpatory evidence.

Third, the State introduced strong evidence of Chong's guilt at trial. Strong evidence against a defendant can render suppressed evidence immaterial under *Brady*. *See Wayerski*, 385 Wis. 2d 344, ¶ 62. And "[a] confession is like no other evidence. Indeed, 'the defendant's own confession is probably the most probative and damaging evidence that can be admitted against him.'" *Arizona v. Fulminante*, 499 U.S. 279, 296 (1991) (citation omitted). Eight witnesses testified that Chong had confessed to the shooting:

- Via Thao testified that Chong had admitted to shooting a guy in downtown Appleton during a fight. (R. 402:33–34.)
- Peter Moua testified that Chong had discussed a shooting at Luna Lounge and said that he "got him." (R. 402:60, 63–64.)

11

- Kong Vang testified that Chong had told him during the winter that he had "shot somebody" "to protect his brother." (R. 402:71, 72.)
- Melanie Thao testified that she did not hear Chong say anything about a shooting at Luna Lounge, but she did tell detectives that Chong had "said he shot the guy." (R. 404:136–37, 142.)
- Stephanie Thao testified that she was eating dinner with her sister Melanie and Chong one night when Chong mentioned a shooting at the Luna Lounge in Appleton, and Chong said that "he was the one who did it." (R. 404:195–97.)
- Joe Thor testified that Chong had said that he "did the shooting at Luna Lounge." (R. 406:25.)
- A police detective testified that Phong Lee had said that he went to Joe Thor's house after the shooting at the Luna Lounge, and "about maybe half an hour to an hour [later] Chong Lee came to the residence and told them that he popped a guy." (R. 409:22.)
- A police officer testified that Paul Lee had said that Chong had confessed to doing the shooting at the Luna Lounge. (R. 406:177–78.)

Given this strong evidence of Chong's guilt, there is not a reasonable probability that he would have been acquitted of the shooting had the State disclosed the December 2013 interviews with Mikey, Ryan, and Watou.

Fourth, those deleted interviews were inadmissible hearsay, and inadmissible evidence does not create a reasonable probability of a different result in a new trial. *See State v. Bembenek*, 140 Wis. 2d 248, 256, 409 N.W.2d 432 (Ct. App. 1987). "Hearsay is 'a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.'" *State v. Britt*, 203 Wis. 2d 25, 38, 553 N.W.2d 528 (Ct. App. 1996) (quoting Wis. Stat. § 908.01(3)). "Hearsay evidence is

12

generally not admissible except as otherwise provided by rule or statute." *Id.* (citing Wis. Stat. §§ 908.02, 908.03). The proponent of evidence has the burden of showing why it is admissible. *State v. Jenkins*, 168 Wis. 2d 175, 187–88, 483 N.W.2d 262 (Ct. App. 1992). An out-of-court description of a suspect is not admissible under Wis. Stat. § 908.01(4)(a)3., which provides that certain identifications are not hearsay. *Id.* at 191. Chong has not explained how the deleted audio recordings would have been admissible at his trial.

Chong's materiality argument is unavailing. The gist of Chong's argument is that (1) Mikey, Ryan, and Watou gave exculpatory statements to police because they did not identify Chong's as the shooter; and (2) because police deleted the first interviews of those three men, "the jury heard from no eyewitnesses as to the shooter's identity." (Chong's Br. 11, 13, 15.) But, for the reasons stated above, Chong has not shown that Ryan, Mikey, and Watou gave statements that exculpated him. And, even if their statements did exculpate Chong, he is wrong to suggest that the State prevented him from presenting exculpatory evidence at trial by deleting the December 2013 interviews of Ryan, Mikey, and Watou. The deletion of those interviews did not prevent Chong from calling those three men to testify at trial.

Chong seems to argue that the jury might have acquitted him of the shooting had it heard exculpatory testimony by Ryan, Mikey, and Watou. (Chong's Br. 13–14, 15.) But *Brady*'s materiality standard does not consider whether certain evidence likely would have affected the verdict had it been introduced at trial. Rather, the standard looks at "whether 'there is a reasonable probability that, *had the evidence been disclosed*, the result of the proceeding would have been different.'" *Turner*, 137 S. Ct. at 1893 (emphasis added) (citation omitted). Chong has not met his burden under that standard. Regardless of whether the State disclosed the December 2013 interview recordings at issue,

13

Chong still knew long before trial that Ryan, Mikey, and Watou gave allegedly exculpatory statements to police. Chong could have called them to testify at his trial. Chong has not shown a reasonable probability that he would have been acquitted had the State disclosed those December 2013 interviews to him.

## C. Chong is not entitled to dismissal under *Brady*.

As just explained, Chong is not entitled to any relief under the *Brady* line of cases because he has failed to establish the second and third elements of his *Brady* claim. And, even if he has proven a *Brady* violation, he is not entitled to the relief that he seeks: dismissal of this case.

Chong argues that *Brady* violations can result in dismissal with prejudice. (Chong's Br. 16.) This Court should not resolve that issue because Chong's *Brady* claim was not ripe in the circuit court. "The trial court's exercise of discretion is based on the facts before it at the time of its decision." *State v. Avery*, 2011 WI App 124, ¶ 61 n.18, 337 Wis. 2d 351, 804 N.W.2d 216, *modified on other grounds by State v. Jackson*, 2016 WI 56, ¶ 66, 369 Wis. 2d 673, 882 N.W.2d 422. "Claims based on future or hypothetical facts are not ripe for judicial determination." *Clark v. Mudge*, 229 Wis. 2d 44, 50, 599 N.W.2d 67 (Ct. App. 1999). "*Brady* . . . 'does not require pretrial disclosure.'" *Harris*, 272 Wis. 2d 80 ¶ 37 (quoting *United States v. Grintjes*, 237 F.3d 876, 880 (7th Cir. 2001)). A *Brady* claim is thus not ripe before trial. *See, e.g.*, *Armstrong v. Daily*, 786 F.3d 529, 552 (7th Cir. 2015).

