STATE OF WISCONSIN
COURT OF APPEALS
DISTRICT III
Case No. 2018AP1741-CR

STATE OF WISCONSIN,
    Plaintiff-Respondent,
    v.
CHONG L. LEE,
    Defendant-Appellant.

On Notice of Appeal to Review the Judgment of Conviction and the Order Denying Motion for Postconviction Relief in the Circuit Court for Outagamie County, the Honorable Gregory B. Gill, Jr. Presiding.

## REPLY BRIEF OF DEFENDANT-APPELLANT

ANA L. BABCOCK
State Bar No. 1063719
Attorney for Defendant-Appellant

BABCOCK LAW, LLC
130 E. Walnut Street, St. 602
P.O. Box 22441
Green Bay, WI 54305
(920) 884-6565
ababcock@babcocklaw.org

Exhibit 4

REPLY ARGUMENT

I. CHONG LEE WAS DENIED HIS RIGHT TO DUE PROCESS WHEN THE STATE FAILED TO DISCLOSE EXCULPATORY EVIDENCE

To begin, Chong agrees that this issue is most appropriately analyzed under the lower burden set forth within the destruction-of-evidence rubric. Chong has met that burden, as discussed in Issue II, but he has also met the higher *Brady* burden. Here, the State concealed this apparently exculpatory evidence for eight months while *actively prosecuting* Chong for the homicide. R. 328:31-37. Instead of disclosing it, the State destroyed it. *Id.*

A. Favorable Prong

While the State is correct that Chong cannot show *whom* these three identified as the shooter in their December 2013 interviews, we do know that whomever they identified was not Chong. R. 328:31, 35-36, 38-39, 50; R. 330:85-86; R. 331:35-39. Even Mikey Thao, who knew Chong, did not identify him as the shooter. R. 328:38.

In any event, the *whom* question is answered by the actions police took subsequent to gaining this information. Specifically, police arrested someone else immediately after these interviews: Paul Lee. R. 331:30. The logical conclusion from this sequence of events is that these witnesses identified Paul as the shooter. Indeed, these witnesses identified Paul and his brothers, Hu and Teng, as the individuals of whom they were afraid, the basis for wanting their identities kept secret. R. 331:19-21, 35-36, 40-41.

In addition, the complaint against Chong was based on purported confessions Chong made to various individuals, many of whom were suspects themselves. R. 1. The complaint was silent as to any witnesses identifying the shooter, despite there being about 150 people in the bar that night. *See id.*; R. 328:66. Police had *three people* who identified the shooter, but the State did not so much as reference this identification in the complaint. R. 1; R. 328:31, 35-36, 38-39, 50; R. 330:85-86; R. 331:34,36-39. The only conclusion from this omission is that these witnesses did not support the State's theory that Chong was the shooter and instead showed someone else was the culprit. While the State is correct that a complaint need not contain an "'encyclopedic listing'" of all evidence the State plans to present at trial, these witnesses did not provide trivial or tangential statements; *they identified the shooter*. *Id.*; State's Brief at 19 (citation omitted). As Sgt. Thao testified, an identification of the shooter was crucial in this case. R. 331:38.

Finally, the fact that police did not use the legal methods of protecting confidential informants, such as Wis. Stat. § 905.10, but instead concealed and ultimately destroyed the evidence relating to these witnesses reveals the exculpatory nature of their statements. *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988)("police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant.").

In arguing that these witnesses inculpated Chong, the State carelessly relies on the April 2015 statements. State's Brief at 8. Chong agrees that the April statements were inculpatory. As the State cites, Sgt. Rabas testified that these witnesses inculpated Chong. *Id.*; R. 330:60. However, Rabas participated in only the April interviews;

he was not present for the December interviews. R. 328: 46, 49; R. 330:76-77.

B. Material Prong

The State argues that Chong could have called these witnesses and presented any exculpatory statements these witnesses made during their April interviews. State's Brief at 10-11. While defense counsel made reference to some exculpatory value in these witnesses' April interviews, these interviews were much more inculpatory than exculpatory. As Sgt. Rabas testified, all three witnesses implicated Chong in their April interviews. R. 330:60. Without the content of the December interviews to potentially impeach these witnesses, any testimony consistent with their April statements was harmful.

As to the State's argument that these recordings were inadmissible hearsay, the State is well-aware that prior inconsistent statements can be admitted under Wis. Stat. § 908.01(4)(a)1. State's Brief at 11. If the witnesses testified inconsistent with their December statements, these statements would have been powerful impeachment evidence, given that they occurred just days after the incident, as opposed to a year-and-a-half later when the April 2015 statements were taken.

