**RECEIVED**

**01-29-2020**

**CLERK OF SUPREME COURT
OF WISCONSIN**

SUPREME COURT OF WISCONSIN

Case No.  2018AP1741-CR

STATE OF WISCONSIN,
       Plaintiff-Respondent,

  v.

CHONG LENG LEE,
       Defendant-Appellant-Petitioner.

PETITION FOR REVIEW

ANA L. BABCOCK
State Bar No. 1063719
Attorney for Defendant-
Appellant-Petitioner

BABCOCK LAW, LLC
130 E. Walnut Street, St. 602
P.O. Box 22441
Green Bay, WI 54305
(920) 884-6565
ababcock@babcocklaw.org

Exhibit 6

## TABLE OF CONTENTS

INTRODUCTION......................................................1

ISSUES PRESENTED FOR REVIEW.........................…..1

CRITERIA SUPPORTING REVIEW..............................2

STATEMENT OF THE CASE..........................…..........3

ARGUMENT........................................................10

   I.   WHETHER DISMISSAL IS AN AVAILABLE REMEDY FOR
      A *BRADY* VIOLATION? ALSO, WHETHER CHONG
      ESTABLISHED A *BRADY* VIOLATION AND WHETHER
      SUCH A VIOLATION WARRANTS
      DISMISSAL?...........................................................10

      A. Introduction.............................................10

      B. Dismissal is an available remedy for a *Brady*
         violation..................................................11

      C. Chong established a *Brady*
         violation..................................................12

      D. Dismissal is the only adequate
         remedy....................................................13

   II.   WHETHER DISMISSAL IS REQUIRED FOR A
      *YOUNGBLOOD* VIOLATION? ALSO, WHETHER THE
      *YOUNGBLOOD* VIOLATION IN THIS CASE MANDATES
      DISMISSAL? .........................................................13

      A. Dismissal is mandatory when police destroy
         evidence in bad faith..............................…..13

      B. The circuit court and the court of appeals agree
         that a *Youngblood* violation occurred
         here......................................................17

C. If dismissal is not automatic for a *Youngblood* violation, the circuit court erred in selecting the remedy of suppression of these witnesses..................................................18

III. WHETHER THE ABSENCE OF TRANSCRIPTS ENTITLES CHONG TO A NEW TRIAL.........................................19
A. Introduction................................................19
B. Legal principles..........................................20
C. Chong has established a colorable need for the missing transcripts....................................21
D. The record cannot be reconstructed.............24
E. The court of appeals' decision is in conflict with *Perry*..........................................................24

CONCLUSION......................................................25

CERTIFICATION AS TO FORM/LENGTH...................26

CERTIFICATION OF COMPLIANCE WITH RULE 809.19(12).................................... ...........................27

APPENDIX...........................................................28

TABLE OF CONTENTS OF APPENDIX......................29

ıı

TABLE OF AUTHORITIES

STATUTES CITED

Wis. Const. art I, § 21(1)............................................20

Wis. Stat. §§ 808.10.............................................…......1

Wis. Stat. §§ 09.62.............................................…....1, 2

CASES CITED

*Arizona v. Youngblood,*
    488 U.S. 51 (1988)…….......….........................6,14,15,17

*Brady v. Maryland,*
    373 U.S. 83 (1963)…………...….....….........................2,6

*California v. Trombetta,*
    467 U.S. 479 (1984)……………………….....…..........13,14

*Cost v. State,*
    417 Md. 360, 10 A.3d 184 (Md. 2010)…………….......…16

*Gov't of Virgin Islands v. Fahie,*
    419 F.3d 249 (3rd Cir. 2005)………….......…...….....11,12

*Lolly v. State,*
    611 A.2d 956 (Del. 1992)…………………………..…....16

*McCarty v. Gilchrist,*
    646 F.3d 1281 (10th Cir. 2011)………….......…….......2,16

*State v. Greenwold I,*
    181 Wis.2d 881,
    512 N.W.2d 237 (Ct. App. 1994)……….......…….........14

iii

*State v. Greenwold II*,
  189 Wis. 2d 59,
  525 N.W.2d 294 (Ct. App.  1994).......................14,15,16

*State v. Hahn*,
  132 Wis. 2d 351,
  392 N.W.2d 464 (Ct. App. 1986)..........................13,14

*State v. Harris*,
  2008 WI 15,
  307 Wis. 2d 555, 745 N.W.2d 397.............................11

*State v. Huggett*,
  2010 WI App 69,
  324 Wis. 2d 786, 783 N.W.2d 675............2,14,15,16,17

*State v. Lang*,
  176 Ariz. 475,
  862 P.2d 235, 245 (Ariz. Ct. App.1993).....................16

*State v. Luedtke*,
  2015 WI 42,
  362 Wis. 2d 1, 863 N.W.2d 592.......................15,16,17

*State v. Machner,*
  92 Wis. 2d 797,
  285 N.W.2d 905 (Ct. App. 1979)...............................22

*State v. Oinas*,
  125 Wis. 2d 487,
  373 N.W.2d 463 (Ct. App. 1985)..............................13

*State v. Perry*,
  136 Wis. 2d 92,
  401 N.W.2d 748....................................2,20,21,23,24

iv

*State v. Rains*,
    135 Ohio App.3d 547,
    735 N.E.2d 1, 6 (1999)……………………………….......16

*State v. Youngblood*,
    153 Ariz. 50,
     734 P.2d 592 (Ariz. Ct. App. 1986)………………..…….16

*Stuart v. State*,
    127 Idaho 806,
    907 P.2d 783 (Id. 1995)………………………………….16

*United States v. Bohl*,
    25 F.3d 904 (10th Cir. 1994)………………..…………..16

*United States v. Chapman*,
    524 F.3d 1073 (9th Cir. 2008)…………..…………….2,11

*United States v. Cooper*,
    983 F.2d 928 (9th Cir. 1993)………………...............16

*United States v. Davis*,
    578 F.2d 277 (10th Cir. 1978)…………………….….2,11

*United States v. Day*,
    697 A.2d 31 (D.C. 1997)………………………………...16

*United States v. Evans*,
    888 F.2d 891 (D.C Cir. 1989)……………….…………2,11

*United States v. Pasha*,
    797 F.3d 1122 (D.C. Cir. 2015)………..………………2,11

*United States v. Roberts*,
    779 F.2d 565 (9th Cir. 1986)………………………..….13

OTHER SOURCES CITED

NORMAN C. BAY, *Old Blood, Bad Blood, and Youngblood:*
*Due Process, Lost Evidence, and The Limits of Bad Faith*,
86 Wash. U. L. Rev. 241 (2008)………………………….16

# INTRODUCTION

Chong Lee petitions the Supreme Court of Wisconsin, pursuant to Wis. Stats. §§ 808.10 and 809.62, to review the decision of the Wisconsin Court of Appeals, District III, in *State of Wisconsin v. Chong L. Lee,* Appeal No. 2018AP1741-CR, filed on December 17, 2019.

