1   STATE OF WISCONSIN    CIRCUIT COURT    OUTAGAMIE COUNTY

2   _____

**STATE OF WISCONSIN,**

3

               Plaintiff,

4   v.                    **Case No. 13-CF-1074**

5   **CHONG LENG LEE,**

6           Defendant.    *ORIGINAL*

7   _____

8                  **DECISION**
   _____

CLERK OF CIRCUIT COURT
OUTAGAMIE COUNTY FILED

FEB - 8 2016

AT _____ O'CLOCK

9

10  BEFORE:      **HONORABLE GREGORY B. GILL, JR.**
                Circuit Court Judge, Branch IV
                Outagamie County Justice Center

11             Appleton, WI  54911

12

   DATE:       **February 3, 2016**

13

14  APPEARANCES:  **CARRIE SCHNEIDER**
                District Attorney

15             Appearing telephonically on behalf of the
                 State

16

                **ANDREW MAIER** and **ALEXANDER DUROS**

17             Assistant District Attorneys
                Appearing on behalf of the State

18

                **EVAN WEITZ**

19             Attorney at Law
                Appearing on behalf of the Defendant

20

                **CHONG LENG LEE**

21             Defendant
                Appearing in person

22

23

24  Joan Biese
   Official Reporter, Branch IV
25  Outagamie County

1              **TRANSCRIPT OF PROCEEDINGS**

2                   THE COURT: We are on the record in

3         13CF1074, *State of Wisconsin v. Chong Lee.*

4                   Mr. Lee appears in person, along with his

5         counsel, Attorney Evan Weitz. The State is

6         represented by Outagamie County Assistant District

7         Attorney Andrew Maier, as well as Outagamie County

8         Alex Duros. Oh, I'm sorry. We have, by way of

9         telephone -- thank you, Mr. Maier. We have, by way

10        of telephone, Outagamie County District Attorney

11        Carrie Schneider.

12                  And then we also have a Jackie -- how do I

13        pronounce your last name, Jackie? I'm sorry.

14                  MS. PISCHE: Pische.

15                  THE COURT: Pische?

16                  MS. PISCHE: Yes.

17                  THE COURT: Okay. Very good. Thank you

18        again.

19                  We are here today on essentially two separate

20        motions. The first motion is a motion which was

21        filed by the defense. It was captioned as a motion

22        to dismiss or alternatively to suppress, and in

23        particular, the defenses takes issues with two basic

24        items.

25                  The first issue raised by the defense relates to

2

```
1        the overall dilatory approach taken by the

2        prosecution with respect to discovery.  As the

3        defense argues, throughout the course of the case

4        there has been no less than four motions to compel

5        filed, and this is demonstrative of the delay which

6        is associated with this case.

7            The second issue, although it relates to the

8        first issue relayed by the court, pertains to the

9        Appleton Police Department's destruction of certain

10       interviews that were conducted of three potential

11       witnesses to the case.

12           Now, to address the first issue, and that being

13       that of the timeliness.  Wisconsin Statute Section

14       971.23 mandates that within a reasonable amount of

15       time the prosecution is required to disclose to the

16       defense certain evidence defined by nine separate

17       categories.  Those include exculpatory evidence,

18       criminal record, copies of witnesses recorded or

19       written statements.

20           Now, failure to provide the required information

21       within a reasonable time and manner may constitute a

22       violation of a defendant's constitutional rights and

23       may serve as a basis for dismissal.  By way of

24       example, Wisconsin State Constitution Article 1

25       Section 7.
```

3

1          To determine whether or not a defendant's
2     constitutional rights to a prompt resolution have
3     been violated, United States Supreme Court, as
4     adopted by the Wisconsin Supreme Court, has
5     established a four-part test examining, first of all,
6     the length of delay; second, the reason for the
7     delay; the defendant's assertion of his right; and
8     the prejudice to the defendant. *Day v. State*, 61
9     Wis.2d 236, a 1973 case, and that is citing *Barker v.*
10    *Wingo*, a 1972 United States Supreme Court case, 407
11    U.S. 514.

