FILED
09-06-2018
Clerk of Circuit Court
Outagamie County
2013CF001074

1    STATE OF WISCONSIN    CIRCUIT COURT    OUTAGAMIE COUNTY
_____

2

**STATE OF WISCONSIN,**

3

        Plaintiff,

4    v.    **Case No. 13-CF-1074**

5    **CHONG LENG LEE,**

6            Defendant.
_____

7

                     **DECISION**

8    _____

9

BEFORE:    **HONORABLE GREGORY B. GILL, JR.**
10                 Circuit Court Judge, Branch IV
             Outagamie County Justice Center
11                 Appleton, WI  54911

12

DATE:    **August 27, 2018**
13

14    APPEARANCES:    **MELINDA TEMPELIS**
             District Attorney
15                 Appearing on behalf of the State

16                 **ANA BABCOCK**
             Attorney at Law
17                 Appearing on behalf of the Defendant

18                 **CHONG LENG LEE**
             Defendant
19                 Appearing in person

20

21

22

23

24    Joan Biese
    Official Reporter, Branch IV
25    Outagamie County --

Exhibit 30

1                    **TRANSCRIPT OF PROCEEDINGS**

2                    THE COURT:  Do we have Attorney Babcock by

3         way of telephone?

4                    ATTORNEY BABCOCK:  Yes, Judge, I'm here.

5                    THE COURT:  All right.  Very good.  So we

6         are on the record in 13CF1074, *State of Wisconsin v.*

7         *Chong Lee.*

8               And we have, appearing by way of video,

9         Mr. Chong Lee.  Mr. Lee, can you hear all right?  Can

10        you hear me, sir?

11                   THE DEFENDANT:  Yeah, I can.

12                   THE COURT:  Okay.  Very good.  And you can

13        see me all right?

14                   THE DEFENDANT:  Yes, I can.

15                   THE COURT:  All right.  Now, I may be

16        looking off to the sides and things, and that's

17        because when I see our video presentation, I'm

18        looking at my monitor.  So I'm not trying to be

19        disrespectful or not pay attention to looking at you.

20        In fact, I am looking at you, it's just strange

21        because of the way my monitors are set up.  Okay?

22                   THE DEFENDANT:  Okay.

23                   THE COURT:  All right.  Now, I also have

24        with us representing the State of Wisconsin Outagamie

25        County District Attorney Melinda Tempelis.

1          And, Miss Tempelis, before we begin, has the

2     victim rights statute been complied with?

3               ATTORNEY TEMPELIS:  Yes.

4               THE COURT:  All right.  I do want to,

5     before we begin, express my appreciation for everyone

6     being able to reschedule.  I apologize.  It was not

7     anticipated that I'd be unavailable this morning, so

8     I -- I appreciate the indulgence on that.  And I

9     appreciate, likewise, the ability to get this

10     scheduled for this -- this afternoon.

11          Now, with that, before the court is Mr. Lee's

12     motion for post-conviction relief.  In support of the

13     motion, defense makes primarily two arguments: No. 1,

14     that Mr. Lee received ineffective assistance of

15     counsel, and that, two, Mr. Lee has been denied the

16     right to a meaningful appeal due to an absence of

17     transcripts.

18          Now, before addressing each motion on the

19     merits, it is useful to look at this case from a

20     historical basis.  The instant matter was filed on or

21     around December 16th of 2013.  At the time, there

22     were two separate causes of action that had been

23     alleged, namely, first-degree intentional homicide

24     with the use of a dangerous weapon and possession of

25     a firearm by a felon.  Approximately three months

3

1    later, the information was filed.  The information

2    contained the original charges as well as four counts

3    of felony intimidation of a witness as a party to the

4    crime and a single count of solicitation of perjury

5    before a judge.