Chong, however, raised his *Brady* claim in a motion for dismissal or suppression in September 2015—five months before trial. (R. 91.) In early February 2016, a few weeks before trial, the circuit court denied the motion to dismiss but granted Chong's request to suppress some of the State's

14

evidence. (R. 332:10–13.) Based on the facts before the circuit court when it denied Chong's motion for dismissal, Chong's *Brady* claim was not ripe because his trial had not begun yet.

In any event, a *Brady* violation should not result in dismissal. *Brady* applies "to an assertion that one did not receive a fair trial because of the concealment of exculpatory evidence known and *in existence at the time of that trial*." *Whitlock v. Brueggemann*, 682 F.3d 567, 588 (7th Cir. 2012) (emphasis added). "In nondisclosure cases, a court can grant the defendant a new trial at which the previously suppressed evidence may be introduced. But when evidence has been destroyed in violation of the Constitution, the court must choose between barring further prosecution or suppressing . . . the State's most probative evidence." *Trombetta*, 467 U.S. at 486–87. "*Brady* cases involving failures to disclose evidence are plainly distinguishable from [a] case involving destruction of evidence." *Gill v. City of Milwaukee*, 850 F.3d 335, 343 (7th Cir. 2017) (quoting *Armstrong*, 786 F.3d at 552). "The outright destruction of exculpatory evidence raises immediate constitutional concern because the resulting prejudice to the defense is permanent. Whatever unfairness results from the destruction will infect all future proceedings because the exculpatory evidence will continue to be unavailable." *Armstrong*, 786 F.3d at 552. Given this distinction between destruction-of-evidence cases and *Brady* nondisclosure cases, it makes sense that dismissal is an available remedy when exculpatory evidence is destroyed but not when it is illegally withheld under *Brady*.[3]

---

[3] The evidence at issue here has been destroyed. So, if Chong is entitled to any relief, the remedy would derive from destruction-of-evidence case law, not the *Brady* line of cases. In argument section II.C. below, the State will explain why Chong is not entitled to dismissal on destruction-of-evidence grounds.

15

And, even if dismissal can be a proper remedy for a *Brady* violation, the alleged *Brady* violation here does not entitle Chong to dismissal. Chong argues that the police deleted the December 2013 interviews of Mikey, Ryan, and Watou in bad faith. (Chong's Br. 16.) He is wrong. Police deleted those interviews to protect the safety of those witnesses, who had asked to remain anonymous. (R. 328:31–32, 35–37, 57–58.) Further, the officers thought that they were legally prohibited from disclosing the identifies of those witnesses. (R. 329:47–48; 330:39.)

Chong notes that the police officers could not remember specifics about the deleted December 2013 interviews. (Chong's Br. 16–17.) But in the April 2015 interviews—copies of which Chong's lawyers had before trial—Ryan, Mikey, and Watou did not have any trouble recalling what they had seen at the shooting. (R. 329:55.) And the police officers' statements about the interviews would be inadmissible hearsay. The officers' lack of memory does not entitle Chong to dismissal.

Chong also argues that he is entitled to dismissal because he "is left without powerful exculpatory evidence and a new trial is meaningless without that evidence." (Chong's Br. 17.) He is wrong again for the reasons stated above in argument sections I.B.2. and I.B.3. Chong has not shown that the deleted interviews were exculpatory. And, significantly, Chong could have called Mikey, Ryan, and Watou to testify at trial. As already explained, (1) Chong's trial counsel was aware of those three men long before trial; (2) a defense investigator interviewed at least one of those men before trial; (3) Chong's trial counsel obtained records of the April 2015 interviews of those three men long before trial; and (4) Chong's trial counsel thought that those April 2015 interviews exculpated Chong. The State did not prevent Chong from calling those three men to testify at trial.

## II. Chong is not entitled to dismissal on destruction-of-evidence grounds.

### A. Destruction of evidence does not automatically entitle a defendant to dismissal.

Under Wisconsin courts' interpretation of *Arizona v. Youngblood*, 488 U.S. 51 (1988), "a defendant's due process rights regarding the destruction of evidence are violated if the State (1) fails to preserve evidence that is apparently exculpatory or (2) acts in bad faith by failing to preserve evidence that is potentially exculpatory." *State v. Luedtke*, 2015 WI 42, ¶ 53, 362 Wis. 2d 1, 863 N.W.2d 592 (citing *State v. Greenwold*, 189 Wis. 2d 59, 67, 525 N.W.2d 294 (Ct. App. 1994) (*Greenwold II*)). This Court independently determines whether a state action violated due process, but it "uphold[s] the circuit court's findings of historical fact unless they are clearly erroneous." *Id.* ¶ 37.

When a circuit court selects a remedy for a due process violation resulting from the destruction of evidence, this Court reviews the chosen remedy for an erroneous exercise of discretion. *See State v. Huggett*, 2010 WI App 69, ¶¶ 25–28, 324 Wis. 2d 786, 783 N.W.2d 675.

### B. The police did not violate due process by deleting audio recordings of interviews.

As an initial matter, the due process test from cases like *Luedtke* is based on a misinterpretation of the relevant Supreme Court precedent, *Trombetta* and *Youngblood*. Under the proper interpretation of *Trombetta* and *Youngblood*, a defendant must satisfy three requirements to show that the State violated due process by destroying evidence: "(1) the State acted in bad faith; (2) the exculpatory value of the evidence was apparent before it was destroyed; and (3) the evidence was of such a nature that the [defendant] was unable to obtain comparable evidence by other reasonably available

17

means." *McCarthy v. Pollard*, 656 F.3d 478, 485 (7th Cir. 2011). Contrary to Wisconsin case law, "*Trombetta* and *Youngblood* do not create two separate rules, with the former governing 'apparently' exculpatory evidence and the latter governing 'potentially' exculpatory evidence." *Id.* at 484–85. The State raises this issue to preserve it for possible review by the Wisconsin Supreme Court.