Finally, the State's evidence of guilt was not strong; indeed, the State points only to the supposed confessions Chong made to various individuals. State's Brief at 11-12. As previously developed, there was considerable reason to question these confessions. Chong's Opening Brief at 32. The State cites to no physical evidence to corroborate these confessions; instead, the State suggests that confessions made to non-police require no corroboration and argues

that the confessions corroborate themselves. State's Brief at 36-37.

In *Bannister*, our supreme court did not qualify its holding that "[a] conviction will not stand on the basis of a defendant's confession alone[,]" as applying only to confessions to police. *State v. Bannister*, 2007 WI 86, ¶ 23, 302 Wis. 2d 158, 734 N.W.2d 892. And when the court said that there must be "*evidence* independent of the defendant's confession" to corroborate, it gave no indication that another confession would serve as this "evidence." *Id.* (emphasis added).

Had the State disclosed the December interviews of these witnesses during the eight months it was actively prosecuting him, Chong could have presented testimony consistent with these interviews, or the actual recordings as prior inconsistent statements, at trial. The testimony of three witnesses who identified the shooter but did not identify Chong as that individual would certainly undermine confidence that Chong pulled the trigger, especially where no identification evidence was presented at trial.

### C. Remedy

The State claims that Chong prematurely raised his *Brady* claim, asserting that a claim is not ripe until the trial has begun. State's Brief at 14-15. The State is wrong. Instead, a *Brady* violation becomes ripe when the evidence is not disclosed in time for the defendant to *make use of it*. *United State v. Grintjes*, 237 F.3d 876, 880 (7th Cir. 2001); *Armstrong v. Dailey*, 786 F.3d 529, 552 (7th Cir. 2015). Here, Chong's *Brady* claim was ripe because he was no longer able to make use of the destroyed evidence.

Although the State seems to agree that dismissal can be a proper remedy for a *Brady* violation, it argues it is not proper here because police did not act in bad faith. State's Brief at 16. As discussed below, the government's action in destroying this evidence was willful, intentional, and in bad faith. *Infra* 6-7. Given that Chong can never access this evidence or use it in a subsequent trial, "the resulting prejudice to the defense is permanent." State's Brief at 15 (quoting *Armstrong*, 786 F.3d at 552). Dismissal is the only adequate remedy.

II. **CHONG LEE WAS DENIED HIS RIGHT TO DUE PROCESS WHEN POLICE INTENTIONALLY DESTROYED APPARENTLY EXCULPATORY EVIDENCE TO PREVENT HIM FROM OBTAINING THIS EVIDENCE**

As an initial matter, this Court should again reject the State's relentless attempt to overrule the test announced in *Greenwold* and *Luedtke*. This Court, for good reason, has already rejected this argument. *State v. Huggett*, 2010 WI App 69, ¶¶ 11-13, 324 Wis. 2d 786, 783 N.W.2d 675. While Chong's claim prevails under the heightened test proposed by the State, given the bad faith at issue here, he need not develop this argument, as this Court is bound by *Greenwold* and *Luedtke*. *See Cook v. Cook,* 208 Wis.2d 166, 189–90, 560 N.W.2d 246 (1997).

A. Apparently exculpatory

As developed above, the December statements of these witnesses were exculpatory. To summarize, none of these witnesses, even Mikey Thao who knew Chong, identified him as the shooter in their first interviews. *Supra* 1-2.

The State takes aim at Chong's logic saying it "assumes that these witnesses must have exculpated him if they did not give statements that incriminated him." State's Brief at 20. The State misses a critical link in the chain of logic: *these witnesses identified the shooter*. Thus, that these witnesses identified the shooter and that they did not inculpate Chong as that individual (at least in their December interviews) shows that this evidence was exculpatory. As to the State's argument that these witnesses provided inculpatory statements, again, the State mistakenly cites to only the April 2015 interviews, which largely inculpated Chong. State's Brief at 8.

Finally, the exculpatory nature of the December statements is apparent from the way police used these statements and conducted themselves thereafter. *Supra* 1-2. The path paved from the immediate arrest of Paul Lee, to the complaint's omission of any eyewitness identification, to the concealment and ultimate destruction of this evidence leads to one conclusion: these witnesses exculpated Chong in their December interviews and police would stop at nothing to prevent the disclosure of this evidence.

### B. Bad Faith

The State actually defends the officers' conduct in this case, citing to this illusive "*Monfils* law." State's Brief at 21. This Court should not be hoodwinked into validating this contrived justification. As the State concedes, the "*Monfils* law," applies to open records requests, not required discovery in a homicide case. Wis. Stat. § 19.35(1)(am)1., 2.a., and 2.b.; *id.* at 21.