## ISSUES PRESENTED FOR REVIEW

I.    WHETHER DISMISSAL IS AN AVAILABLE REMEDY FOR A *BRADY* VIOLATION?  ALSO, WHETHER CHONG ESTABLISHED A *BRADY* VIOLATION AND WHETHER SUCH A VIOLATION WARRANTS DISMISSAL?

    The court of appeals concluded that there was no *Brady* violation, and thus it did not reach the remedy issue.

II.   WHETHER DISMISSAL IS REQUIRED FOR A *YOUNGBLOOD* VIOLATION? ALSO, WHETHER THE *YOUNGBLOOD* VIOLATION IN THIS CASE MANDATES DISMISSAL?

    The court of appeals concluded that circuit courts retain discretion in determining the applicable remedy and that the circuit court properly determined that the *Youngblood* violation in this case did not warrant dismissal.

III.  WHETHER THE ABSENCE OF TRANSCRIPTS ENTITLES CHONG TO A NEW TRIAL?

    The court of appeals answered no.

1

## CRITERIA FOR REVIEW

This case presents intriguing issues of first impression and will resolve unanswered questions in Wisconsin law. *See* Wis. Stat. § 809.62(1r)(c)(1)-(2). First, this case will resolve the issue of whether dismissal is an available remedy for a *Brady*[1] violation, a question which has divided many jurisdictions.[2] Second, this case will answer the question posed in *State v. Huggett*, 2010 WI App 69, ¶ 25, 324 Wis. 2d 786, 783 N.W.2d 675, as to whether the discretionary balancing test remains viable in determining a remedy when police destroy evidence. Also, this case will address whether dismissal is required where police destroy evidence in bad faith, an issue that has similarly divided courts. *See McCarty v. Gilchrist*, 646 F.3d 1281, 1288 (10th Cir. 2011)(collecting cases).

This case presents a third issue that is also suitable for review, pursuant to § 809.62(1r)(d), although it admittedly lacks the same law-developing allure of the first two issues. Specifically, the court of appeals' decision in this case is in conflict with *Perry*, and this case is therefore appropriate for review. Wis. Stat. § 809.62(1r)(d). In *Perry*, this Court held that where the absence of transcripts prevents a defendant from establishing possible error, the remedy is a new trial. *State v. Perry*, 136 Wis. 2d 92, 99, 101, 401 N.W.2d 748 (1987). In this case, although the absence of transcripts left Chong unable to establish that the circuit court committed error in admitting certain

---

[1] *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

[2] Some courts have suggested that a new trial is the harshest sanction available. *See, e.g., United States v. Davis*, 578 F.2d 277, 280 (10th Cir. 1978); *United States v. Evans*, 888 F.2d 891, 897 n. 5 (D.C Cir. 1989). Other jurisdictions have concluded that dismissal is available to remedy a *Brady* violation. *See, e.g., U.S. v. Chapman*, 524 F.3d 1073, 1086 (9th Cir. 2008); *U.S. v. Pasha*, 797 F.3d 1122, 1139 (D.C. Cir. 2015); *Gov't of Virgin Islands v. Fahie*, 419 F.3d 249, 254-55 (3rd Cir. 2005).

2

evidence at trial (or that the court made a decision to admit the evidence at all), the court of appeals concluded that his remedy would have been a direct claim that the court committed error, not a new trial. *State of Wisconsin v. Chong L. Lee,* Appeal No. 2018AP1741-CR, ¶ 56, filed on December 17, 2019. This conclusion is incongruent with *Perry*.

## STATEMENT OF THE CASE

In the early hours of December 8, 2013, police responded to a call that there was a possible gunshot fired at the Luna Lounge in Appleton. R. 401:62-63, 89. When officers arrived, they found the victim on the ground near the entrance to the bar with blood on the side of his head. *Id.* at 68-69, 75. The victim died of a gunshot wound to the left side of his head. R. 403:39, 53. A security guard at Luna was in close proximity to the shooting, and he directed law enforcement to two Asian individuals, wearing a white vest and white hat, who quickly rushed out of the bar after the shooting and turned right. R. 401:70, 95-95, 101-03, 119-20. Law enforcement reviewed footage from traffic cameras in the area and identified three individuals running from the bar. *Id.* at 82-83. The three individuals were identified as Joe Thor, Paul Lee[3], and Phong Lee. *Id.* at 84-85. These suspects ran toward a dumpster area (*Id.* at 84-88), and police collected two items of clothing from the area. *Id.* at 87-88. Thor and Phong admitted to discarding their clothing in the dumpster area. R. 402:143; R. 406:41-42.

---

[3] Paul's first name is Paur, but he goes by Paul. R. 403:144. He will be referred to as Paul in this petition.

Police narrowed in on Paul Lee (R. 406:163), who was wearing a white coat[4] (R. 404:62) and ran with his hands in his pockets (R. 401:85). Police learned that just before the shot rang out, Paul was involved in an argument with the victim, and Paul punched the victim. R. 401:223-24. Security camera footage revealed that Paul had an object in his hands, and police believed this item was a gun. R. 399:164-165. Police arrested Paul for the homicide. R. 331:30.