12          Now, the  -- the essence of the right to a
13    speedy trial is not subject to a bright line
14    determination and must be considered based upon the
15    totality of the circumstances that exist in any
16    specific case. *State v. Borhegyi*, 222 Wis.2d 506, a
17    1998 Court of Appeals case. Now until there is some
18    delay which is presumptively prejudicial, it is
19    unnecessary to inquire into the other *Barker* factors.
20    Again, *Borhegyi* provides a support for that.

21          It is against that backdrop that the court
22    applies the facts of this case. Now, trial in this
23    case was originally set for March of 2014. This was
24    after a complaint had been filed on or around
25    December 16th of 2013, which was only a few days

4

1     subsequent to the incident giving rise to the cause
2     of action.  Notwithstanding the above, the case has
3     been rescheduled multiple times and is now set to
4     commence in late February, some two plus years after
5     the filing of the action.

6          Now, under *Borhegyi*, a 17-month delay is
7     presumptively prejudicial, and accordingly, and like
8     in the case of *Borhegyi,* the court moves on to the
9     remaining elements of the analysis.

10    The second element is the reason advanced for
11    the delay, noting that a deliberate attempt to delay
12    the trial in order to hamper the defense should be
13    weighed heavily against the government.  A more
14    neutral reason, such as negligence or overcrowded
15    courts, should be weighed less heavily but,
16    nonetheless, should be considered since the ultimate
17    responsibility for circumstances must rest with the
18    government rather than the defendant.  The.  *Borhegyi*
19    case again provides us that quote in citing the
20    *Barker* case.

21    Now, in this case the defense would have the
22    court believe that the delay was predicated upon the
23    failure of the State to provide discovery in a prompt
24    fashion.  While the record and numbers of motions to
25    compel would tend to support this argument, like many

5

1    things, first glances often do not tell the full
2    story.

3        When looking at the motions to compel which
4    prompted part of the delay, all appear to have been
5    legitimately filed within a reasonable amount of time
6    of the discovery of the need to make the request.
7    That said, some of the information sought was not
8    necessarily the type of information that the State
9    could have reasonably anticipated.  To that same
10   point, once requested, the information was by and
11   large readily provided, again, assuming that said
12   evidence existed.  While one recognizes that it would
13   be preferable that motions to compel not be filed,
14   their mere existence cannot necessarily lead one to
15   the conclusion that the recipient of the emotion --
16   recipient of the motion has engaged in nefarious
17   conduct.  This case certainly tends to support that
18   observation.  Upon receiving initial discovery
19   requests, it appears that a voluminous response was
20   provided.  To that same end, and as noted, once the
21   information was requested, it was provided promptly.
22   While, and again to reiterate, the preference would
23   be that such motions not be filed, the reality is
24   that the District Attorney in this county as well as
25   many other counties handle many cases each year with

6

```
 1      multiple departments that often are handling multiple
 2      cases.  This fact is not at all surprising -- is not
 3      at all -- the fact that not all are on the same page
 4      is not surprising in terms of the subjects of the
 5      motion to compel.  Similarly, the defense has
 6      multiple cases which may have slowed the ability to
 7      address many issues.  As was often the case here,
 8      many times the parties were working out their own
 9      ways to resolve issues, and this is demonstrative of
10      the clogged calendars of the attorneys.  In addition
11      to the above discovery issues creating the delay, the
12      need to translate in acceptable format has posed an
13      issue.  Also, the issue, as mentioned by this court,
14      of calendaring has played a factor in the delay.  As
15      a practical matter, at a minimum in this case there
16      have been three separate calendars to contend with,
17      the court's, the district attorney's and defense
18      counsel.  If inherent job obligations did not make
19      scheduling difficult enough, defense counsel also
20      serves as an adjunct faculty member at one of the
21      state's two law schools, and at times this has posed
22      an issue.
23          In summation, I conclude that the delays in this
24      case, although unfortunate, have been a byproduct of
25      many different issues, none of which the court
```

1    concludes are frivolous or done with the intent to
2    delay but, rather, are in many respects inherent in
3    complex and serious litigation.