6        The trial was ultimately held in February and

7    March of 2016 and lasted eleven days.  The trial

8    included testimony from 40 plus individuals, and

9    ultimately, the jury convicted Mr. Lee of

10   first-degree intentional homicide with the use of a

11   dangerous weapon and felon in possession of a

12   firearm, as well as two counts of felony intimidation

13   of a witness as a party to the crime.

14       It is also significant to note that prior to the

15   trial there was extensive motion practice.  Over the

16   duration of the action, there appeared to have been

17   no fewer than 13 motions related to evidentiary

18   issues filed by the defense, the final motion to

19   suppress being filed during the trial itself.

20       It is against this backdrop that the court now

21   examines the motion before it.

22       First of all is the motion related to the

23   ineffective assistance of counsel.

24       Now, to establish ineffective assistance of

25   counsel, a defendant must establish both that his or

4

1      her trial counsel's performance was deficient and

2      that the deficient performance prejudiced the

3      defendant.  *Strickland v. Washington*, 466 US 668, a

4      1984 case.  Now, pursuant to *Strickland*, the

5      defendant bears the burden of affirmatively proving

6      prejudice.  *State v. Roberson*, 292 Wis.2d 280.

7      That's a 2006 case.  In considering whether or not

8      the defendant has met this burden, the court should

9      consider the totality of the evidence before the

10     trier of fact.  *State v.  Johnson*, 153 Wis.2d 121,

11     1990.  To show deficient performance, the defendant

12     must show that his counsel's representation fell

13     below an objective standard of reasonableness

14     considering all of the circumstances.  *State v.*

15     *Jenkins*, 355 Wis.2d 180, a 2014 case.  A court

16     reviewing counsel's performance must be highly

17     deferential, and trial counsel enjoys a strong

18     presumption that his or her conduct falls within the

19     wide range of reasonable professional assistance.

20     *Strickland*, 466 US at 689.  Now, a court must make

21     every effort to reconstruct the circumstances of

22     counsel's challenged conduct, to evaluate the conduct

23     from counsel's perspective at the time, and to

24     eliminate the distorting effects of hindsight.

25     *Jenkins*, 355 Wis.2d, 180.  Now, counsel's performance

5

1    need not be perfect, nor even good, to be

2    constitutionally adequate.  That comes from the

3    *Carter* case, 324 Wis.2d 640, citing *State v. Thiel*,

4    264 Wis.2d 571, a 2003 case.  Thus, the defendant

5    must overcome the presumption that the alleged

6    deficient conduct might be considered sound trial

7    strategy.  Again, the *Strickland* case provides

8    support for that.

9         Here, appellate counsel argues that trial

10    counsel was ineffective for failing to object to

11    witness Brittany Olson's statement, your boyfriend

12    shot my boyfriend.  To be clear, and as noted by

13    appellate counsel, defense counsel did object to the

14    statement on grounds of hearsay.  The objection was

15    overruled, and thereafter, defense counsel made a

16    strategic decision to not renew the objection on

17    hearsay grounds when subsequent opportunities to do

18    so occurred.  Regardless, appellate counsel asserts

19    that additional objections based upon the statement

20    being irrelevant and unduly prejudicial should have

21    been made.

22         To counsel's first argument that the statement

23    should have been objected to and sustained based upon

24    relevancy, we look at relevant evidence.  Relevant

25    evidence means any evidence having any tendency to

1    make the existence of any fact that is of consequence

2    to the determination of the action more probable or

3    less probable than it would be without the evidence.

4    Wisconsin Statutes 904.01.  Here, appellate counsel

5    argues that the admitted statement was not relevant

6    as Miss Olson clearly did not see who shot the

7    victim, suggesting that the statement, if made, was

8    false.  Now, counsel makes no reference to the record

9    to support this contention, and unfortunately for

10    counsel, the record is not as unequivocal as the

11    court would be led to believe.

12        The transcript exchange reads as follows:

13        Question:  When the people or the group

14    approached you, I think is what you said, do you

15    remember anything that occurred then?