Chong has not shown a due process violation under either alternative of Wisconsin's two-part test. He thus also fails the more stringent test used by the Seventh Circuit and other jurisdictions.

### 1. The deleted audio recordings were not apparently exculpatory.

Under Wisconsin case law, the State violates due process if it "fails to preserve evidence that is apparently exculpatory." *Luedtke*, 362 Wis. 2d 1, ¶ 53. To prove that the State destroyed apparently exculpatory evidence in violation of due process, a defendant "must demonstrate that: (1) the evidence destroyed 'possess[ed] an exculpatory value that was apparent to those who had custody of the evidence . . . before the evidence was destroyed,' and (2) the evidence is 'of such a nature that the defendant [is] unable to obtain comparable evidence by other reasonably available means.'" *State v. Munford*, 2010 WI App 168, ¶ 21, 330 Wis. 2d 575, 794 N.W.2d 264 (alteration in original) (citation omitted).

Chong has not made either showing. First, as explained above in argument section I.B.2., the deleted police interviews were not exculpatory. For the same reasons, they were not apparently exculpatory. Second, Chong was able to obtain comparable evidence by other reasonably available means. As explained above in argument section I.C.2., Chong could have called Mikey, Ryan, and Watou to testify at trial. Chong also could have introduced any prior inconsistent statements that they made during their April 2015 police interviews, copies of

18

which Chong's trial counsel had. Chong thus "was not without alternative means to demonstrate [his] innocence. . . . By these alternative means, [Chong] retained the right to raise the same issues and create the same doubt that could have been raised and created by use of the destroyed evidence." *State v. Pankow*, 144 Wis. 2d 23, 44, 422 N.W.2d 913 (Ct. App. 1988).

Chong's arguments are meritless. He argues that Mikey, Ryan, and Watou "did not identify Chong as the shooter." (Chong's Br. 20.) But, again, that argument incorrectly suggests that those three men identified someone besides Chong. In the deleted interviews from December 2013, those three men described the location that the shooter came from. (R. 328:38–39, 51–52; 331:42.) Watou and Ryan did not know Chong. (R. 328:39, 50.) Police did not show pictures of Chong or any other possible suspects to Mikey, Ryan, or Watou. (R. 328:50–52; 330:97, 102.) Mikey, Ryan, and Watou told police that they did not want to get involved in the investigation because they feared for their safety. (R. 328:44.) In the subsequent interviews, police tried to encourage those three men to come forward and agree to be witnesses. (R. 328:35, 50, 73–74.) All these facts, especially the three men's reluctance to talk to police, strongly suggest that the deleted initial interviews were much ado about nothing.

Chong also argues that the December 2013 interviews that were deleted "did not support [the State's] theory that Chong was the shooter" because the State did not mention those interviews in its criminal complaint against Chong. (Chong's Br. 20–21.) Chong is grasping at straws. For one thing, a complaint "need not contain an 'encyclopedic listing of all evidentiary facts upon which the state intends to rely' at trial." *State v. Chinavare*, 185 Wis. 2d 528, 534, 518 N.W.2d 772 (Ct. App. 1994) (citation omitted). Further, the complaint likely omitted any reference to these interviews because, as

19

just explained, the witnesses did not provide much relevant information. Chong's flawed logic assumes that these witnesses must have exculpated him if they did not give statements that incriminated him.

### 2. The police did not destroy potentially useful evidence in bad faith.

When evidence is not apparently exculpatory, the State violates due process when it "acts in bad faith by failing to preserve evidence that is potentially exculpatory." *Luedtke*, 362 Wis. 2d 1, ¶ 53. A defendant can prove bad faith "only if '(1) the officers were aware of the potentially exculpatory value or usefulness of the evidence they failed to preserve; and (2) the officers acted with official animus or made a conscious effort to suppress exculpatory evidence.'" *Luedtke*, 362 Wis. 2d 1, ¶ 46 (quoting *Greenwold II*, 189 Wis. 2d at 69).

"Intentional destruction, without more, does not establish bad faith." *Luedtke*, 362 Wis. 2d 1, ¶ 56. "The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *State v. Greenwold*, 181 Wis. 2d 881, 886, 512 N.W.2d 237 (Ct. App. 1994) (*Greenwold I*) (quoting *Youngblood*, 488 U.S. at 56 n.*). Bad faith is shown when "the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant." *Youngblood*, 488 U.S. at 58.

Chong has not shown bad faith, which he acknowledges is "a high burden." (Chong's Br. 21.) The deleted interviews from December 2013 were not exculpatory for the reasons stated above in argument section I.B.2. When police officers deleted those interviews, they were not "act[ing] with official animus or ma[king] a conscious effort to suppress *exculpatory* evidence.'" *Greenwold II*, 189 Wis. 2d at 69 (emphasis added).

The purpose of deleting those interviews was *not* to suppress exculpatory evidence.

Instead, one purpose was to protect the safety of the men who were interviewed. Police deleted audio recordings of the December 2013 interviews with Mikey, Ryan, and Watou to protect their safety. (R. 328:31–32, 35–37, 57–58.) Those three men were "very concerned about their safety and they did not want to be identified." (R. 328:44.) They knew that the people who were involved in the shooting had been involved in prior violent crimes involving firearms. (R. 331:18–21, 27, 42.)