As the State recognizes, there is a lawful mechanism for police to protect an informant's identity under Wis. Stat. § 905.10, which allows the court to conduct an in camera review of the evidence before disclosure to a defendant. State's Brief at 21, n. 4. Nothing in this procedure permits police to destroy this evidence. The officers involved in the decision to destroy the tapes were seasoned veterans, each with about twenty years' experience, and were well-aware of the procedure to protect those who wish to remain anonymous. R. 328:33-34. R. 329:15-16, 28; R. 330:63; R. 399:222; R. 405:75; R. 406:125. To suggest that these officers so grossly misunderstood the law is insulting.

In addition, police singled out these three witnesses in their decision to destroy their statements, even though several other individuals asked to remain anonymous. R. 329:17-18, 21, 41. The decision to destroy the statements of the three witnesses who could exculpate Chong under the fabricated justification that these witnesses feared for their safety reveals the officers' animus. Ultimately, the court found that police acted in bad faith, and the State does not attack this finding apart from disagreeing with it. R. 332:10-12; State's Brief at 20-22.

C. Remedy

As this Court noted in *Greenwold II*, the role good faith played in the due process analysis was unclear from *Trombetta*. *State v. Greenwold*, 189 Wis. 2d 59, 67, 525 N.W.2d 294 (Ct. App. 1994). This Court explained that *Youngblood* filled in this gap, announcing the due process analysis test as follows: 1) police failed to preserve evidence that is apparently exculpatory regardless of good or bad faith or 2) police acted in bad faith by failing to preserve potentially exculpatory evidence. *Id.* *Youngblood* thus

brought bad faith into the threshold due process question. *Id.*, *Youngblood*, 488 U.S. at 57-58.

After bad faith was incorporated into the due process analysis, if found, it becomes irrelevant to the issue of sanctions. To establish bad faith as part of the due process analysis, the defendant faces a high burden to show that "officers acted with official animus or made a conscious effort to destroy the exculpatory evidence." *State v. Luedtke*, 2015 WI 42, ¶ 46, 362 Wis. 2d 1, 863 N.W.2d 592 (quoting *Greenwold II*, 189 Wis. 2d at 69). This requires a showing of heightened wrongdoing, not simply negligence. *See id.* Thus, where the court finds bad faith, the degree of that conduct has already been measured and its impact on the sanction is irrelevant. As the State conceded in *Huggett*, "'While dismissal may be proper where the State has acted in bad faith in failing to preserve exculpatory evidence (at least 'apparently exculpatory' evidence), *dismissal* should not be an *automatic remedy* in cases' not involving *bad faith*." 324 Wis. 2d 786, ¶ 26 (emphasis added).

A number of courts have concluded that dismissal is the only remedy for a *Youngblood* violation. Chong's Opening Brief at 23. As previously discussed, the remedy contemplated in the *Youngblood* case was dismissal, as the Supreme Court was reviewing the Arizona court's dismissal of the case. *State v. Youngblood*, 734 P.2d 592, 596 (Ariz. Ct. App. 1986); Chong's Brief at 23.

As previously developed, to the extent the *Hahn* test remains intact, the court erroneously exercised discretion in this case.[1] Chong's Brief at 24-26. The State claims that Chong is estopped from arguing that the court should not

---

[1] Chong disagrees that there is any perceived tension between *Hahn* and *Amundson*, but that argument is for another day in a higher court. *See Cook*, 208 Wis.2d at 189–90.

have suppressed these witnesses, but the State misunderstands the point. State's Brief at 24-25. While the suppression of these witnesses' *April* statements abated some of the damage, the suppression of these witnesses *altogether* did not remedy the destruction of the December statements. These witnesses, the only witnesses who could identify the shooter and who did not initially identify Chong as that person, were critical to Chong's case. But when police destroyed this evidence, he was left without paramount evidence to impeach these witnesses, to the extent their trial testimony differed from their December statements. Without ever being able to access or duplicate this evidence, the only cure is dismissal.

III. CHONG LEE HAS BEEN DENIED THE RIGHT TO A MEANINGFUL APPEAL DUE TO THE ABSENCE OF TRANSCRIPTS

Chong disagrees that this issue is reviewed under the discretionary standard; instead, as an issue of law, the de novo standard applies. State's Brief at 28; *See State v. Raflik*, 2001 WI 129, ¶ 32, 248 Wis. 2d 593, 636 N.W.2d 690.