At the time Paul was arrested, police had no information to indicate that the defendant, Chong Lee[5], was the shooter. R. 399:131. Over the course of multiple interrogations, police repeatedly accused Paul of being the shooter, falsely told Paul that five individuals identified him as the shooter, and told Paul that he would be going to prison for life. *Id.* at 160-61, 64-65. Paul was told that the only option for him to not be charged was to name the shooter. *Id.* at 165-66. Paul denied any involvement. *Id.* at 130. One of the officers eventually suggested to Paul that Chong may have been the shooter: Paul was told "either you did it or your brother did it." *Id.* at 205, 207. Paul then said Chong was the shooter. *Id.* at 232-33. Thereafter, police told Paul "we've built this great case against you. Now all we gotta do is we gotta get rid of that case to show that it wasn't you, that it was, in fact, your brother." R. 243:6. Police then arrested Chong. *Id.* at 87.

---

[4] As the Court of Appeals noted, Chong inadvertently stated in his opening brief that Paul Lee was wearing a white *vest*. *State of Wisconsin v. Chong L. Lee,* Appeal No. 2018AP1741-CR, ¶ 3 n. 2, filed on December 17, 2019. Instead, the record shows that Paul was wearing a white *coat* (R. 404:62), and Phong was wearing the white (or light colored) *vest* (R. 401:85).

[5] There are multiple key individuals with the surname "Lee" in this case, including the defendant, Chong Lee, Paul Lee, Phong Lee, and Watou Lee. First names will be used to designate these individuals.

Chong was subsequently charged with the homicide.[6] R. 1. The complaint was based almost exclusively on various witnesses who claimed that Chong confessed to the crime. R. 1. Despite the fact that there were at least 150 people in Luna that evening, the complaint referenced no eyewitnesses identifying the shooter. *See id.*; R. 328:66 However, *police had three eyewitnesses who identified the shooter.* R. 328:31, 35-36, 38-39, 50; R. 330:85-86; R. 331:34, 36-39. Specifically, on December 11, 2013, the same day police arrested Paul, police interviewed three witnesses to the shooting: Ryan Thao, Mikey Thao, and Watou Lee. R. 328:31, 35-36; R. 331:30. All three witnesses identified the shooter and gave descriptions of the shooter's clothing, personal characteristics, and direction of travel. R. 328:31, 35-36, 38-39, 50; R. 330:85-86; R. 331:34, 36-39. None of these three witnesses identified Chong as the shooter. R. 328:38; R. 331:35, 38.

The interviews with these witnesses were recorded, and the recordings were maintained in evidence for seven or eight months; however, police intentionally withheld this evidence from the defense, explaining that these witnesses did not want their identities disclosed. R. 328:25-27, 32, 35-37. In preparation for trial, police realized that these witnesses were inadvertently disclosed to the defense via the "whiteboard," which contained photographs and names of all the individuals in the vicinity of the shooting. *Id.* at 43, 63. After police realized the defense was now aware of these witnesses, "[they] knew through discovery the defense would be able to obtain [this evidence]," so they destroyed the evidence. *Id.* at 65.

---

[6] Chong was initially charged with first-degree intentional homicide and a felon in possession of a firearm. R 1. The State subsequently added four counts of felony intimidating witnesses and one count of soliciting perjury. R 7.

5

Chong filed a motion to dismiss on grounds that the State had violated both *Brady* and *Youngblood* in failing to disclose, and subsequently destroying, the evidence relating to these three witnesses.[7] R. 91; R. 97. *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Arizona v. Youngblood*, 488 U.S. 51 (1988). The circuit court concluded that Chong established that the destroyed evidence was potentially exculpatory, that police acted in bad faith, and that "action is warranted." R. 332:9-11, 13. The court, however, stated that dismissal is "unreasonable in light of the facts and circumstances associated with this case." *Id.* at 13. Instead, the court suppressed the testimony of these three witnesses. *Id.* Based on the court's ruling, the jury never heard from the only witnesses who could identify the shooter and who did not identify Chong as the shooter. R. 328:38; R. 331:35, 38; R. 400- R. 410.

This case involved a myriad of additional pretrial issues, including whether the State could present evidence to the jury that Chong said he would "beat this case." R. 30:1. The State filed three separate briefs vigorously arguing for the admission of Chong's reference to "beat this case" on grounds that these statements showed a consciousness of guilt. R. 37; R. 71; R 89. The circuit court ruled that reference to "beat the case" was inadmissible because the statement was irrelevant and would only confuse matters. R. 95.

The case proceeded to an eleven-day jury trial. R. 400- R. 410. At trial, the State asked one of its witnesses, Stephanie Thao, to read a letter Chong had written her, in which Chong said, "I'm pretty sure I'll beat this case

---

[7] In the alternative, Chong argued that the court should suppress "any in court identification of Chong Lee by any witness interviewed by law enforcement in which law enforcement destroyed the recorded statement of said witness [and] . . . any testimony that links Chong Lee to the homicide in this case." R. 91:1.

6

though." R. 404:219-20. During deliberations, the jury asked to see that letter. R. 271. However, there is no transcript of the jury's question to the court, any arguments of counsel, or the court's decision in response to the jury's request.[8]  *See* R. 410:188; R. 391:1. The jury found Chong guilty of the homicide, felon in possession of a firearm, and two counts of intimidation of a witness; Chong was acquitted of the remaining two counts of intimidation of a witness. R.391:3-6.

Chong subsequently filed a postconviction motion asserting that trial counsel was ineffective, for a variety of reasons, including that counsel failed to object to the admission of the letter in which Chong said, "I'm pretty sure I'll beat this case though," and failed to object when the jury asked to see that letter. R. 298:8-9.[9] When Chong questioned trial counsel on their actions at the evidentiary hearing, new facts emerged. Lead defense counsel, Attorney Vishny, could not offer any explanation as to why an objection was not made. R. 394:35. She recalled that there were discussions before the verdict was received. R. 396:37-38. She agreed that reference to "beat the case" should not have been in evidence but could not recall how this evidence ultimately got before the jury, whether counsel failed to object or whether the court admitted the evidence over objection. *See id.* at 41-43.