4         This brings the court to the third step in the
5    analysis, the defendant's assertion of his right to a
6    prompt resolution.  In this case Mr. Lee has never
7    made an overt request for a speedy trial.  That said,
8    it is expected and understood that a defendant would
9    prefer to have a case concluded in an efficient and
10   expedient manner as opposed to one fraught with
11   delays.

12        Now, the final step in the analysis is the
13   prejudice to the defendant.  In this instance, while
14   delays certainly affect memories, it is not lost on
15   this court that an event as significant as this is
16   much more likely to remain in one's memory than
17   perhaps a crime involving a simple misdemeanor.  On
18   that same token, much of the time has allowed the
19   parties to fully develop theories, expand discovery,
20   and obtain at least one expert.  More importantly, it
21   does not appear in the record that the delay was done
22   to cause prejudice as opposed to it being a natural
23   byproduct of delay.

24        In summation, while the delays are frustrating,
25   and at least a part are attributable to the conduct

8

1     of the prosecution, I do not find the conduct to rise

2     to the level warranting dismissal of this action.

3     Accordingly, the request to dismiss is denied.

4         With that, the court now turns to the second

5     issue before it, and that is the destruction of

6     evidence, and, in particular, the destruction of

7     three interviews and related materials from

8     individuals who are at the scene of the incident.

9         Now, recently, the Supreme Court in *State v.*

10    *Luedtke* addressed the issue of destruction of

11    exculpatory evidence.  362 Wis.2d 1, 2015.  And

12    again, that is *State v. Luedtke*.  Therein the court

13    determined that in order for a moving party to

14    succeed on a destruction of evidence motion, the

15    party must show, number one, the State failed to

16    preserve evidence that was apparently exculpatory or,

17    two, acted in bad faith by prevailing -- or by

18    failing to preserve evidence that was potentially

19    exculpatory.

20        Now, as noted by the State in its brief,

21    apparently exculpatory evidence is that of the type

22    of evidence that possesses an exculpatory value that

23    was apparent to those who had custody of the evidence

24    before the evidence was destroyed, and, two, the

25    evidence is of such a nature that the defendant is

9

1    unable to obtain comparable evidence by other
2    reasonable available means. *State v. Munford*, 330
3    Wis.2d 575, a 2010 Court of Appeals case.

4        Now, potentially exculpatory evidence conversely
5    is that type of evidence which has the potential to
6    be exculpatory or useful but does not provide the
7    direct link associated with apparently exculpatory
8    evidence.  In this case, the court, after reviewing
9    the briefs of the parties and the summaries provided
10   primarily by the defense, concludes that the
11   statements at issue are of the latter category,
12   namely, that of potentially exculpatory evidence.

13       That being the case, the court turns to the next
14   analysis, namely, was the destruction of evidence
15   done with bad faith.  Now, conduct is considered bad
16   faith if the State was, number one, aware of the
17   potentially exculpatory value or usefulness of the
18   evidence and the State filed to preserve, and, two,
19   acted with official animus or made a conscious effort
20   to suppress exculpatory evidence.  Again, the *Luedtke*
21   case provides us with that authority.