16        Answer:  There was an altercation with the guys

17    were pushing him, and I remember trying to get in

18    between to break them up, and the next thing I

19    remember was that he was laying on the ground.

20        Question:  Do you remember any -- hearing

21    anything prior to that?

22        Answer:  Just arguing, but I don't know what it

23    was about.

24        Question:  Do you remember seeing these people

25    at all earlier in the night?

7

```
 1          Answer:  I don't remember.
 2          Question:  When you saw Josh on the ground, how
 3     did you feel?
 4          Answer:  I can't even describe it.
 5          Question:  Shocked?
 6          Answer:  Shocked.  Yeah.  Scared.  Angry.
 7          Question:  Do you remember what you did then?
 8          Answer:  I started yelling for people to call
 9     911.
10          Question:  Do you remember, Miss Olson, the
11     people that had been around Josh, what if anything
12     they did after he was then on the ground?
13          Answer:  After he was on the ground, then the
14     people started leaving, and I remember that I ran
15     after -- outside I ran after the girl that was with
16     them.
17          Question:  Do you remember why you ran after
18     her?
19          Answer:  Because she was with them who did this.
20     And I don't know what I was thinking.
21          Question:  At that point were you still shocked
22     and angry?
23          Answer:  Yes.
24          Question:  Do you remember what if anything you
25     did then?
```

8

1           Answer:  I remember running after her and taking

2      her on the sidewalk and yelling at her saying that I

3      know she knows who they are and that -- where they

4      went and trying to find out where they are.

5           That comes from the trial transcript, Day Two,

6      Pages 132 to 134.

7           Now, upon cross-examination the following

8      exchange took place.

9           As far as that night, you have some memory

10     lapses from just the fact that you had been drinking

11     all night.

12          Answer:  That and probably shock.

13          That comes from the trial transcript, Day Two,

14     Page 137.

15          Now, having reviewed the transcript and the

16     definition of relevancy, the court agrees with the

17     State that the statement is one of credibility, not

18     relevancy.

19          That said, appellate counsel also asserts that

20     counsel was deficient for failing to offer that the

21     proffered material was unduly prejudicial.  Again,

22     the contention cannot be sustained.  Unfair prejudice

23     can result when the proffered evidence appeals to the

24     jury's sympathies, arouses its sense of horror,

25     provokes its instinct to punish, or otherwise causes

9

1     a jury to base its decision on something other than

2     the established propositions in the case.  *State v.*

3     *Hurley*, 361 Wis.2d 529.  That's a 2015 case.

4          Here, we are dealing with a homicide trial.  The

5     subject of death was known from the outset of the

6     trial.  To that same degree, it was known that

7     Mr. Lee was the accused.  The statements attributable

8     to Miss Olson were not overly highlighted and came in

9     and amongst testimony, as noted by appellate counsel,

10    describing Mr. Lee's confessions.  A review of the

11    record would hardly suggest that a statement made by

12    a woman under duress and while intoxicated, as noted

13    by defense counsel, was so prejudicial to reach the

14    threshold of being unduly prejudicial.

15         It should also be noted that part of what makes

16    the analysis more difficult in this instance is that

17    appellate counsel did not inquire of either defense

18    counsel why they did not object on grounds of

19    relevancy or undue prejudice.  Now, this is

20    particularly true where, as previously noted, a court

21    reviewing counsel's performance must be highly

22    deferential, and trial counsel enjoys a strong

23    presumption that his or her conduct falls within the

24    range of reasonable professional assistance.  The

25    *Strickland* case.  A court must make every reasonable

10

1    effort to reconstruct the circumstances of counsel's

2    challenged conduct, to evaluate the conduct from

3    counsel's perspective at the time, and to eliminate

4    the distorting effects of hindsight.  *Jenkins* case,

5    355 Wis.2d 180.  That is citing *State v. Carter*, 324

6    Wis.2d 640, a 2010 case, noting that counsel's

7    performance need not be perfect, or even good, to be

8    constitutionally adequate.