A related purpose of deleting the interviews was to comply with the police officers' view of Wisconsin law. The officers thought that the "Monfils Law" prohibited them from disclosing the identifies of those three witnesses. (R. 329:47–48; 330:39.) The police thought that the Monfils Law was part of Wisconsin's open records law.[4] (R. 329:48.) The police were referring to a case where a millworker named Thomas Monfils was murdered after his coworkers learned that he had reported one of them to police for theft. (R. 329:48.) In the *Monfils* case, the coworker whom Monfils had reported to police requested a copy of the anonymous tip. *Monfils v. Taylor*, 165 F.3d 511, 514 (7th Cir. 1998). Monfils asked police not to provide his anonymous tip to the coworker because he feared for his safety. *Id.* at 513–14. Yet police released an audio recording of Monfils' anonymous tip, even though an assistant district attorney had told the police that Wisconsin's open records law provided grounds to refuse to release the recording. *Id.* at 515. The Seventh Circuit upheld a $2 million damages award against the police officers who were involved in the release of the audio recording. *Id.* at 515, 522. Here, regardless of whether the police were legally prohibited from

---

[4] The police were maybe referring to Wis. Stat. § 19.35(1)(am)2.a. and 2.b. or Wis. Stat. § 905.10.

releasing the December 2013 interviews, their "Monfils Law" rationale belies any notion of bad faith.

The officers' subsequent conduct also shows that they did not delete the December 2013 interviews in bad faith. In April 2015, police interviewed Mikey, Ryan, and Watou again after realizing that they had inadvertently disclosed those three men's identities to Chong and his lawyers. (R. 328:71–72.) Police told those three men that defense investigators may contact them. (R. 328:60–62.) The State provided copies of these April 2015 interviews to Chong's lawyers. (R. 328:25–27.) This conduct by the State is inconsistent with an intent to suppress exculpatory statements by these three men.

In short, Chong has not shown that the police violated due process by deleting the December 2013 interviews.

### C. Even if the police violated due process, the circuit court properly exercised its discretion in refusing to dismiss this case.

"[W]hen the government has destroyed [or lost] criminal evidence, the imposition of a sanction is within the court's discretion." *Huggett*, 324 Wis. 2d 786, ¶ 25 (second alteration in original) (quoting *State v. Hahn*, 132 Wis. 2d 351, 361, 392 N.W.2d 464 (Ct. App. 1986)); *see also Trombetta*, 467 U.S. at 487. "Regardless of the extent of the trial court's reasoning, [this Court] will uphold a discretionary decision if there are facts in the record which would support the trial court's decision had it fully exercised its discretion." *State v. Hunt*, 2003 WI 81, ¶ 52, 263 Wis. 2d 1, 666 N.W.2d 771 (citation omitted). This independent-review doctrine "is well-settled law in Wisconsin." *Id.* ¶ 45.

When reviewing a circuit court's discretionary ruling, this Court does not determine whether it thinks the ruling was "'right' or 'wrong.'" *State v. Jeske*, 197 Wis. 2d 905, 913, 541 N.W.2d 225 (Ct. App. 1995). Rather, the discretionary decision "will stand unless it can be said that no reasonable

judge, acting on the same facts and underlying law, could reach the same conclusion." *Id.* "It is not important that one trial judge may reach one result and another trial judge a different result based upon the same facts." *State v. Ronald L.M.*, 185 Wis. 2d 452, 463, 518 N.W.2d 270 (Ct. App. 1994).

In determining whether the destruction of evidence justifies dismissal of a case, relevant factors are "the degree of negligence or bad faith by the government, the importance of the evidence lost, and the other evidence of guilt adduced at trial." *Amundson*, 69 Wis. 2d at 580. "[S]trong evidence of guilt adduced at the trial" weighs against dismissal. *Id.*

Those factors support the circuit court's decision here not to dismiss this case.

The first *Amundson* factor—the degree of the police officers' negligence or bad faith—weighs against dismissal. As explained above in argument section II.B.2., the police did not act in bad faith but instead thought that the "Monfils Law" barred disclosure of Ryan's, Mikey's, and Watou's identities. The circuit court determined that the officers had acted in bad faith as that term is "defined" in case law such that there was a due process violation, but it found that the officers' "choice to destroy the records may have been purely motivated, i.e. to protect the witnesses." (R. 332:10, 12.) The court also noted that the officers had not "engaged in intentional destruction of evidence in an effort to usurp [Chong's] right to a fair trial." (R. 332:13.) The court also noted that the destruction of the recordings "perhaps [was] not in violation of a direct policy," although it "was certainly an unusual practice and inconsistent with the spirit of interview retention policies maintained by the Appleton Police Department." (R. 332:12.) The police conduct was not egregious.

The second *Amundson* factor also weighs against dismissal. The lost evidence—deleted audio recordings of police interviews with Mikey, Ryan, and Watou in December

23

2013—was not important. As explained in argument section I.B.2., Chong has not shown that those interviews were exculpatory. And, as explained in argument section I.B.3., Chong could have called those three men to testify at trial, his defense investigator interviewed at least one of them before trial, and Chong's lawyers before trial had copies of those three men's April 2015 interviews with police.

The third *Amundson* factor also supports the circuit court's decision not to dismiss this case. There was strong evidence of Chong's guilt at trial, as explained in argument section I.B.3.

Chong alleges that the circuit court "did not explain" why dismissal was inappropriate. (Chong's Br. 25.) He is wrong. The court spent several pages discussing the police officers' decision to delete interviews. (R. 332:10–13.) The court then said that a remedy, but not dismissal, was warranted "in light of the foregoing." (R. 332:13.)

Chong also seems to argue that dismissal is required because this Court in *Huggett* "approved" dismissal in a homicide case. (Chong's Br. 25.) But this Court in *Huggett* merely upheld a circuit court's "choice of sanction" as an appropriate exercise of discretion. *Huggett*, 324 Wis. 2d 786, ¶ 28. The circuit court there reasoned that "the most important pieces of evidence" had been destroyed, and they "cannot be adequately reconstructed by any other means." *Id.* ¶ 27. This Court should likewise uphold the circuit court's choice of sanction for the reasons stated above: the deleted interviews were inadmissible hearsay and were not exculpatory, Chong's trial lawyers had copies of the second interviews of the same three witnesses before trial, and Chong could have called those witnesses to testify at trial.