A. Colorable Need

The State argues that, as a party aggrieved by the loss of the record, Chong could have raised these potential claim directly and alternatively, relying on *Perry*. State's Brief at 29-30. But *Perry* addressed the standard for establishing a colorable need; its holding had nothing to do with permitting a party to raise a direct claim where no record exists. *State v. Perry*, 136 Wis. 2d 92, 111, 401 N.W.2d 748 (1987). By referencing Chong as an "aggrieved party," the State implicitly concedes that he has shown a colorable need. *See* State's Brief at 29-30. Once the

defendant has established a colorable need, and the court finds that the record cannot be reconstructed, the remedy is a new trial. *Perry*, 136 Wis. 2d at 101. The remedy is not that the defendant can directly raise the possible error.

Practically speaking, raising these potential claims directly is impossible. In arguing that this Court could search the record to determine whether the court's decision to admit this evidence was proper or whether counsel's conduct was objectively reasonable, the State misses a critical step in its analysis: Chong cannot show that the court even made a decision at trial or that counsel failed to act. *See* State's Brief at 29-32. A trial judge has no obligation to bar the admission of evidence sua sponte, so without knowing whether the court even ruled on this evidence at trial, Chong cannot show that such ruling was in error. *Irby v. State*, 60 Wis. 2d 311, 316, 210 N.W.2d 755 (1973). Similarly, Chong cannot even show that counsel failed to object, a prerequisite to showing that counsel's failure constituted deficient performance. As a result, a direct claim on these issues without the transcripts would fail, and Chong has shown a colorable need.

B. The Error is not Harmless

The State bears the burden to establish that the error was harmless and must show "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *State v. Harris*, 2008 WI 15, ¶42, 307 Wis. 2d 555, 745 N.W.2d 397 (citation omitted).

As to the strength of the evidence, the State points only to the supposed confessions Chong made to various individuals. State's Brief at 11-12. As previously developed, there was considerable reason to doubt these confessions, and there was no evidence to corroborate these

purported confessions. Chong's Opening Brief at 32; *supra* 3-4. The State argues that this reference related only to the intimidation charges, but the State's own filings belie this claim: "The State believes the phrases are relevant for the Jury in it's (sic) analysis of both the Homicide charge as well as the Intimidation of Witness charges." R. 71:1. And of course, there was no instruction given limiting how the jury was to consider this evidence.

In addition, Chong is not estopped from arguing that this evidence prejudiced his case, as judicial estoppel requires a finding that the party has subsequently taken a position that is "clearly inconsistent" with an earlier position. *State v. Ryan*, 2012 WI 16, ¶ 32, 338 Wis. 2d 695, 809 N.W.2d 37. Prior to trial, Chong argued that the statements were not relevant *and* that any probative value is substantially outweighed by unfair prejudice. R. 330:127. The court conducted the balancing test under Wis. Stat. § 904.03 in deeming this reference inadmissible. R. 95. The argument that this reference was prejudicial to Chong's case is not "clearly inconsistent" with the position he took prior to trial or that adopted by the circuit court. It is the State that is being disingenuous in asserting that this reference was of no consequence, when it previously argued–quite vigorously–that this phrase evidenced a consciousness of guilt. R. 37, 71, 89.

Where the jury took particular note of this evidence during deliberations, asking to see the "beat the case" letter, the State cannot show *beyond a reasonable doubt* that the erroneous admission of this evidence *did not contribute* to the verdict. R. 271; *Harris*, 307 Wis. 2d 555, ¶ 42.

## CONCLUSION

Chong requests that this Court vacate the judgment of conviction and dismiss the case with prejudice. Alternatively, Chong requests that this Court grant him a new trial.

Dated this 27th day of June, 2019

Signed:

_____
Ana L. Babcock
State Bar. No. 1063719
Attorney for Defendant-Appellant

## CERTIFICATION AS TO FORM/LENGTH

I certify that this brief meets the form and length requirements of Rule 809.19(8)(b) and (c) in that it is: proportional serif font, minimum printing resolution of 200 dots per inch, 13 point body text, 11 point for quotes and footnotes, leading of minimum 2 points and maximum of 60 characters per line of body text. The length of the brief is 2,966 words.

## CERTIFICATE OF COMPLIANCE WITH RULE 809.19(12)

I hereby certify that:

I have submitted an electronic copy of this brief, excluding the appendix, if any, which complies with the requirements of §. 809.19(12). I further certify that:

This electronic brief is identical in content and format to the printed form of the brief filed on or after this date.

A copy of this certificate has been served with the paper copies of this brief filed with the court and served on all opposing parties.

Dated this 27th day of June, 2019

Signed:

_____
Ana L. Babcock
State Bar. No. 1063719
Attorney for Defendant-Appellant