Co-counsel, Attorney Weitz, agreed that reference to "beat the case" was inadmissible. R. 397:20. Attorney Weitz could not recall why he did not object to this reference given the court's prior ruling. *Id.* at 21-22. He

---

[8] It appears from the transcripts that after the jury was sent out to deliberate, the court reporter was relieved, and a different court reporter came in to transcribe the verdict. R. 410:188; R. 391

[9] Chong asserted additional grounds, which he either withdrew at the postconviction level or does not maintain on appeal.

7

recalled that the parties spent "quite a bit of time in chambers" going through various pieces of evidence, and that the court made rulings in chambers as to what evidence was admissible. *Id.* at 22. Attorney Weitz could not recall whether he objected in chambers to this reference coming into evidence. *Id.* at 23. As to the letter going to the jury at its request, Attorney Weitz recalled that when the jury presented questions, the parties reconvened in the courtroom to discuss the questions. *Id.* at 24-25. Attorney Weitz could not recall whether he objected to the letter containing "beat this case" going to the jury. *Id.* at 26. The postconviction judge, who also presided over the trial, indicated that he does not "have an independent recollection" of the discussions relative to the jury questions. R. 396:37-38.

Chong subsequently asserted that he has been denied the right to a meaningful appeal due to the lack of transcripts. R. 305:8-15. Specifically, because Chong is unable to determine how or why the "beat this case" reference, previously deemed inadmissible, got before the jury, he cannot identify where his claim of error lies: whether his claim is that trial counsel was ineffective in failing to object or whether the circuit court erroneously admitted this evidence over counsel's objection. *Id.* at 12. The circuit court concluded "that the why question to the allowance of the statement is not one of the type of question that would lead to a showing of prejudice." R. 398:21. The court explained that Chong was acquitted of the charges to which the statement pertained and, to the extent it was considered as part of the homicide charge, the statement was meaningless in light of the other evidence. *Id.*

Chong appealed and argued that: 1) the State violated his right to due process under *Brady* by failing to disclose the December 2013 interviews of Mikey, Watou,

8

and Ryan during the several months it possessed them and that dismissal is the only adequate remedy; 2) the State violated his right to due process under *Youngblood* by destroying any record of the December 2013 interviews and that dismissal is required; and 3) that the missing transcripts deprived Chong of his right to a meaningful appeal. The court of appeals affirmed the conviction. *State of Wisconsin v. Chong L. Lee,* Appeal No. 2018AP1741-CR, ¶ 1, filed on December 17, 2019.

As to the *Brady* issue, the court of appeals concluded that Chong failed to show that the evidence was favorable or that it was material to a determination of his guilt. *Id.*, ¶ 22. As such, the court of appeals did not address whether dismissal is an available remedy. As to the *Youngblood* issue, the court of appeals agreed with the circuit court's analysis that the destroyed evidence was only potentially exculpatory and that the police acted in bad faith. *Id.*, ¶¶ 41, 44. The court rejected Chong's argument that dismissal is mandatory when the police destroy evidence in bad faith and held that circuit courts have discretion in determining the appropriate remedy. *Id.*, ¶ 47. The court further concluded that the circuit court exercised proper discretion in declining to dismiss the case. *Id.*, ¶ 48. Finally, the court of appeals held that the absence of transcripts relating to the admission of the "beat the case" evidence did not deny Chong the right to a meaningful appeal. *Id.*, ¶ 60. The court explained that Chong could have argued on appeal that the circuit court erred in its decision to admit this evidence (even though there is no indication that the court even made a decision), reasoning that the court of appeals would have independently reviewed the record to determine whether proper discretion was exercised. *Id.*, ¶¶ 56, 59.

9

On January 3, 2020, Chong filed a motion for
reconsideration as to the court's ruling on the transcript
issue. (App. C). Chong argued that he reasonably believed
that where he is unable to establish potential error due to
the absence of transcripts, his remedy is that which is
mandated by the *Perry* case- a new trial. *Id.* Given the
court's ruling that he could have directly raised this claim,
Chong asked the court to remand the case to allow him to
do so. *Id.* The court of appeals denied the motion, and this
petition follows. (App. B).

## ARGUMENT

I. WHETHER DISMISSAL IS AN AVAILABLE REMEDY FOR A *BRADY*
VIOLATION? ALSO, WHETHER CHONG ESTABLISHED A *BRADY*
VIOLATION AND WHETHER SUCH A VIOLATION WARRANTS
DISMISSAL?

### A. Introduction

At trial, the State presented no witnesses who could
identify the shooter in this case. However, just after the
shooting, police interviewed three witnesses who gave a
description of the shooter's clothing, personal
characteristics, and direction of travel. R. 328:31, 35-36,
38-39, 50; R. 330:85-86; R. 331:34, 36-39. None of these
witnesses identified Chong as the shooter. R. 328:38; R.
331:35, 38. The interviews with these three witnesses were
recorded, and the recordings were maintained in evidence
for seven or eight months; however, police never disclosed
this evidence to the defense during this timeframe. R.
328:25-27, 31-33, 35-37. Subsequently, police learned that
the names of these three witnesses had been inadvertently
disclosed to the defense. *Id.* at 43, 63. Police then "knew
through discovery the defense would be able to obtain [this
evidence]," so they destroyed it. *Id.* at 65. The recordings

10

were never recovered, and police were unable to recall the specifics of the witnesses' original statements. R. 328:50-52; R. 330:6, 86, 96-98; R. 331:34, 36-39.

Although Chong is entitled to relief under the *Trombetta/Youngblood* destruction of evidence line of cases, he is also entitled to relief under *Brady*, given that the State maintained this evidence for several months yet failed to disclose it in a timely manner. Given the egregiousness of the government's conduct and the incurable prejudice to the defense, dismissal is warranted.

B. Dismissal is an available remedy for a *Brady* violation

Wisconsin has generally recognized that the remedy for a *Brady* violation is a new trial. *State v. Harris*, 2008 WI 15, ¶ 62, 307 Wis. 2d 555, 745 N.W.2d 397. This remedy, however, presumes that the defendant has obtained and is able to present the exculpatory material at a new trial. There are circumstances, such as the case here, where the State's failure to disclose exculpatory evidence forever deprives a defendant of the opportunity to have a fair trial. In these circumstances, dismissal is warranted, and Chong asks this Court to accept this case to so hold.