22       In this case the court concludes that there is a
23   sufficient indicia to suggest that bad faith as
24   defined here was present.  First of all we look at
25   the nature of the evidence.  Now, the court concludes

10

1      that the police were aware of the nature of the
2      evidence.  The court reaches this conclusion based
3      upon the following:  Number one, the court (sic) felt
4      it appropriate to initially interview the three
5      individuals as potential witnesses; number two, the
6      recordings of those individuals were maintained for
7      many months before destruction; number three, even
8      after the destruction of evidence, the images and
9      names of the three remained on the white board, a
10     board which the court understands is used to track
11     the investigation.  There, the inclusion on the
12     board, begets the question, if not potentially
13     exculpatory, why remain on the white board.  Once the
14     three were disclosed to opposing counsel, those three
15     individuals were reinterviewed, thus bringing to
16     question why reinterview if not potentially
17     exculpatory.

18         Next, at some point the police made an effort to
19     notify the DA of the destruction of the evidence.
20     With respect to the decision to eliminate the
21     records, the court notes that the *Luedtke* case does
22     not mandate that the suppression be of actual
23     exculpatory evidence.  As such, the court concludes
24     that this element also allows for the consideration
25     of potentially exculpatory evidence.  Here the court

11

```
1     concludes there was suppression.  It appears that the
2     decision to destroy was made with some forethought.
3     Two, while the choice to destroy the records may have
4     been purely motivated, i.e. to protect the witnesses,
5     the result is the intentional suppression of
6     interviews.  Three, based upon this court's review of
7     policies pertaining to the retention of interviews,
8     the destruction, while perhaps not in violation of a
9     direct policy, was certainly an unusual practice and
10    inconsistent with the spirit of interview retention
11    policies maintained by the Appleton Police
12    Department.

13         While the court recognizes it is imputing the
14    conduct of the police to the District Attorney's
15    office, and by all accounts the court finds the
16    District Attorney's office played no role in the
17    decision to delete the evidence, courts have held
18    that it is appropriate to attribute this conduct to
19    the State when there is a strong relationship between
20    the two agencies.  In *Jones v. State* the court,
21    addressing a distinct discovery issue from that in
22    this case, concluded that the prosecuting attorney's
23    obligations under the section extended to material
24    and information in the possession or control of
25    members of his staff and of any others who have
```

12

1    participated in the investigation or evaluation of
2    the case and who either regularly report or, with
3    reference to this particular case, have reported to
4    the office.  Again, *Jones v. State*, 69 Wis.2d 337, a
5    1975 case.  The court sees no reason why the same
6    logic should not exist here where the police was
7    working closely with the District Attorney's office
8    in pursuit of this matter.

9         As such, and in light of the foregoing, the
10   court concludes that action is warranted.  While
11   dismissal is an option, the court finds it
12   unreasonable in light of the facts and circumstances
13   associated with this case.  That said, the
14   alternative remedy of suppression is appropriate.  As
15   such, the court (sic) shall be prohibited from
16   calling Ryan Thao, Mikey Thao and Watou Lee.  That
17   said, should the police or, rather, should the
18   defense inquire into the police conduct of the
19   destruction of the tapes, it may present cause to
20   have the issue revisited.

21        The court should mention that it is not meant to
22   suggest that the court is of the opinion that the
23   police department engaged in intentional destruction
24   of evidence in an effort to usurp the defendant's
25   right to a fair trial.  That said, the court does

13

1       feel that in this instance the police has blurred the

         2       lines between its role of gathering information and

         3       solving crimes and that of the prosecution, which is,

         4       namely, to prove the guilt of an individual.  When

         5       those lines get blurred, particularly in today's age,

         6       it allows conspiracy theorists to run rampant.  This

         7       the court will not have.  While the decision today is

         8       serious, it is appropriate to preserve the integrity

         9       of the process.  Accordingly, that shall be the order

        10       of the court as it relates to the motion to suppress

        11       the three witness statements previously mentioned.

        12            Now, the next issue before the court is the

        13       motion to compel.  There in the motion the court

        14       (sic) sought eight categories of information.  The

        15       court will address each of those in turn.  The first

        16       item, the court (sic) sought information related to

        17       every witness that was talked to by law enforcement

        18       in reference to this case.  The prosecution seems to

        19       largely be willing to agree to this request based

        20       upon the court's review of the motion and so no

        21       further action will be taken.