9         Now, from the motion practice and the trial

10   itself, the court may not have been aware that

11   Attorney Vishny was the most experienced lawyer in

12   the state in terms of homicide cases within the State

13   Public Defender's office.  That came out during the

14   post-conviction motion on day one at Page 11.  It was

15   evident that highly -- that Attorney Vishny was

16   highly competent.  To that same end, Attorney Weitz

17   showed a strong grasp of legal concepts and

18   evidentiary principles.

19        In light of the credentials proffered, the facts

20   surrounding the statements, and the failure of

21   defendant to show that defense counsel's strategy was

22   unsound, the court finds that the defense has not met

23   its initial burden.  However, even if the court had

24   concluded otherwise and found the conduct of

25   Attorneys Vishny and Weitz to be deficient, it still

11

1    would not warrant the requested relief, for, if a

2    finding of deficiency is made, defense must still

3    show that the deficient performance prejudiced the

4    defendant, which requires a showing that counsel's

5    performance was so serious as to deprive the

6    defendant of a fair trial, a trial whose result is

7    reliable.  *Strickland* at 687.  The defendant must

8    show that there is a reasonable probability the

9    result would be different absent counsel's deficient

10   performance.  Again, the *Strickland* case.

11        A reasonable probability is a probability which

12   undermines confidence in the outcome.  *Strickland*

13   case.  A defendant fails to establish prejudice if it

14   appears beyond a reasonable doubt that the error

15   complained of did not contribute to the verdict

16   obtained.  That comes from the *Jenkins* case, 355

17   Wis.2d 180.

18        Now, while courts should consider the cumulative

19   effect of the alleged deficiencies, a defendant

20   cannot merely present a laundry list of mistakes by

21   counsel and expect to be awarded a new trial.  *State*

22   *v. Thiel*, 264 Wis.2d 571.  That's a 2003 case.  In

23   most cases errors, even unreasonable errors, will not

24   have a cumulative impact sufficient to undermine

25   confidence in the outcome of the trial, especially if

12

1    the evidence against the defendant remains

2    compelling.  Each error alleged must in itself fall

3    below an objective standard of reasonableness to be

4    included in the cumulative error prejudice calculus.

5         Now, here, the totality of the evidence supports

6    Lee's conviction.  Even if Olson's testimony had not

7    been considered, the evidence against Lee remains

8    compelling.

9         Number one:  Witness Via Thao testified that

10    after the shooting, Chong Lee admitted to him that

11    there was a fight in Appleton and he pulled out a gun

12    and shot a guy.  Trial Date 3 at Page 34.

13         Witness Peter Moua testified that after the

14    shooting, Chong Lee asked him if he heard about the

15    Luna shooting, admitted there was a fight, and then

16    said, I got him.  Trial Day 3 at Page 60.

17         Witness Kong Vang testified that after the

18    shooting, Chong Lee admitted to him that he shot

19    somebody to protect his brother.  Trial Day 3 at 71.

20         Witness Phong Lee testified that while at Luna,

21    Paul Lee, Chong's brother, was fighting with a bigger

22    guy.  Trial Day 3 at 134.

23         Witness Phong Lee, after being impeached,

24    admitted that he told the police that Chong Lee

25    stated to him that he popped a guy.  Trial Day 3 at

13

1    176.

2         Witness Paul Lee, after being impeached, was

3    confronted with the fact that he told law enforcement

4    officers that after the shooting, Chong stated that

5    he, quotes, fucked up, end quotes, shot the guy.

6    Trial Day 4 at 173.

7         Paur also -- Paul also was impeached with the

8    fact that he told officers that he did not know Chong

9    had a gun and that he was upset about what Chong had

10    done.  Trial Day 4 at 182.