Chong further argues that "the remedy of suppression actually had a more detrimental effect on Chong's case." (Chong's Br. 25.) Chong has not developed that argument, and

he is judicially estopped from making it. A criminal defendant is judicially estopped from arguing on appeal that the circuit court should not have granted him relief that he requested. *See, e.g.*, *State v. McCready*, 2000 WI App 68, ¶ 8, 234 Wis. 2d 110, 608 N.W.2d 762. Chong moved the circuit court to dismiss this case or suppress incriminating testimony of "any witness interviewed by law enforcement in which law enforcement destroyed the recorded statement of said witness." (R. 91:1.) The circuit court granted Chong's suppression motion, prohibiting the State from calling Ryan, Mikey, or Watou at Chong's trial. (R. 332:13.) Chong thus cannot argue on appeal that his requested suppression order hurt his defense. And, in any event, that suppression order did not prevent *Chong* from calling those three witnesses at trial to try to elicit exculpatory testimony.

### D.   Dismissal is not required where bad faith is shown.

Chong incorrectly argues that *Youngblood* requires dismissal with prejudice where bad faith is shown. He argues that "[t]he remedy contemplated in *Youngblood*, where the Court introduced bad faith, was dismissal." (Chong's Br. 23.) He is wrong. The *Youngblood* Court never used any variation of the word "dismiss." And *Youngblood* did not introduce the concept of bad faith. Four years before *Youngblood*, the *Trombetta* Court found no due process violation in part because the government had destroyed breath samples "in good faith." *Trombetta*, 467 U.S. at 488. And nine years before *Trombetta*, the Wisconsin Supreme Court held that "the degree of negligence or bad faith by the government" is a relevant factor when a circuit court decides whether to dismiss a case due to the destruction of evidence. *Amundson*, 69 Wis. 2d at 580. Bad faith thus does not require dismissal but is instead merely a factor.

Further, the *Trombetta* Court held that a trial court must choose between dismissal with prejudice or suppression when the government destroys evidence in violation of due process. *Trombetta*, 467 U.S. at 487. This Court reiterated that principle in *Hahn*, 132 Wis. 2d at 361, and *Huggett*, 324 Wis. 2d 786, ¶ 25. Those decisions are controlling on this point.

Chong cites *Luedtke*, *Huggett*, and *Greenwold I* and *II* for the proposition that *Youngblood* requires dismissal where bad faith is shown. None of those cases stand for that proposition. In the portions of those opinions that Chong cites, the appellate court merely (1) noted that the defendants had filed motions to dismiss, *Luedtke*, 362 Wis. 2d 1, ¶¶ 5, 17; (2) affirmed a circuit court's *discretionary* choice to dismiss a case, *Huggett*, 324 Wis. 2d 786, ¶¶ 25–28; and (3) reversed a circuit court's dismissal order, *Greenwold II*, 189 Wis. 2d at 71; *Greenwold I*, 181 Wis. 2d at 886. Those cases do not require dismissal where bad faith is shown.

Chong attacks a balancing test that this Court used in *Hahn*. (Chong's Br. 23, 24.) This Court in *Hahn* stated that "the determination of the sanction 'depends on a balancing of "the quality of the Government's conduct and the degree of prejudice to the accused."'" *Hahn*, 132 Wis. 2d at 362 (quoting *United States v. Roberts*, 779 F.2d 565, 569 (9th Cir. 1986)). This Court in *Huggett* observed that "it is unclear whether the balancing test referenced in *Hahn* remains viable" because *Hahn* "preceded *Greenwold I* and *II*, which established the government's good or bad faith as irrelevant to whether a due process violation occurred in cases involving apparently exculpatory evidence." *Huggett*, 324 Wis. 2d 786, ¶ 25. The *Huggett* court declined to resolve that issue. *Id.*

Chong points to this observation in *Huggett* without explaining how it advances his argument that dismissal is required here. (Chong's Br. 23.) Specifically, Chong has failed to explain how this observation in *Huggett*—that some

26

*Youngblood* violations do *not* involve bad faith—advances his argument that dismissal is required in cases that *do* involve bad faith.

In any event, this observation in *Huggett* does not help Chong. Good or bad faith can be relevant to the issue of remedy while being irrelevant to the threshold issue of whether due process was violated. *Hahn* thus does not conflict with *Greenwold I* and *II*.

Besides, the multifactor test from *Amundson*—not the *Hahn* balancing test—is controlling. This Court "must resolve any conflict between [its] past decisions and a supreme court opinion in favor of the supreme court opinion." *Sukala v. Heritage Mut. Ins. Co.*, 2000 WI App 266, ¶ 20, 240 Wis. 2d 65, 622 N.W.2d 457. *Amundson* is a supreme court case, and *Hahn* was decided by this Court. To the extent that this Court in *Hahn* might have modified the *Amundson* test, it had no power to do so.

Chong also argues that dismissal is required here because "the [*Hahn*] balancing test is not appropriate in cases where bad faith has already been established." (Chong's Br. 24.) He reasons that the balancing test has already been performed when a court finds a due process violation. (Chong's Br. 24.) He is wrong because the due process test is not a balancing test. *See Luedtke*, 362 Wis. 2d 1, ¶ 46 (stating the due process test without any mention of balancing). Besides, Chong's argument is moot because the *Amundson* test is controlling and sound. Again, the *Amundson* test considers "the degree of negligence or bad faith by the government." *Amundson*, 69 Wis. 2d at 580. It makes sense for a circuit court to determine whether there was bad faith when deciding whether due process was violated, and to then consider the degree of bad faith when deciding whether the due process violation justifies dismissal.