Other jurisdictions disagree on whether dismissal is available to remedy a *Brady* violation. Some courts have suggested that a new trial is the harshest sanction available. *See, e.g.*, *United States v. Davis*, 578 F.2d 277, 280 (10th Cir. 1978); *United States v. Evans*, 888 F.2d 891, 897 n. 5 (D.C Cir. 1989). Other jurisdictions have concluded that dismissal is available to remedy a *Brady* violation. *See, e.g.*, *United States v. Chapman*, 524 F.3d 1073, 1086 (9th Cir. 2008); *United States v. Pasha*, 797

11

F.3d 1122, 1139 (D.C. Cir. 2015); *Gov't of Virgin Islands v. Fahie*, 419 F.3d 249, 254-55 (3rd Cir. 2005). In *Fahie*, the Third Circuit noted that although the United States Supreme Court has never directly addressed the issue, "it has left open the possibility of barring retrial in response to particularly egregious due process violations." *Fahie*, 419 F.3d at 252 .

Before the court of appeals, the State acknowledged that this issue presents an open question under Wisconsin law but urged the court not to resolve the issue, asserting that it was not ripe. *See* State's Brief at 14. Ultimately, the court of appeals did not reach the issue, as it concluded that there was no *Brady* violation. *State of Wisconsin v. Chong L. Lee,* Appeal No. 2018AP1741-CR, ¶ 39, filed on December 17, 2019. This Court should accept this case to resolve this issue and should hold that some *Brady* violations, like the one here, require dismissal.

### C. Chong established a *Brady* violation

This Court should accept this case to resolve the remedy issue discussed above. Chong also asks that this Court apply that rule to the facts of his case to determine whether he is entitled to relief. Given the highly factual nature of whether Chong has established a *Brady* violation, the mandate that petitions be as short as possible, and Chong's looming word count limit, Chong will not fully develop this subsidiary issue in this petition.

### D. Dismissal is the only adequate remedy

The facts of this case illustrate why dismissal must be a remedy available when a new trial will not cure the prejudice resulting from the State's conduct. In this case, Chong can never obtain the exculpatory evidence of these

12

three witnesses' December 11, 2013 statements; the State made sure of that by intentionally destroying any record of their statements. R. 328:65. As a result, Chong is unable to ever present this evidence, and a new trial would not remedy the harm. The only remedy for the State's egregious conduct in this case is dismissal.

This Court should resolve the unanswered question as to whether dismissal is a remedy available for a *Brady* violation, should answer that question in the affirmative, should conclude that a *Brady* violation occurred, and should hold that such violation commands dismissal of this case.

II.  WHETHER DISMISSAL IS REQUIRED FOR A *YOUNGBLOOD* VIOLATION? ALSO, WHETHER THE *YOUNGBLOOD* VIOLATION IN THIS CASE MANDATES DISMISSAL?

> A. Dismissal is mandatory when police destroy evidence in bad faith

In *Trombetta*, the Supreme Court held that the State has a duty to preserve "evidence that might be expected to play a significant role in the suspect's defense." *California v. Trombetta*, 467 U.S. 479, 488 (1984). The focus under *Trombetta* is on the "constitutional materiality" of the evidence; that is, the apparently exculpatory value of the evidence. *Id.* at 489; *see also State v. Oinas*, 125 Wis. 2d 487, 490, 373 N.W.2d 463 (Ct. App. 1985). When a defendant establishes a *Trombetta* violation, the circuit "court must choose between barring further prosecution or suppressing . . . the State's most probative evidence." *Trombetta*, 467 U.S. at 487. In determining a remedy for a *Trombetta* violation, our court of appeals explained that circuit courts are to balance ""the quality of the Government's conduct and the degree of prejudice to the

13

accused.'" *State v. Hahn*, 132 Wis. 2d 351, 362, 392 N.W.2d
464 (Ct. App. 1986)(quoting *United States v. Roberts*, 779
F.2d 565, 569 (9th Cir. 1986)).

Subsequently, in *Youngblood*, the Supreme Court
expanded on *Trombetta* by addressing the role that law
enforcement's intent in destroying evidence plays in the
analysis. *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).
*Youngblood* held that where police act in bad faith, a
defendant need only show that the evidence was
"potentially useful" to establish a due process violation. *Id.*
at 57-58.

In *Greenwold*, the court of appeals succinctly
harmonized the *Trombetta and Youngblood* tests stating,
"the due process analysis is two-pronged: A defendant's due
process rights are violated if the police: (1) failed to
preserve the evidence that is apparently exculpatory; or (2)
acted in bad faith by failing to preserve evidence which is
potentially exculpatory." *State v. Greenwold*, 189 Wis. 2d
59, 67, 525 N.W.2d 294 (Ct. App. 1994)(*Greenwold II*); *see
also State v. Greenwold*, 181 Wis.2d 881, 885-86, 512
N.W.2d 237 (Ct. App. 1994)(*Greenwold I*).

The law is clear that courts have discretion in
determining the appropriate remedy for a *Trombetta*
violation.[10] *Trombetta*, 467 U.S. at 487 (the "court must
choose between barring further prosecution or suppressing
. . . the State's most probative evidence."); *Hahn*, 132 Wis.
2d at 362. However, Wisconsin has yet to address whether
circuit courts have such discretion where bad faith is at
issue. Indeed, in *Huggett*, the court of appeals questioned

[10] By "*Trombetta* violation," Chong is referencing the former alternative test outlined in
*Greenwold*, where the evidence was apparently exculpatory. *Greenwold II*, 189 Wis. 2d at
67. By "*Youngblood* violation," Chong is referring to the latter test, where police acted in
bad faith. *Id.*

14

whether the discretionary balancing test referenced in *Hahn* remains viable in light of *Greenwold*. *State v. Huggett*, 2010 WI App 69, ¶ 25, 324 Wis. 2d 786, 783 N.W.2d 675. While the *Huggett* court held that the circuit court properly exercised its discretion in selecting dismissal as the remedy, it first paused to question the viability of that test. *See id.*

Chong submits that where the circuit court has found that police acted in bad faith in destroying evidence, dismissal is mandatory. When dealing with apparently exculpatory evidence under a *Trombetta* violation, the intent of the government is irrelevant (*Youngblood*, 488 U.S. at 57), so it makes sense that intent becomes relevant in evaluating the harshness of the remedy to impose. But where a *Youngblood* violation is at issue, intent is part of the threshold question. *Id.* at 57-58. Where the court has already found that police acted in bad faith, analyzing the bad faith of police becomes redundant and irrelevant in the remedy analysis.