        22            Similarly, in bullet point two, the defense

        23       seeks information related to every officer who

        24       participated or observed an interview with the

        25       witness.  Again, the process has agreed to turn over

                                        14

```
 1      these records.  That said, what the court is not
 2      expecting is the department to go to every employee
 3      in the department and conduct an individual inquiry
 4      of its employees.
 5           Now, the third request relates to reports,
 6      diagrams of every interview.  The court feels this is
 7      appropriate with the exception of internal
 8      communication between the District Attorney's office
 9      and the State which may be considered work product.
10      If there is a question, the court -- the State may
11      file the materials in camera for review.
12           The fourth request seeks all recordings of
13      interviews and inspection for the same.  The State
14      seems to agree, and to the extent it has not been
15      complied with, the court shall order it.  To the
16      extent a recording was not made, an explanation as to
17      the reason for the same shall be provided.
18           This order thus addresses request five as well.
19           Bullet point six or request six requests all
20      e-mails, internal memos and correspondences between
21      members of law enforcement that discussed the
22      investigation of this case.  The court does feel that
23      that is appropriate for the same reasons previously
24      identified.
25           Bullet point seven is where the court diverges
```

15

```
 1          on the appropriateness of the request.  Bullet point
 2          seven asks for internal communication between that of
 3          members of law enforcement and the District
 4          Attorney's office.  The court concludes that this is
 5          requesting information encompassed by the work
 6          product doctrine and, thus, is generally excludable
 7          from discovery evidence.  In absence of some evidence
 8          showing that there was a nefarious relationship
 9          between the two agencies, the court is not inclined
10          to order what would be tantamount to a fishing
11          expedition.
12               Bullet point number eight asks for the
13          information particularly identifying or related to
14          Jack Thao, Peter Moua, Dia Vang, Keng Joseph Vang,
15          and Phonesay Saengphachanh, and I'm going to spell
16          the last name, S-A-E-N-G-P-H-A-C-H-A-N-H.  The court
17          is going to grant that request for those --
18          information associated with those individuals.
19               Any other questions, Attorney Maier?
20                         ATTORNEY MAIER:  No.
21                         THE COURT:  Attorney Weitz, any other
22          questions, sir?
23                         ATTORNEY WEITZ:  Your Honor, just in
24          regards to the motion to compel discovery, I know we
25          do have a pretrial coming up next week Tuesday.  I
```

1    guess I would ask that the State be required to
2    provide that information, being that we are so close
3    to trial, by that Tuesday date.

4              THE COURT:  Attorney Schneider, to the
5    extent you're able to hear, I'll ask for your input
6    or --

7              ATTORNEY SCHNEIDER:  I couldn't hear
8    anything but judge, and then I didn't hear anything
9    else Attorney Weitz said.

10             THE COURT:  The -- with respect to the
11   motion to compel, Attorney Weitz's request was that
12   the motion to compel be complied with by next
13   Tuesday, which is the pretrial conference.  Is there
14   any reason why that cannot be accomplished?

15             ATTORNEY SCHNEIDER:  Well, one of the
16   things the court ordered was us to release all
17   e-mails between investigators on the case?

18             THE COURT:  Yes.

19             ATTORNEY SCHNEIDER:  I have to -- I have to
20   ask them how quickly they can or can't do that.  I
21   don't know, because I don't believe that the subject
22   line will always be "Chong Lee" where it's going to
23   be easy way for us to search that.  I am not familiar
24   with the Appleton Police Department e-mail system and
25   its search capabilities.  If we run into issues on

17

1    that, I will let the court know.

2                 THE COURT:  Thank you.

3                 ATTORNEY SCHNEIDER:  But as to Items 1, 2,

4    3, 4 and 5, we provided anything and everything we've

5    been able to locate, and I think we mentioned that

6    when we were back in chambers, so I don't -- I'm not

7    going to provide them with another set of the police

8    reports, another set of the recordings, another set

9    of the items they've already been provided.