11         Paul is further impeached with the fact that he

12    had told Chong had ditched the gun -- Paul was

13    further impeached with the fact that he told officers

14    that Chong ditched the gun after the shooting.  Trial

15    Day 4 at 186.

16         Paul was present -- presented with a letter he

17    wrote which stated in parts, quotes, when it got -

18    State of Wisconsin v. Chong Lee, 6/18/2018

19    10 -physical, Chong came from Josh's left side and

20    point blanked Josh.  I'm sorry, the -- take that

21    out.  I was reading the caption as well.  When it got

22    physical, Chong came from Josh's left side and point

23    blanked Josh.  That was Trial Day 4 at 192.

24         Witness Melanie Thao, after being impeached, was

25    confronted with the fact that she told law

1    enforcement officers that Chong admitted to being the

2    shooter when she was eating diner with him at (sic)

3    the shooting.  Trial Day 5 at 140.

4        Melanie was also confronted with the fact that

5    Chong told her that it appeared that the victim was

6    going to fight his brother, Paul, so Chong did what

7    he did.  Trial Day 5 at 141.

8        Witness Stephanie Thao testified that while

9    eating dinner with Chong after the shooting, Chong

10    said he was the one who did it.  Trial Day 5 at 197.

11    Stephanie Thao elaborated, indicating, I just

12    remember a little bit that he said that the other guy

13    was going to swing at his brother, and that's when he

14    got mad, and that's all I could remember.  Trial Day

15    5 at 197.

16        Stephanie Thao also testified, again, that Chong

17    admitted to shooting the victim in the head.  Trial

18    Day 5 at 198.

19        Witness Joe Thor testified that after the

20    shooting, Chong admitted to him that he did the

21    shooting at Luna Lounge.  Trial Day 7 at 25.

22        Now, also, as it relates to the beat the case

23    issue, or turning to the beat the case issue, the

24    court notes in an October 2015 order that the court

25    fails to see how the statements made to individuals

15

1    other than the victims on the intimidation charge, or

2    with the instructions related to the victims, are

3    relevant.  Similarly, the statements in and of

4    themselves appear to be subject to various meanings.

5    Given the context, it is equally possible or

6    plausible that the comments are innocent or

7    nefarious.  For this reason too, the comments are

8    excludable.  The court also noted that although

9    relevant evidence may be excluded if it's probative

10   value is substantially outweighed by danger of unfair

11   prejudice, confusion, or misleading the jury, or by

12   considerations of undue delay, wasting of time or

13   needless presentation of cumulative evidence.  Wis.

14   Stats 904.03.  This case standing alone is complex

15   with many moving parts and witnesses, and it is the

16   opinion of the court that these statements, if

17   allowed, would only add to confusion to the matters

18   at hand.  That was the order.

19        Now, despite the ruling, at trial the jury was

20   permitted to review a correspondence which contained

21   the exact phrase for which there had been concern.

22   Regretfully, the basis for allowing the statement,

23   either by consent or by a subsequent decision, is

24   uncertain and, as such, the court will assume for

25   present purposes that the conduct of counsel was

16

1    deficient.

2           Now, assuming that the first prong has been met,

3    the claim must still fail on the second prong.

4    First, as noted in the court's earlier decision, or

5    earlier portion of the decision, the statements at

6    issue were intended for consideration on charges that

7    resulted in acquittals for Mr. Lee.  Second, the

8    court would note that the statement was read into the

9    record once and was sent back to the jury as part of

10   a requested exhibit.  Now, while appellate counsel

11   attempts to speculate that the statement made played

12   a role in the decision of the jury, the court

13   disagrees.  The court fails to see, again assuming

14   deficient performance, how Mr. Lee was prejudiced on

15   charges that the defendant was convicted upon,

16   particularly given the evidence against Mr. Lee as

17   noted previously in today's decision.  Furthermore,

18   the court would note that the statement was -- the

19   statement that was referenced was referenced only a

20   de minimis amount of time in trial, and that was a

21   trial that consisted of 40 plus witnesses over the

22   course of eleven days.  I would again highlight the

23   *Strickland* case which indicates that if a finding of

24   deficiency is made, the defendant must still show the

25   deficient performance prejudiced the defense, which

1    requires a showing that counsel's performance was so
2    serious as to deprive the defendant of a fair trial,
3    a trial whose result is reliable.