27

In sum, the police did not violate Chong's due process rights by deleting their first interviews with Ryan, Mikey, and Watou. And even if there was a due process violation, the circuit court properly used its discretion when it decided not to dismiss this case.

### III. Missing transcripts from two non-evidentiary parts of Chong's trial do not entitle him to a new trial.

#### A. Chong does not have a colorable need for the missing transcripts.

"[A] missing transcript that cannot be re-created entitles the defendant to a new trial if the defendant demonstrates a 'colorable need' for the transcript." *State v. Parker*, 2002 WI App 159, ¶ 9, 256 Wis. 2d 154, 647 N.W.2d 430 (quoting *State v. Perry*, 136 Wis. 2d 92, 108, 401 N.W.2d 748 (1987)). A missing transcript "can 'prevent[ ] a putative appellant from demonstrating possible error,' thereby depriving him or her of the constitutional right to appeal." *Id.* ¶ 10 (alteration in original) (quoting *Perry*, 136 Wis. 2d at 99). This Court reviews for an erroneous exercise of discretion a circuit court's decision on whether a missing transcript will frustrate a defendant's right to an appeal, including the circuit court's decision on whether the defendant has a colorable need for the missing transcript. *See Perry*, 136 Wis. 2d at 108–09.

Here, a witness at trial read a letter where Chong stated that he was going to "beat this case." (R. 404:219–20.) Chong's trial lawyers did not make a contemporaneous objection to this testimony. (R. 404:219–20.) The jury asked to see this letter while deliberating, and the circuit court granted the request (R. 271), but this part of the trial was not recorded (*see* R. 391; 410). In his postconviction motion, Chong argued that his trial lawyers were ineffective by not objecting when this letter was read during trial testimony or

when it was given to the jury. (R. 298:8–9.) At a *Machner* hearing, Chong's two trial lawyers did not remember why they did not object to that evidence being admitted or whether they objected when it was given to the jury while deliberating. (R. 396:35, 41–43; 397:21–26.) One of the trial lawyers "suspect[ed]" that the issue might have been discussed during an unrecorded in-chambers conference, but he did not remember if this issue was discussed then. (R. 397:22–23.)

Chong does not have a colorable need for the non-existent transcripts of the in-chambers conference and the response to the jury's request. He seems to assert two needs for those transcripts. Neither argument is persuasive.

First, Chong argues that "[b]ecause there are no transcripts of these portions of the proceedings, Chong cannot assert a claim relative to the improper admission of the 'beat this case' evidence." (Chong's Br. 26.) Specifically, he argues that because he does not know whether his trial lawyers objected to this evidence during the in-chambers conference or while the jury was deliberating, he "is unable to identify or assert where his claim of error lies: whether his claim is that counsel was ineffective in failing to object or whether the circuit court erroneously admitted this evidence over counsel's objection." (Chong's Br. 30.)

Chong is mistaken. He can assert court error without presenting it through the ineffective-assistance framework. Of course, "a specific, contemporaneous objection is required to preserve error." *State v. Delgado*, 2002 WI App 38, ¶ 12, 250 Wis. 2d 689, 641 N.W.2d 490. And "[t]he party alleging error has the burden of establishing, by reference to the record, that the error was raised before the trial court." *Young v. Young*, 124 Wis. 2d 306, 316, 369 N.W.2d 178 (Ct. App. 1985). Courts normally address forfeited issues "within the rubric of the ineffective assistance of counsel." *State v. Erickson*, 227 Wis. 2d 758, 766, 596 N.W.2d 749 (1999). But "[w]here, as here, a portion of the record is lost through no

29

fault of the aggrieved party, that party should not be made to bear the burden of the loss." *Perry*, 136 Wis. 2d at 111 (citation omitted).

Chong thus would not need to prove that he preserved an objection to the jury hearing and seeing his letter where he said he would "beat this case." The jury's request to see this letter is in the record, and so is the redacted letter that was given to the jury. (R. 391.) And because there is no record of any discussion between the circuit court and the lawyers about the jury's request, Chong does not have to prove that he preserved this issue by objecting to the jury's request. *See Perry*, 136 Wis. 2d at 111.

The same is true of Chong's challenge to the trial testimony about this letter. Although the trial transcript shows that Chong's lawyers did not object to this testimony (R. 404:220), *Machner* hearing testimony indicates that this issue might have been discussed during an in-chambers conference (R. 396:40–41; 397:21–23). Because there is no transcript of that conference, Chong is unable to prove that he preserved an objection to the "beat this case" testimony. Chong thus could have obtained direct appellate review of a claim that the circuit court erred by admitting this evidence at trial, instead of presenting the issue through the ineffective-assistance framework. In other words, Chong "should not be made to bear the burden of the [missing transcript]." *Perry*, 136 Wis. 2d at 111 (citation omitted).

In any event, Chong could have both alleged court error and made an alternative argument that, if he did not adequately preserve the court-error issue for review, then his lawyers were ineffective in that respect. Defendants routinely make that kind of alternative argument. *See, e.g.*, *State v. Cummings*, 199 Wis. 2d 721, 747 n.10, 546 N.W.2d 406 (1996); *State v. Brown*, 2003 WI App 34, ¶ 22 n.9, 260 Wis. 2d 125, 659 N.W.2d 110. Chong's alleged need for the non-existent transcripts—to know whether to allege court error or

30

ineffective assistance of counsel—is not persuasive. He could have alleged both court error and ineffective assistance as alternative arguments.

Second, Chong seems to argue that he has another need for the non-existent transcripts: without these transcripts, he does not know the circuit court's reasoning or trial counsels' possible arguments about the "beat this case" evidence. (Chong's Br. 28–29.) Chong notes that his trial lawyers did not remember why that evidence was admitted at trial even though the circuit court had previously ruled it inadmissible. (Chong's Br. 29–30.)