The court of appeals in this case concluded that bad faith comes in varying degrees and that the bad faith at issue in this case was not of a "high degree." *State of Wisconsin v. Chong L. Lee,* Appeal No. 2018AP1741-CR, ¶ 49, filed on December 17, 2019. Chong submits that bad faith embodies a single degree of *mens rea*, reserved for the most egregious of actions. Good faith (or perhaps a more apt term "not in bad faith") encompasses a broad spectrum of conduct, whether that be that evidence was destroyed in accordance with routine procedures (*State v. Luedtke*, 2015 WI 42, ¶ 56, 362 Wis. 2d 1, 863 N.W.2d 592), that police failed to ensure evidence was preserved (*Youngblood*, 488 U.S. at 57-58), or that police were negligent in handling evidence (*Greenwold II*, 189 Wis. 2d at 68). On the other hand, bad faith embodies a single degree of malice,

15

requiring a defendant to establish the high burden that "officers acted with official animus or made a conscious effort to destroy the exculpatory evidence." *Luedtke*, 362 Wis. 2d 1, ¶ 46 (quoting *Greenwold II*, 189 Wis. 2d at 69).

Other jurisdictions are split as to whether a *Youngblood* violation requires dismissal or whether the court has discretion in imposing alternative remedies. *McCarty v. Gilchrist*, 646 F.3d 1281, 1288 (10th Cir. 2011)(collecting cases). Some jurisdictions hold that the only remedy for the bad faith destruction of potentially exculpatory evidence is dismissal. *Id.* (citing to *State v. Lang*, 176 Ariz. 475, 862 P.2d 235, 245 (Ariz. Ct. App. 1993); *Lolly v. State*, 611 A.2d 956, 960 (Del. 1992); *United States v. Day*, 697 A.2d 31, 36 (D.C. 1997)); *see also Cost v. State*, 417 Md. 360, 374, 10 A.3d 184 (Md. 2010); NORMAN C. BAY, *Old Blood, Bad Blood, and Youngblood: Due Process, Lost Evidence, and The Limits of Bad Faith*, 86 Wash. U. L. Rev. 241, 296 (2008). Other jurisdictions have approved of alternative remedies short of dismissal for *Youngblood* violations. *McCarty*, 646 F.3d at 1288.[11]

Although *Youngblood* did not directly address the remedy for a violation, as it found no violation, the remedy contemplated by the Supreme Court was dismissal. *Youngblood*, 488 U.S. at 52 (reviewing the decision of the Arizona Court of Appeals in *State v. Youngblood*, 153 Ariz. 50, 734 P.2d 592, 596 (Ariz. Ct. App. 1986) concluding that dismissal is required). Similarly, following *Youngblood,* the Wisconsin cases analyzing this issue have all contemplated dismissal as the remedy. *See Greenwold II*, 189 Wis. 2d at

---

[11] Citing *"United States v. Bohl*, 25 F.3d 904, 914 (10th Cir. 1994)(suppression of evidence); United *States v. Cooper*, 983 F.2d 928, 932-33 (9th Cir. 1993)(suppression of evidence); *Stuart v. State*, 127 Idaho 806, 907 P.2d 783, 793-94 (1995)(favorable inference under spoliation doctrine); *State v. Rains*, 135 Ohio App.3d 547, 735 N.E.2d 1, 6 (1999)(suppression of evidence)."

16

63 (reviewing the circuit court's order dismissing homicide charge); *Huggett*, 324 Wis. 2d 786, ¶¶ 25-28 (reviewing the circuit court's order dismissing homicide charge); *Luedtke*, 362 Wis. 2d 1, ¶¶ 5, 17, (reviewing the circuit court's orders denying defendants' motions to dismiss).

Finally, requiring dismissal where a *Youngblood* violation occurs will have an important deterrent effect. When police act in bad faith, they "themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant." *Youngblood*, 488 U.S. at 58. Such conduct on the part of police has no place in our justice system, and automatic dismissal for this behavior will ensure its inevitable extinction.

As the State conceded in *Huggett*, "'While dismissal may be proper where the State has acted in bad faith in failing to preserve exculpatory evidence (at least 'apparently exculpatory' evidence), dismissal should not be an automatic remedy in cases' not involving bad faith." 324 Wis. 2d 786, ¶ 26.

>B. The circuit court and the court of appeals agree that a *Youngblood* violation occurred here

The circuit court found, and the court of appeals agreed, that a *Youngblood* violation occurred in this case. R. 332:9-11, 13; *State of Wisconsin v. Chong L. Lee,* Appeal No. 2018AP1741-CR, ¶¶ 44, 45, filed on December 17, 2019. That is, that the police acted in bad faith in destroying potentially exculpatory evidence. *Id.* Due to the highly factual nature of this aspect of the analysis, the findings of the lower courts, and the mandate that petitions be as short as possible, Chong will not fully develop this subsidiary issue in this petition. Chong notes, though, that he maintains his position that the evidence in this case

17

went beyond potentially exculpatory and satisfied the standard of apparently exculpatory. Ultimately, such distinction is of no consequence because when police act in bad faith, as is the case here, Chong need only show that the evidence was potentially exculpatory. *Youngblood*, 488 U.S. at 57-58. As discussed above, this Court should hold that where bad faith has been established, dismissal is required. Because police destroyed the evidence in this case in bad faith, dismissal is required.