10                On item six, we'll  -- I'll see if there is

11   anything else.  We'll look into that e-mail system.

12   And then on item eight I think a lot of their

13   requests were for people that the police department

14   didn't speak to, so there's not going to be anything

15   to provide, but I need to talk with law enforcement

16   about that.  I think we provided them with photos of

17   some of those people, but they weren't further spoken

18   to, so I'll just double-check that, but I don't think

19   we have any issues complying by next Tuesday.

20                My only concern right now is that e-mail

21   request, not knowing the Appleton system or what

22   ability the sergeant or the head of detectives for

23   Appleton Police Department has over the next 48 hours

24   to 72 hours to work with me on that.  So I'll find

25   that out tomorrow and let the court know by noon if

18

1          there is going to be any issues.

2                    THE COURT:  Sure.  And I appreciate you

3          mentioning the fact that many of those requests have

4          been complied with.  I was aware of that, and so, to

5          be clear, I'm expecting only new information to be

6          provided that has not been complied with already.  To

7          the extent that there already has been compliance,

8          I'm not expecting a duplication of documents or

9          orders or things of that nature, just to be clear.

10         If there are additional documents which may fall

11         under paragraphs, or requests one through six, I

12         would of course expect a supplement, but to the

13         extent that they've already been complied with, I'm

14         not expecting duplication.

15                   ATTORNEY SCHNEIDER:  Okay.  So I'll provide

16         notice by noon tomorrow if we're going to run into

17         any issues, and if there are any of those that we end

18         up getting, because I don't know what we're going to

19         find, and I feel I want the court to do an in camera

20         review of, I'll supply those as soon as I get them.

21                   THE COURT:  Very good.  Attorney Weitz, you

22         had a question?

23                   ATTORNEY WEITZ:  Yes, Your Honor.  Just in

24         regards to the duplication.  Certainly we don't want

25         the State to have to provide us stuff that's already

19

```
1    been turned over, but I guess as it relates to
2    paragraphs one and two, which paragraph one
3    specifically asks for a listing of the witnesses,
4    which certainly witnesses have been provided
5    piecemeal through police reports and stuff like that,
6    but I don't know that there has before ever been a
7    list of witnesses.
8        And then, furthermore, paragraph two says that,
9    for those witnesses to specifically name the officer,
10   detective or whoever was responsible for those
11   interviews and when those occurred.  So I think those
12   would be new items, the way I understand it.
13           THE COURT:  Attorney Schneider, go ahead.
14           ATTORNEY SCHNEIDER:  Any witness  -- the
15   way Appleton Police Department are written, any
16   witness that they speak to, the officer identifies,
17   usually on the first page, the person's full name,
18   middle initial, date of birth, address info and phone
19   number that they have at the time.  They are -- then,
20   within that individual officer's report, he will list
21   the contents of his conversation with that party.  I
22   do not believe that there have been times where
23   addresses have not been provided for witnesses that
24   they spoke with or that they spoke to.  The
25   individual officer's reports would identify who he
```

20

```
 1          was speaking to as well as if there was another
 2          officer with him.  I almost feel like what they're
 3          further requesting in one and two is for me to either
 4          cut apart the police reports and give them just those
 5          pages that had the person's name with the address
 6          info and the officer's name, or creating an index of
 7          the reports for them, which they could do
 8          themselves.

 9                    THE COURT:  No.  What I'd be expecting --
10          maybe to clarify, what I'd be expecting is, by way of
11          example, if there's not individuals you've identified
12          as witnesses or potential witnesses, that that be
13          provided.  To the extent that they've already been
14          provided through various reports or identification,
15          I'm not expecting duplication.

16                    As it relates to the officers who participated
17          in the interviews, if that's contained within the
18          reports of individuals already provided, that's fine.
19          If, however, there would be other officers that may
20          not be listed or there may have been interviews for
21          which reports have not been generated, then I would
22          expect an updated level of correspondence to comply
23          with that request.

24                    Does that make sense, Attorney Schneider?
25                    ATTORNEY SCHNEIDER:  It does.
```