4         Thus, based upon the court's reasoning, the
5    court concludes that this claim related to beat the
6    case must fail.

7         Turning to the second substantive category, and
8    that is the absence of transcripts, the court notes
9    that it is argued that because certain discussions
10   took place between the court and parties off the
11   record, a retrial is warranted.  In support of this
12   proposition, appellate counsel cites to the case of
13   *State v. Perry*, 136 Wis.2d 92, a 1987 case, and also
14   points to Supreme Court Rule 71.01.  Now, with
15   respect to the latter, the court finds this somewhat
16   to be a red herring as the contents of the
17   in-chambers meeting are unknown such as to determine
18   whether or not 71.01 is implicated.  More
19   importantly, however, to the extent that 71.01 would
20   be implicated, 71.01 does not stand for the
21   proposition that meetings that do not conform to the
22   Supreme Court rule result in an automatic entitlement
23   to a retrial.

24        Now, regardless, what is known is that certain
25   discussions lack transcripts, and therefore, *State v.*

18

1        *DeLeon*, 127 Wis.2d 74, a 1985 case, as revisited in

2        *State v. Perry*, 136 Wis.2d 92, a 1987 case, governs

3        the court's analysis on this issue.

4            Now, in *Perry* the court, or the Supreme Court,

5        found that retrial was warranted based upon extensive

6        missing transcripts.  In particular, partial

7        testimony from five witnesses were missing, as well

8        as the entire testimony from two others, only

9        fragmentary portions of the argument on motions,

10       discussion on stipulations, the in-chambers

11       conference on exhibits, an offer of proof from a

12       defense witness, the prosecutor's closing argument

13       and the instructions to the jury.  In addition, the

14       notes yielded several unidentified and random

15       portions of the proceeding that could not be pieced

16       together.  That's all found in the *State v. Perry*

17       case.

18           Now, notwithstanding the fact that a retrial was

19       appropriate in *Perry*, *Perry* notes that not all

20       deficiencies in the record nor all inaccuracies

21       require a new trial.  An inconsequential omission or

22       a slight inaccuracy in the record which would not

23       materially affect appellate counsel's preparation of

24       the appeal or which would not contribute to an

25       appellate court's improper determination of an appeal

19

1    do not rise to such magnitude as to require ipso

2    facto reversal.  Error in transcript preparation or

3    production, like error in trial procedures, is

4    subject to the harmless error rule.  And again, *State*

5    *v. Perry*.

6          To determine if a retrial is necessary, there is

7    a multipart examination that must take place.  The

8    first step is to show a colorable need for the

9    missing transcript, noting that a defendant does not

10   need to demonstrate or assume the burden of showing

11   that the alleged -- error alleged is prejudicial.

12   Yet, however, it must be clear that the error cannot

13   be of such a trivial nature that it is clearly

14   harmless.  The error must be of potential substance

15   and, depending upon the state of the record that can

16   be produced, arguably prejudicial.  These

17   considerations should be articulated by the court in

18   the individual case.  The claims should be more than

19   frivolous, and a lacunae of the records should be of

20   such substance as to lend credence to the claim that

21   error was prejudicial had the missing segment been

22   produced.  *State v. Perry*.

23         Now, in support of the argument that there is a

24   colorable claim, the defendant points to the

25   statement of beat this case.  With respect to this

1          issue, the court concedes, as it must, that there is

2          no transcript available of in-chambers discussions

3          where there may or may not have been conversations

4          which led to the admission of materials previously

5          determined to be inadmissible.  What is known,

6          however, is that such statements were presented to

7          the jury.  In fact, the exact nature of all of the

8          presentation of that testimony is known.  For all

9          testimonial portions of the proceedings, there is a

10         complete record.  This is unlike *Perry* where there

11         was significant portions of testimonial portions of

12         the trial that was missing.  Again, in this case,

13         there was no missing testimonial evidence.