Chong's arguments are unavailing. The lack of transcribed reasoning does not entitle Chong to a new trial.

Chong could have asserted court error on appeal without the two transcripts that he allegedly needs. "[W]here the circuit court sets forth no reasons or inadequate reasons for its decision, [this Court] will independently review the record to determine whether the circuit court properly exercised its discretion and whether the facts provide support for the court's decision." *Miller v. Hanover Ins. Co.*, 2010 WI 75, ¶ 30, 326 Wis. 2d 640, 785 N.W.2d 493. "Whether an exhibit should be sent to the jury during deliberations is a discretionary decision for the trial court." *State v. Hines*, 173 Wis. 2d 850, 858, 496 N.W.2d 720 (Ct. App. 1993). So, because there is no record of the circuit court's rationale for allowing the jury to see Chong's "beat this case" letter during deliberations, this Court could independently review the record to determine whether that use of discretion was proper. And, similarly, "[t]he admission of evidence is subject to the circuit court's discretion." *State v. Ringer*, 2010 WI 69, ¶ 24, 326 Wis. 2d 351, 785 N.W.2d 448. Had Chong argued on appeal that the circuit court erred by allowing testimony on his "beat this case" letter, this Court could have resolved that claim by independently reviewing the record. In short, Chong could have argued on appeal that the circuit court erred by

31

allowing the jury to hear and see his letter, even though there is no pertinent reasoning by the circuit court in the record.

For similar reasons, Chong could have raised an ineffective-assistance claim as an alternative argument— even though his trial lawyers could not remember why the jury heard about and received Chong's "beat this case" letter. "[R]egardless of defense counsel's thought process, if counsel's conduct falls within what a reasonably competent defense attorney could have done, then it was not deficient performance." *State v. Jackson*, 2011 WI App 63, ¶ 9, 333 Wis. 2d 665, 799 N.W.2d 461. Even if an attorney does not remember the rationale for his or her conduct at issue, this Court must determine whether the conduct had an objectively reasonable basis. *See State v. Honig*, 2016 WI App 10, ¶ 28, 366 Wis. 2d 681, 874 N.W.2d 589. So, Chong's desire to see his trial lawyers' unrecorded thought process about his "beat this case" letter is not a colorable need for the non-existent transcripts. Chong could allege ineffective assistance without his trial lawyers' transcribed thoughts.

The circuit court appropriately exercised its discretion in concluding that Chong lacked a colorable need for the missing transcripts. The court determined "that the why question to the allowance of the statement is not one of the type[s] of question that would lead to a showing of prejudice." (R. 398:21.) In other words, Chong could have pursued a postconviction claim about his "beat this case" letter even without knowing *why* that letter was read and given to the jury. And the circuit court also aptly noted that "the exact nature of all of the presentation of that testimony is known." (R. 398:21.) That is, the record shows precisely what contents of Chong's letter were read and given to the jury. (R. 391; 404:219–20.)

In sum, Chong is not entitled to a new trial under *Perry* because he lacks a colorable need for the non-existent transcripts. He has not shown that the circuit court erroneously exercised its discretion in reaching this conclusion.

## B. In any event, the absence of transcripts is harmless.

"Error in transcript preparation or production, like error in trial procedure, is subject to the harmless-error rule." *Perry*, 136 Wis. 2d at 100. Under the harmless-error rule, a criminal defendant is not entitled to a new trial if the State can prove that an error was harmless. *State v. Nelson*, 2014 WI 70, ¶¶ 28–29, 44, 355 Wis. 2d 722, 849 N.W.2d 317. This Court independently determines whether an error was harmless. *State v. King*, 2005 WI App 224, ¶ 22, 287 Wis. 2d 756, 706 N.W.2d 181.

"[T]he harmless error inquiry is whether it is beyond a reasonable doubt that the jury would have come to the same conclusion absent the error." *State v. Magett*, 2014 WI 67, ¶ 29, 355 Wis. 2d 617, 850 N.W.2d 42. "The alternative wording of the test is whether it was 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *Id.* (citation omitted).

A court considers "the totality of the circumstances" to determine whether an error was harmless. *State v. Hunt*, 2014 WI 102, ¶ 29, 360 Wis. 2d 576, 851 N.W.2d 434. In doing so, a court may consider several non-exhaustive factors, including "the importance of the erroneously admitted or excluded evidence; the presence or absence of evidence corroborating or contradicting the erroneously admitted or excluded evidence; the nature of the defense; the nature of the State's case; and the overall strength of the State's case." *Id.* ¶ 27.

The lack of transcripts was harmless here. If a circuit court erroneously excluded or admitted evidence, a defendant is not entitled to a new trial if the error was harmless. *State v. Nieves*, 2017 WI 69, ¶ 17, 376 Wis. 2d 300, 897 N.W.2d 363. A defendant who asserts ineffective assistance of counsel must show that (1) counsel performed deficiently and (2) the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A harmless error is non-prejudicial under *Strickland*. *See, e.g.*, *State v. Weed*, 2003 WI 85, ¶¶ 34–35, 263 Wis. 2d 434, 666 N.W.2d 485. Here, even if transcripts would have helped Chong prove that the circuit court erroneously admitted his "beat this case" letter into evidence, that error was harmless. And even if transcripts would have helped show that Chong's trial lawyers performed deficiently by not objecting to that evidence during an in-chambers conference, that deficiency did not prejudice the defense. Chong's letter—and thus the lack of transcripts showing the circuit court and lawyers discussing this letter—was harmless for two reasons.

First, there was strong evidence of guilt. Again, eight witnesses testified that Chong had confessed to the shooting. As the circuit court explained, "to the extent [the 'beat this case' statement] was considered in conjunction with the homicide trial, the evidence outside of this statement was sufficient such as to render its inclusion meaningless." (R. 398:21.)