    C. If dismissal is not automatic for a *Youngblood* violation, the circuit court erred in selecting the remedy of suppression of these witnesses

In raising this issue before the trial court, Chong moved to dismiss or, alternatively, suppress "any in court identification of Chong Lee by any witness interviewed by law enforcement in which law enforcement destroyed the recorded statement of said witness [and] . . . any testimony that links Chong Lee to the homicide in this case." R. 91:1. The court concluded that dismissal was unreasonable in light of the facts and circumstances associated with the case. R. 332:13. Instead, the court ordered that "the court (sic) shall be prohibited from calling Ryan Thao, Mikey Thao, and Watou Lee." *Id.* ("sic" notation in original transcript).

The court's selection of remedy did not right the wrong in this case. In the December 2013 interviews, these witnesses identified the shooter and did not identify Chong as that individual. R. 328:38-39, 50; R. 330:85-86; R. 331:34-39. Thus, this evidence would have presented reasonable doubt as to whether Chong was the shooter, and prohibiting the testimony of these witnesses had a more detrimental effect.

18

The court of appeals rejected this argument, concluding that the circuit court's ruling did not prevent Chong from calling these witnesses and that Chong had evidence of these witnesses' subsequent April statements. *State of Wisconsin v. Chong L. Lee,* Appeal No. 2018AP1741-CR, ¶¶ 50, 52, filed on December 17, 2019. According to the court of appeals, the circuit court prohibited only the *State* from calling these witnesses. *Id.* As an initial point, this conclusion is not entirely accurate. The circuit court's precise ruling was that "the *court* (sic) shall be prohibited from calling Ryan Thao, Mikey Thao, and Watou Lee." *Id.* (emphasis added).

While the court of appeals implicitly interpreted the circuit court's ruling as "the *State* shall be prohibited from calling . . . [,]" it is unclear whether the circuit court intended such, whether the court was prohibiting the testimony of these witnesses altogether, whether the court's words should be taken at face value, or something else. *See id.,* ¶ 52. In any event, calling these witnesses without evidence of their December 2013 interviews would have been fruitless. By April, it was clear that these witnesses were inculpating Chong. *See* R. 330:60. Without the content of the December interviews to potentially impeach these witnesses, any testimony consistent with their April statements was harmful. The only way to cure the prejudice resulting from the government's conduct is to dismiss the case.

19

III.  Whether the absence of transcripts entitles Chong
      to a new trial?

### A. Introduction

Prior to trial, after lengthy litigation, the court ruled that the State could not present evidence that Chong said he would "beat this case." R. 95. However, this evidence was ultimately presented to the jury through testimony. R. 404:220. In addition, during deliberations, the jury asked to see the letter wherein Chong wrote that he would "beat this case," and the court sent the letter to the jury. R. 271. Chong asserted that trial counsel was deficient in failing to object to this evidence. R. 298. During the postconviction process, however, Chong learned that critical portions of the trial were not transcribed, including various in-chambers evidentiary hearings as well as the discussions and rulings that took place in response to the jury's questions. Because there are no transcripts of these portions of the proceedings, Chong cannot assert a claim relative to the improper admission of the "beat this case" evidence.

### B. Legal Principles

The Wisconsin Constitution guarantees a defendant an absolute right to appeal. Wis. Const. art I, § 21(1). As part of this guarantee, a defendant has the right to a "meaningful" appeal. *State v. Perry*, 136 Wis. 2d 92, 98-99, 401 N.W.2d 748 (1987). To ensure the defendant has a right to a "meaningful" appeal, the "law requires that a defendant be furnished a full transcript—or a functionally equivalent substitute that, in a criminal case, beyond a reasonable doubt, portrays in a way that is meaningful to the particular appeal exactly what happened in the course of trial." *Id.* at 99. An incomplete record that prevents a

20

defendant "from demonstrating possible error constitutes a constitutional deprivation of the right to appeal." *Id.* Where an incomplete record denies the defendant the right to a meaningful appeal, a new trial must follow. *Id.*

If a portion of the trial record is missing, a defendant need show only a "colorable need" for the missing portion. *Id.* at 108. A defendant has a "colorable need" for a missing portion of the record when evidence of that missing portion might lend to a claim of prejudicial error on appeal. *Id.* at 101. A defendant need not establish prejudicial error; he need only allege "that there is some likelihood that the missing portion would have shown an error that was arguably prejudicial." *Id.* at 103. At the same time, the possible "error cannot be of such a trivial nature that it is clearly harmless." *Id.* at 108.

Once the defendant demonstrates a "colorable need" for the missing portion of the record, the duty then shifts to the circuit court "to determine whether the missing portion of the record can be reconstructed." *Id.* at 101. If the record cannot be reconstructed beyond a reasonable doubt and without speculation, the remedy is a new trial. *Id.*

C. Chong has established a colorable need for the missing transcripts

Prior to trial, Chong sought to exclude any references he made over the phone or in writing that he would "beat this case." R. 30 at 1. The State filed three separate briefs vigorously arguing for the admission of Chong's reference to "beat this case" on grounds that these statements showed a consciousness of guilt. R. 37; R. 71; R. 89. The circuit court ruled that reference to "beat this case" was inadmissible because the statement was irrelevant and would only confuse matters. R. 95.

21

Despite the court's ruling, the State presented evidence to the jury that Chong said he would "beat this case." Specifically, the State introduced these statements to the jury through Stephanie Thao, via a letter Chong purportedly wrote to Thao. R. 404:220. During deliberations, the jury asked to see the letter. R. 271. There is, however, no transcript of the discussion following the jury's question, of any arguments of counsel, or of any decision on how to respond to the jury.[12] The record simply shows that the court sent the letter to the jury with the majority of its original form redacted; however, one key portion, "I'm pretty sure I'll beat this case tho[,]" was not redacted. *Id.* at 2-4; R. 167.

The transcripts do not reflect any objection from trial counsel as to the admission of the "beat this case" reference or to the jury viewing the letter with the phrase "beat this case." Based on the circuit court's plain ruling that this phrase was not to be presented to the jury, Chong asserted in his postconviction motion that counsel was ineffective in failing to object. R. 298 at 1, 8-9. When Chong questioned counsel on their actions at the *Machner*[13] hearing, new facts emerged. Lead defense counsel, Attorney Vishny, could not offer any explanation as to why an objection was not made. R. 396:35. Attorney Vishny agreed that reference to "beat this case" should not have been in evidence but could not recall how this evidence ultimately got before the jury, whether counsel failed to object or whether the court admitted the evidence over objection. *See id.* at 41-43.