21

1          THE COURT: Okay. Anything else, Attorney
2     Weitz?

3          ATTORNEY WEITZ: Just one other thing, Your
4     Honor. Then for -- I guess it most specifically
5     relates to paragraph eight, but I believe one of the
6     things that the court did grant and order was -- I'm
7     not seeing immediately which paragraph it is, but the
8     request, if a recording does not exist, an
9     explanation as to why that recording does not exist,
10    so that would be a new item that would be dealt with
11    then separately, if I understand the court's order
12    correct.

13         THE COURT: Yes. Attorney Schneider,
14    anything further?

15         ATTORNEY SCHNEIDER: No. I didn't
16    necessarily hear everything that was said, but I'll
17    -- I can get from Attorney Maier what was said at
18    that point. I just think if a recording doesn't
19    exist for one of the people, an explanation why one
20    doesn't?

21         THE COURT: Yes, that's correct.
22         ATTORNEY SCHNEIDER: Okay.

23         THE COURT: And again, I'm not expecting a
24    novel, I mean I'm expecting a short explanation on
25    each of those items.

22

```
 1                    ATTORNEY SCHNEIDER:  Understood.

 2              THE COURT:  Okay.  And then it would be --

 3    I suppose, just hopefully I made it clear, I don't

 4    know if the defense was anticipating calling the

 5    three witnesses that I've identified as being

 6    suppressed.  Understand that if they get called, that

 7    may potentially open the door for further questioning

 8    of those witnesses.  I think I did hopefully make

 9    that clear that, you know, if officers are inquired

10    about the destruction of the evidence or

11    alternatively those witnesses get called, that may

12    reopen the door potentially.

13              ATTORNEY WEITZ:  And I guess, my only

14    thought is, certainly I think that the defense should

15    be allowed to ask the officers questions about the

16    missing recordings.  Would that by itself -- is that

17    what the court is saying?

18              THE COURT:  Well, here's the problem,

19    because, by way of example, if the argument is going

20    to be Appleton police destroyed these evidence --

21    this evidence, which the inference is going to be we

22    want the jury to believe they did something improper,

23    then that will open the door to allow the police

24    department to say -- and I only mention this because

25    I think Sergeant Rabas has testified to this already,
```

23

```
 1          the reason I did this is because these witnesses were
 2          afraid and they didn't want that information
 3          released.  So even though it may have -- even though
 4          -- and I've already given my decision, even though I
 5          conclude that that was not appropriate given
 6          precedent, they may be allowed to explain the reason
 7          for doing so, and dependent upon what is asked or
 8          what happens, that may potentially open the door to
 9          question Mikey or Watou, and I know there is one
10          other person I'm missing.  So it's -- it's hard for
11          me to anticipate what will open that door, but just
12          understand that potential questioning of the officers
13          may allow them to explain why they did what they did,
14          and if then to rebut that you decide to call those
15          witnesses, that may reopen the whole issue.  I just
16          want you to understand that - I don't mean this in a
17          lighthearted way - there is no free lunch.  I mean,
18          everything is a give and take.
19                  ATTORNEY WEITZ:  And that certainly makes a
20          lot more sense now the way that you've explained it.
21          I was under the initial impression that it would just
22          open the door automatically to every single statement
23          from those witnesses coming in, but I certainly see
24          that if there is questions about the destruction that
25          they should be afforded the opportunity to explain
```

24

1    the reasons for it but not bring in then all the
2    underlying statements made by those witnesses, if I
3    understand the court correctly.

4             THE COURT: That's correct. But if, by way
5    of example, those three witnesses get called in to
6    explain or to rebut, then that may open the door
7    because now you have those witnesses on the stand.