14             Now, in light of the court's prior discussion

15         related to the statement at issue, i.e. beat this

16         case, the conclusion -- the court concludes that the

17         why question to the allowance of the statement is not

18         one of the type of question that would lead to a

19         showing of prejudice.  To summarize, the court

20         concludes that, number one, Mr. Lee was acquitted of

21         the charges to which the statement pertained, and,

22         two, to the extent it was considered in conjunction

23         with the homicide trial, the evidence outside of the

24         statement was sufficient such as to render its

25         inclusion meaningless.

21

1          With respect to non-specified claims

2     demonstrating the colorable need, the court is

3     equally unpersuaded.  The record is replete with

4     motions where decisions were made, as well as the

5     complete testimonial record.  While the basis for

6     certain decisions may not be known, what is known is

7     what evidence went to the jury.  Other than the beat

8     the case statement, the defendant has not shown a

9     single statement that demonstrates a colorable need.

10    The court is not going to speculate that there is a

11    colorable need for the rationale related to certain

12    testimony that may and/or may not have been germane

13    to any decisions.  Thus, the court finds that the

14    arguments related to any unidentified statements are

15    equally unpersuasive as a basis for retrial.

16         As such, it shall be the order of the court that

17    counsel's post-conviction motion for relief be

18    denied.

19         Any questions, Miss Tempelis?

20              ATTORNEY TEMPELIS:  Nothing from the State.

21    Thank you.

22              THE COURT:  Miss Babcock, any questions?

23              ATTORNEY BABCOCK:  No, Judge.  I would just

24    note that I will electronically file a proposed order

25    consistent with the court's ruling this afternoon.

22

1          And I'm not sure if Mr. Lee can hear me or not,
2     but if he could just be made aware that I will
3     schedule a phone conference with him in short order
4     to address our next steps.
5          THE COURT:  Okay.  Mr. Lee, are you able to
6     hear that, sir?
7          THE DEFENDANT:  Yeah.  That's fine.
8          THE COURT:  Okay.  And then, Attorney
9     Babcock, what I will do is I will take care of
10    signing that order.  And, Miss Tempelis, do you want
11    to see that beforehand?
12         ATTORNEY TEMPELIS:  She can send it to me
13    along with the court if she would like, that would be
14    fine.
15         THE COURT:  You're okay with that?  And
16    then what I would probably do is, as long as I don't
17    hear an objection by end of business tomorrow, I'll
18    sign it tomorrow.
19         ATTORNEY TEMPELIS:  Sure.
20         THE COURT:  Okay.  You're okay with that,
21    Attorney Babcock?
22         ATTORNEY BABCOCK:  Yes.  Thank you, Judge.
23         THE COURT:  All right.  Thank you all.  We
24    are adjourned.
25              (Proceedings concluded.)

23

```
 1

 2

 3

 4                          C E R T I F I C A T E

 5

 6    STATE OF WISCONSIN      )
                              ) ss.:
 7    COUNTY OF OUTAGAMIE     )

 8

 9

10           I, JOAN BIESE, RMR/CRR, do hereby certify that I
      am the official court reporter for Branch IV of the
11    Circuit Court of Outagamie County;

12           That as such court reporter, I made full and
      correct stenographic notes of the foregoing proceedings;
13
             That the same was later reduced to typewritten
14    form;

15           And that the foregoing proceedings is a full and
      correct transcript of my stenographic notes so taken.
16

17           Dated this 6th day of September, 2018.

18

19
                              Electronically signed by
20                            Joan Biese, RPR/RMR/CRR

21                            _____

22

23

24

25
```

24