Second, as the circuit court explained, Chong "was acquitted of the charges to which the ['beat this case'] statement pertained"—two witness-intimidation charges. (R. 398:21.) An error is non-prejudicial if it related to charges for which a defendant was acquitted. *See State v. Prineas*, 2009 WI App 28, ¶ 35, 316 Wis. 2d 414, 766 N.W.2d 206; *State v. Elm*, 201 Wis. 2d 452, 463, 549 N.W.2d 471 (Ct. App. 1996). And as the circuit court further noted, Chong's trial was 11 days and had more than 40 witnesses, but the "beat this case"

statement "was referenced only a de minimis amount of time." (R. 398:17.) Indeed, it appears that the "beat this case" statement was mentioned only once during Chong's trial. (R. 404:220.)

There is no merit to Chong's argument that the "beat this case" evidence prejudiced his defense. He argues that this evidence did not imply that he was acknowledging his innocence of the homicide charge but instead revealed his consciousness of guilt. (Chong's Br. 30.) That argument fails for the same reason that the circuit court found this evidence inadmissible before trial: Chong's "beat this case" statement did not have enough context to determine whether it was "innocent or nefarious." (R. 95:2; *see also* R. 398:16.) Indeed, at the *Machner* hearing, Chong's postconviction lawyer said that the phrase "I'm pretty sure I'll beat this case" "would be something that someone who believed they were not guilty might say." (R. 397:29.)

Moreover, Chong is judicially estopped from arguing that his "beat this case" statement showed his consciousness of guilt. The doctrine of judicial estoppel "precludes a party from asserting a position in a legal proceeding and then subsequently asserting an inconsistent position." *State v. Ryan*, 2012 WI 16, ¶ 32, 338 Wis. 2d 695, 809 N.W.2d 37 (citation omitted). "For judicial estoppel to be available, three elements must be satisfied: (1) the later position must be clearly inconsistent with the earlier position; (2) the facts at issue should be the same in both cases; and (3) the party to be estopped must have convinced the first court to adopt its position." *Id.* ¶ 33. In the circuit court, the State argued that Chong's statement that he would beat his case was relevant to proving the witness-intimidation charges and thus was also relevant to Chong's consciousness of guilt on the homicide charge. (R. 89:2–3.) Chong disagreed, arguing that this evidence "is not probative of any wrongdoing" (R. 30:1), and that "[o]ther statements may be relevant to indicate

consciousness of guilt, but the phrase 'beat his case' itself is not relevant or probative" (R. 72:2; *see also* 328:6; 330:124–27). The circuit court agreed with Chong that this evidence was inadmissible. (R. 95:2.) The facts are the same on appeal as in the circuit court. Chong is thus judicially estopped from arguing that his "beat this case" statement indicated a consciousness of guilt.

Chong further argues that his "beat this case" letter was prejudicial because the jury requested to see it while deliberating. (Chong's Br. 30.) To the contrary, if the jury relied on this letter, it determined that this letter and other evidence were insufficient to prove the witness-intimidation charges of which Chong was acquitted. And the jury did not rely on this letter in finding Chong guilty of the homicide charge. The phrase "beat this case" could be interpreted as revealing Chong's consciousness of innocence, and his confessions to eight people overwhelmingly proved his guilt.

Chong also argues that "there was considerable reason to doubt these purported confessions." (Chong's Br. 32.) But it is not an appellate court's role to determine the credibility of witnesses. *State v. Marten-Hoye*, 2008 WI App 19, ¶ 25, 307 Wis. 2d 671, 746 N.W.2d 498. And the sheer number of confessions is significant because each one bolsters the credibility of the others.

Chong asserts in just one sentence that the evidence was insufficient to support his homicide conviction because a confession requires corroboration. (Chong's Br. 32.) Besides being inadequately developed, that argument has no merit. A confession may support a conviction, even for first-degree homicide, if there is "some corroboration of the confession." *Triplett v. State*, 65 Wis. 2d 365, 372, 222 N.W.2d 689 (1974). It is unclear whether a confession to someone besides police requires corroboration. *See State v. Hauk*, 2002 WI App 226, ¶¶ 21–22, 257 Wis. 2d 579, 652 N.W.2d 393. But a confession to a civilian sufficiently corroborates a confession to police.

36

*See id.* ¶¶ 22–23. Chong's confessions to eight people corroborate one another.

In sum, the single reference to Chong's vague "beat this case" statement at his lengthy trial was harmless. His alleged inability to challenge the admissibility of that statement, due to missing transcripts, is thus also harmless.

## CONCLUSION

This Court should affirm Chong's judgment of conviction and the circuit court's order denying postconviction relief.

Dated this 8th day of May 2019.

Respectfully submitted,

JOSHUA L. KAUL
Attorney General of Wisconsin

SCOTT E. ROSENOW
Assistant Attorney General
State Bar #1083736

Attorneys for Plaintiff-Respondent

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-3539
(608) 266-9594 (Fax)
rosenowse@doj.state.wi.us

**CERTIFICATION**

I hereby certify that this brief conforms to the rules contained in Wis. Stat. § 809.19(8)(b) and (c) for a brief produced with a proportional serif font. The length of this brief is 10,924 words.

_____
SCOTT E. ROSENOW
Assistant Attorney General

**CERTIFICATE OF COMPLIANCE
WITH WIS. STAT. § 809.19(12)**

I hereby certify that:

I have submitted an electronic copy of this brief, excluding the appendix, if any, which complies with the requirements of Wis. Stat. § 809.19(12).

I further certify that:

This electronic brief is identical in content and format to the printed form of the brief filed as of this date.

A copy of this certificate has been served with the paper copies of this brief filed with the court and served on all opposing parties.

Dated this 8th day of May 2019.

_____
SCOTT E. ROSENOW
Assistant Attorney General