---

[12] It appears from the transcripts that after the jury was sent out to deliberate, the court reporter was relieved, and a different court reporter came in to transcribe the verdict. R. 410:188; R. 391.

[13] *State v. Machner,* 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

Co-counsel, Attorney Weitz, agreed that reference to "beat this case" was inadmissible. R. 397:20. Attorney Weitz could not recall why he did not object to this reference given the court's prior ruling. *Id.* at 21-22. He did recall though that the parties spent "quite a bit of time in chambers" going through various pieces of evidence, and that the court made rulings in chambers as to what evidence was admissible. *Id.* at 22. Attorney Weitz could not recall whether he objected in chambers to this reference coming into evidence. *Id.* at 23. As to the letter going to the jury at its request, Attorney Weitz recalled that when the jury presented questions, the parties reconvened in the courtroom to discuss the questions. *Id.* at 24-25. Attorney Weitz could not remember whether he objected to the letter containing "beat this case" going to the jury. *Id.* at 26.

As a result, Chong is unable to determine how or why the "beat this case" reference, previously deemed inadmissible, got before the jury. *See* R. 95. This leaves Chong unable to identify or assert where his claim of error lies: whether his claim is that counsel was ineffective in failing to object or whether the circuit court erroneously admitted this evidence over counsel's objection. Because this evidence was ruled inadmissible and because it was ultimately–for reasons unknown–presented to the jury, Chong has shown "that there is some likelihood that the missing portion would have shown an error that was arguably prejudicial." *Perry*, 136 Wis. 2d at 103.

While Chong is not required to establish prejudice, he has done so. First, his comment that he would "beat this case" supported the inference that Chong was not seeking to prove his innocence; rather, that he would be acquitted of charges of which he was actually guilty. In colloquial terms, that he would "get off." Second, the State agreed that these statements were incriminating when it

23

vigorously argued for their admission as evidencing a "consciousness of guilt." R. 37, 71, 89. Finally, the jury took particular note of these statements in deliberations, requesting to see the letter in which Chong purportedly told Thao he would "beat this case." R. 271. Accordingly, Chong has satisfied the notably low threshold of establishing "that there is *some likelihood* that the missing portion would have shown an error that was *arguably* prejudicial." *Perry*, 136 Wis. 2d at 103 (emphasis added).

### D. The record cannot be reconstructed

During the postconviction process, Chong attempted to reconstruct the record; however, defense counsel could not recall the contents of these off-the-record discussions. R. 396:37, 39, 40-43; R. 397:23-26. The State offered no reconstruction of the record. *See* R. 306. Ultimately, the court indicated that it does not "have an independent recollection" of the discussions relative to the jury questions. R. 396:37-38. Based on the testimony of counsel and the comments of the court, it is impossible to speculate as to what occurred off-the-record, much less recreate an accurate record beyond a reasonable doubt. Accordingly, a new trial is warranted. *Perry*, 136 Wis. 2d at 101.

### E. The court of appeals' decision is in conflict with *Perry*

The court of appeals implicitly recognized Chong's colorable need, noting that a party aggrieved by the loss of a record is not made to bear the burden of the loss. *State of Wisconsin v. Chong L. Lee,* Appeal No. 2018AP1741-CR, ¶ 56, filed on December 17, 2019. However, instead of granting the remedy proscribed by *Perry*, a new trial (136 Wis. 2d at 101), the court of appeals concluded that the proper remedy was for Chong to directly challenge the

24

court's ruling despite being unable to show that a ruling was even made. *State of Wisconsin v. Chong L. Lee,* Appeal No. 2018AP1741-CR, ¶ 56, filed on December 17, 2019. Here, the incomplete record prevented Chong "from demonstrating possible error[,]" and Chong is thus entitled to a new trial. *See Perry*, 136 Wis. 2d at 101. The court of appeals' decision that the incomplete record entitled Chong to directly assert a claim is in conflict with the remedy required by *Perry* and should be overturned by this Court.

Even more concerning, given the court's ruling, Chong filed a motion for reconsideration, asking the court of appeals to remand the case and permit him to make this argument. (App. C). The court of appeals denied the motion. (App. B). Accordingly, Chong is left without any recourse where plainly inadmissible evidence was wrongly presented to, and considered by, the jury.

CONCLUSION

Based on the above reasons, Chong Lee requests that this Court grant his petition for review.

Dated this 22th day of January, 2020

Ana L. Babcock
State Bar. No. 1063719
Attorney for Defendant-Appellant

BABCOCK LAW, LLC
130 E. Walnut Street, St. 602
P.O. Box 22441
Green Bay, WI 54305
(920) 884-6565
ababcock@babcocklaw.org

25

## CERTIFICATION AS TO FORM/LENGTH

I certify that this petition for review conforms to the rules contained in Wis. Stat. §§ 809.19(8)(b) and 809.62(4) for a petition produced using the following font:

Proportional serif font: Minimum printing resolution of 200 dots per inch, 13 point body text, 11 point for quotes and footnotes, leading of minimum 2 points, maximum of 60 characters per full line of body text. The length of this petition is 7,002 words.

Dated this 22th day of January, 2020

Signed:

_____

ANA L. BABCOCK
State Bar No. 1063719
Attorney for Defendant-Appellant-Petitioner

CERTIFICATION OF COMPLIANCE
WITH RULE 809.62(4)(b) and 809.19(12)

I hereby certify that:

I have submitted an electronic copy of this petition, excluding the appendix, if any, which complies with the requirements of §. 809.19(12). I further certify that:

This electronic petition is identical in content and format to the printed form of the brief filed on or after this date.

A copy of this certificate has been served with the paper copies of this petition filed with the court and served on all opposing parties.

Dated this 22th day of January, 2020

Signed:

_____

ANA L. BABCOCK
State Bar No. 1063719
Attorney for Defendant-Appellant-Petitioner

27