8             ATTORNEY WEITZ: Very good.

9             THE COURT: Anything else, Attorney
10   Schneider?

11            ATTORNEY SCHNEIDER: Would the court be of
12   the same thought -- this is just one other thing I'm
13   thinking of -- is if defense, I'm going to say, opens
14   the door, makes argument or statements that there
15   were these other people in the front area that law
16   enforcement didn't talk to, and they -- they attacked
17   the police in that way, shape or form, then I would
18   be at least allowed to have the court reconsider or
19   make the argument they've opened the door and we can
20   then talk about the statements from those three
21   parties?

22            THE COURT: I think you could at least --
23   and what we would do is similar as what we've
24   discussed, request a side bar and we could
25   potentially -- so I would at least entertain it.  And

25

```
1        again, it's too speculative for me to give a

2        definitive answer one way or the other, but I'm

3        always willing to listen to the arguments as

4        proffered.  But at this point in time, like I said,

5        the State would not be able to, in its case in chief,

6        call in those three witnesses, but that could be

7        revisited depending upon how the case proceeds and

8        what questions get asked.

9                ATTORNEY SCHNEIDER:  Understood.  And then

10       I'm assuming the court would also not want their

11       defense expert to reference to destruction of tapes,

12       et cetera, or they run the risk if they do.

13               THE COURT:  That's right.  They run the

14       risk of potentially opening that door.  That's

15       absolutely correct.

16               ATTORNEY SCHNEIDER:  Okay.  Nothing further

17       that I can think of at this point.

18               THE COURT:  Attorney Weitz, anything

19       further?

20               ATTORNEY WEITZ:  Just one other brief

21       thing.  I did give Attorney Maier a heads up on this.

22       One additional thing that I guess we would be

23       requesting of the State, and I don't know Attorney

24       Schneider's position on this, I know the State filed

25       their witness list back on January 22nd, and I
```

26

```
 1        assume, just in the interest of not disclosing the

 2        full addresses of all these witnesses to the public,

 3        just listed city and state.  I would ask if the State

 4        could either provide the defense or file under seal

 5        or some way of giving us updated addresses so the

 6        defense has those addresses for these witnesses.  I

 7        know that it's been roughly two years since some of

 8        these witnesses have been talked to, so perhaps

 9        things have changed since the police reports were

10        written, so I guess I would ask that of the court.

11             And I don't know if you have a position either

12        way, Attorney Schneider.

13             THE COURT:  If we do it under seal, are you

14        okay with that, Attorney Schneider?

15             ATTORNEY SCHNEIDER:  Yeah.  Or what I can

16        actually do is I can provide it directly to defense,

17        then it never becomes part of the public file.

18             ATTORNEY WEITZ:  That would certainly work

19        as well.

20             THE COURT:  Provided you're willing to do

21        that, that would be fine.

22             ATTORNEY SCHNEIDER:  Okay.

23             THE COURT:  All right.  Very good.  Then I

24        will see everyone next Tuesday.  We will be

25        adjourned.
```

```
1                    ATTORNEY WEITZ:  Thank you.
2                    (Proceedings concluded.)
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1

 2

 3                    C E R T I F I C A T E

 4

 5   STATE OF WISCONSIN    )
                           ) ss.:
 6   COUNTY OF OUTAGAMIE   )

 7

 8

 9           I, JOAN BIESE, RMR/CRR, do hereby certify that I
     am the official court reporter for Branch IV of the
10   Circuit Court of Outagamie County;

11           That as such court reporter, I made full and
     correct stenographic notes of the foregoing proceedings;
12
             That the same was later reduced to typewritten
13   form;

14           And that the foregoing proceedings is a full and
     correct transcript of my stenographic notes so taken.
15

16           Dated this 8th day of February, 2016.

17

18

19           _____

20           JOAN BIESE, RMR/CRR

21

22

23

24

25
```

29