UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

CHONG LENG LEE,

    Petitioner,

vs.

Case No. 22-CV-620

RANDALL HEPP,

    Respondent.

---

## PETITIONER'S BRIEF IN SUPPORT

---

Chong Leng Lee (hereinafter Lee), pro se, makes this brief in support of his petition for Habeas relief pursuant to 28 U.S.C. § 2254. Lee states that any statements made in this brief are true and correct to the best of his knowledge and under the penalty of perjury.

### SUMMARY OF FACTS

Chong Lee is currently incarcerated at Waupun Correctional Institution, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Lee was convicted in Outagamie County Circuit Court of first-degree intentional homicide with use of a dangerous weapon, felon in possession of a firearm, and two counts of intimidating a witness as a party to a crime. He was sentenced to life in prison.

Lee's § 2254 petition asserts six grounds for relief. Dkt. No. 1. On June 8, 2022, Magistrate Judge William E. Duffin determined that the petition contained both exhausted and unexhausted claims and directed Lee to either file an amended petition that did not include any unexhausted claims or a motion for stay and abeyance. Dkt. No. 6. Lee subsequently filed a motion to stay on July 7, 2022. The action was reassigned to this Court on August 1, 2022. On September 26, 2022, this Court denied the motion to stay and dismissed the three unexhausted claims, then ordered the respondent to file an answer to the exhausted claims within sixty days. The respondent has done that on November 11, 2022, and now Lee has been given forty five days to

1

file a brief in support and he has chosen to do so.

## ARGUMENTS

### I. GROUND ONE CLAIM

**A. Lee is entitled to relief on this claim because the State violated his right contrary to and their decision was an unreasonable application of federal law when they chose not to disclose the interview recordings, drawings, and other material involved with the interviews of the three witnesses of Watou Lee, Mikey Thao, and Ryan Thao.**

In federal habeas corpus proceedings, we accept as true the factual findings of state courts unless they are rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Hall v. Zenk*, 692 F.3d 793, 805 (7th Cir. 2012).

In *Brady*, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87, 83 S.Ct. 1194. The prosecutor has a duty to disclose this evidence although there has been no formal request by the accused. *Strickler v. Greene*, 527 U.S. 263, 280, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). Evidence is favorable to an accused, when, "if disclosed and used effectively, it may make the difference between conviction and acquittal." *United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

The Respondent's answer to Lee's habeas petition is to piggyback off the State's argument in using their arguments. Now, the State conceded to the Appleton Police suppressing evidence, but argued that Lee had not met the other two prongs of *Brady*. **Dkt. No. 11-1, at ¶22.** The State's argument is that Lee never made any arguments that show the destroyed evidence was favorable to his defense or, that if, it was to be used at trial it would be material to his guilt or innocence. *Id.* The truth of the argument lies in whether the State wanted to see the materiality of the evidence that was destroyed. In this case the argument is a simple matter.

Lee's argument was not that because the three witnesses had not named Lee as the shooter this automatically dismissed him as the shooter. But, rather it was how these witnesses gave descriptions of what the shooter wore, his characteristics, direction of travel, height, weight, and the drawings they did for these officers that it became *Brady* material and would be material to a defendant at trial to prove his guilt or innocence. The State's Court of Appeals remarks of "We also reject Chong's claim that the December 2013 interviews were exculpatory merely because none of the three witnesses specifically identified him as the shooter. It is undisputed that two of those witnesses—Watou and Ryan—did not know Chong in December 2013. Thus, those witnesses obviously could not have identified Chong as the shooter by name at the time of their initial interviews, and they were not presented with any photographs or an in-person lineup that would have allowed them to identify Chong by appearance," is the center

2

core made for *Brady* type cases and made this argument stronger. Lee argued at his pre-trial hearing and officers testified that they could not recall most of what these witnesses told them. *See Dkt 26-12, pg 50-52*. The only reason this evidence of these witness identifying the shooter was no longer retained was because the police had decided that anything pertaining to these three witnesses nothing would be retained. *See Dkt 26-12, pg 65.* Who knows now what exculpatory value could have come out of those witness interviews, we certainly know that the officers thought them valuable enough to destroy them in an attempt to hide it from the defense. The Appleton Police Department chose not to keep anything from the 2013 interviews that happened a day after the shooting when the witnesses had the clearest memory of the shooting. The officers testified at a hearing that they could not recollect as to what was asked or what they had done with these three witnesses on the 2013 interviews due to them being over a year and a half past. *See Dkt 26-12, pg 64, & 26-15, pg 34. See Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (suppression of material evidence favorable to the accused, when requested by defense, violates due process); *Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988) (holding that the prosecution's destruction of material exculpatory evidence is a due process violation). All they could recollect was that the witnesses described what the shooter looked like, the direction he traveled after the shooting, and things to do with as to why they chose to destroy the evidence. Now it is uncontested that Lee was inside the bar and on camera. One of the witnesses, Mikey Thao knew Chong and had seen the shooter face to face. The Wisconsin Court of Appeals down played the witnesses version of account as to what they saw by stating, "Instead, the record shows that Watou, Mikey, and Ryan merely provided general descriptions of the shooter's clothing, appearance, and direction of travel." **Dkt. 11-1 at ¶25.** The record actually showed the exculpatory nature of the evidence and importance of it and why it was so crucial to Lee's defense that the State chose to destroy it. The Wisconsin Court of Appeals made the excuse that because Lee was inside Luna and was seen on camera the importance of Mikey Thao unable to identify Chong as the shooter because he had thought Chong was still in prison would not hold any exculpatory value. In fact this theory of the Wisconsin Court of Appeals is really incorrect and contradicts case laws and laws set by the Supreme Court of the United States. Mikey in the first and second interviews had told investigators that he knows Chong and had grown up with Chong, had not seen Chong that night but had thought Chong was still in prison. *See Dkt. 26-12, pg 38, & 26-14, pg 79.* Mikey had also told investigators he had seen the shooter as he was only standing mere inches away when the gun went off and was focused in on the victim as the victim was getting into a fight with the people he was just speaking with. *See id*.

This information becomes *Brady* material in two different ways. The Appellant is required to demonstrate that "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict" *Kyles v. Whitley*, 514 U.S. 419, 435, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995); *see also Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) (holding that reversal is not required where undisclosed

3

evidence was possibly useful to the defense but not likely to have changed the verdict). Additionally, the suppressed evidence "must be evaluated in the context of the entire record." *United States v. Agurs*, 427 U.S. 97, 112, 96 S.Ct. 2392, 49 L.Ed.2d 342.

First, Mikey had seen the individuals that had been in the altercation with the victim and then, he had seen the flash from the gun come from the direction of the altercation and the shooter. Yet he is unable to identify this shooter as Lee, as he does know who Lee is. The controversy of the matter is still all the same. Mikey can make an identification of who this shooter is and he does not name Lee as the shooter. A jury who can hear this at trial may be persuaded to swing an innocent verdict as Mikey had no motive to lie as the State's witnesses did. The Court of Appeals next argues that because the trial court did not stop Lee from calling these witnesses, Lee is estopped from arguing this point. The Court of Appeals view of the trial court's ruling is in contradiction to law and the United States Constitution. The trial court's specific ruling was, "As such, and in light of the foregoing, the court concludes that action is warranted. While dismissal is an option, the court finds it unreasonable in light of the facts and circumstances associated with this case. That said, the alternative remedy of suppression is appropriate. As such, **the court** (sic) shall be prohibited from calling Ryan Thao, Mikey Thao, and Watou Lee. That said, should the police or, rather, should the defense inquire into the police conduct of the destruction of the tapes, it may present cause to have the issue revisited." *See Dkt 26-16; pg 13.* (emphasis added in bold). This remedy was a moot remedy and the Court of Appeals is misleading any other court to believe that the trial court left Lee the option to call these witnesses. The trial court prohibited **"the court"** from calling these three witness not **"the defendant,"** and then very specifically stated that if the [defense] should inquire into the police conduct into the destruction of the tapes then that would have given the State another shot to use the 2015 interviews, which, now has two witnesses who does not know who Chong Lee is making statements that were inculpatory towards him. The sole reason for Lee's suppression request was to request the suppression of the 2015 interviews because without the 2013 interviews to impeach them, there were no other comparable evidence as no one could remember what was said in the first interviews and all the 2013 evidence was destroyed. *See id.* This then leads us to the ground two claims.

## II. GROUND TWO CLAIM

### B. This is a Youngblood violation warranting dismissal

The Court of Appeals and the State can make excuses that the police in their efforts were destroying evidence to protect the identities of the witnesses because these witnesses feared for the safety of their lives from the defendant, but in the State of Wisconsin and pursuant to federal law there are laws set for such circumstances that law enforcements and prosecutors must follow and use to protect such witnesses. The evidentiary rule that controls in Wisconsin is sec. 905.10, Stats. The rule recognizes the state's privilege in respect to informers and

4

recognizes the reality that informers are an important aspect of law enforcement and that the anonymity of informers is necessary for their effective use. The framers of the rule built in part upon pre-existing Wisconsin precedent. *See Stelloh v. Liban*, 21 Wis.2d 119, 126, 124 N.W.2d 101 (1963). That case, relying upon *Wigmore*, emphasized that the privilege was not absolute and has limitations.

"[T]he court may compel disclosure 'if it appears necessary in order to avoid the risk of false testimony or in order to secure useful testimony,' *Wigmore, Evidence* ... page 768, or if the disclosure 'is useful evidence to vindicate the innocence of the accused or lessen the risk of false testimony or is essential to the proper disposition of the case.' *Wilson v. United States*, (1932), 59 Fed. (2d) 390, 392." Although sec. 905.10(3)(b), Stats., is a Wisconsin rule and is grounded on Wisconsin precedent, it is consistent with the reasoning of the principal United States case, *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). That case voices the position echoed in the comments of the Wisconsin Judicial Council Committee which formulated our evidentiary rules. The Committee stated:

**"The informer privilege ... may not be used in a criminal prosecution to suppress the identity of a witness when the public interest in protecting the flow of information is outweighed by the individual's right to prepare his defense." 59 Wis.2d R149. (emphasis added in bold)**

*Roviaro*, however, did not set up a mechanism for determining when an accused's right to a fair trial was infringed by the prosecution's assertion of the informer privilege. It was clear to the United States Supreme Court, however, that the successful assertion of the informer's privilege in that case would deprive Roviaro of evidence material to his defense. Because sec. 905.10 implements the basic Roviaro philosophy, we allude to the facts and language of that case.

*Roviaro* was suspected of the sale and transportation of heroin. In *Roviaro*, the informer was the purchaser of the narcotics. On the night of the purchase, with the knowledge and consent of the informer, John Doe, a police officer concealed himself in the trunk of John Doe's automobile shortly before a delivery of narcotics was to be made by defendant to John Doe. The police officer overheard the conversation between Doe and the defendant, and when the vehicle stopped for the purpose of making the delivery, he was able to see the defendant pick up a package from a tree and place it in Doe's automobile. This same episode was also viewed by an officer in a tailing vehicle.

The defendant demanded the production of Doe as a witness. This disclosure was refused by the government, and the trial court upheld the government's assertion of the common law informer privilege. The defendant was found guilty by the trial court, which sat as trier of the facts. The conviction was upheld by the United States Court of Appeals, because, it concluded, the trial court had not abused its discretion in denying defendant's request.

The United States Supreme Court reversed. It stated that, whatever the reasons for the

5

recognition of the informer's privilege:

"[There was a] limitation on the applicability of the privilege [that] arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity ... is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations the trial court may require disclosure and, if the Government withholds the information, dismiss the action." (Emphasis supplied.) P. 60, 77 S.Ct. at p. 627. The Court nevertheless concluded that no fixed rule was justifiable.

"The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." P. 62, 77 S.Ct. at p. 628.

Using this methodology, the Court proceeded to the consideration of the case at hand and concluded that the circumstances of the case demonstrated that:

"[The informer's] possible testimony was highly relevant and might have been helpful to the defense.... His testimony might have disclosed an entrapment. He might have thrown doubt upon petitioner's identity or on the identity of the package. He was the only witness who might have testified to petitioner's possible lack of knowledge of the contents of the package that he 'transported' from the tree to John Doe's car. The desirability of calling John Doe as a witness, or at least interviewing him in preparation for trial, was a matter for the accused rather than the Government to decide.

"Finally, the Government's use against petitioner of his conversation with John Doe while riding in Doe's car particularly emphasizes the unfairness of the nondisclosure in this case. The only person, other than petitioner himself, who could controvert, explain or amplify Bryson's report of this important conversation was John Doe. Contradiction or amplification might have borne upon petitioner's knowledge of the contents of the package or might have tended to show an entrapment.

"This is a case where the Government's informer was the sole participant, other than the accused, in the transaction charged. The informer was the only witness in a position to amplify or contradict the testimony of government witnesses." Pp. 63-64, 77 S.Ct. at p. 629.

The Court concluded that failure to require disclosure in the case was prejudicial error and reversed the conviction.

In this case, Lee's arguments does not differ from *Roviaro's*. All three of these witness saw the shooter, and could describe in detail what the shooter wore, direction of travel, height, weight, and his other characteristics. This could be down played by the State courts, but in front of a

6

trier of fact, these informers, who were the only witnesses in a position to amplify or contradict the State's witnesses, could have swayed a different verdict. Plus they were not suppressed correctly, following correct law. Instead, you have Officers who have been dealing with confidential informants and witness, who have been on the Police force for 20 to 30 years giving excuses that in order to protect the witnesses identities they had no other options but, to destroy all the evidence pertaining to these three witnesses. *See Dkt 26-14, pg 63*. An officer even testified to it that he personally sent emails addressing it to the District Attorney herself and all of the officers testified to it, that they did not destroy these evidence or the identities of these witnesses until 7-8 months after Lee was charged with the homicide. *See Dkt 26-12, pgs 32-33*. By this time Lee had put in multiple motions to compel to the court for discovery due to inconsistencies with missing discoveries and the District Attorney not willing to provide names of witnesses. The prosecution nor the police never sought an *in camera* inspection and have these witnesses suppressed by the court like every other informant before them.

What did happen was the police told Paul (who was Chong's brother and the suspect at the time) they had multiple witnesses who had identified him as the shooter, but all he had to do was say, "it was his brother [Chong] and the they will get rid of all that evidence and say it was Chong." *See Dkt 26-3 pg 9*. The defense would have never known about these witnesses and would have been left clueless about the 2013 interviews if the police had not gotten cold feet and had seen that they had inadvertently released the names and previous dates of when they had done these 2013 interviews with the witnesses on a whiteboard in a background of a picture. That had them going back in 2015 to re-interview these witnesses, but by this time the Officers interviewing them were using Lee's name so much as the shooter that these witnesses were identifying Lee as the shooter themselves although they had never laid eyes on him nor could they have positively identify him as the shooter and that was the reason why Lee asked for the suppression of the 2015 interviews because they became inculpatory evidence for the State when most of those statements made by them were procured by the State's investigative team as a false pretense.

In short, Lee will state that police cannot decide to destroy favorable evidence to a defendant or potentially favorable evidence then when the defense finds out about it goes and substitute it. *See State v. Jordan*, 73 Ohio App.3d 524 (stating, "Since the destruction by police in this case was deliberate and their actions in substituting evidence purposeful vis-a-vis obtaining indictments, we might wonder about the initial condition of the drugs and the bag in which they were allegedly found. We need not reach the question, however, of the exculpatory nature of the destroyed bag because we hold that, by destroying and then substituting other evidence and securing indictments based upon it, the police actions in themselves constituted a violation of Jordan's right to due process under the Due Process Clause of the Fourteenth Amendment. U.S.C.A. Const.Amend. 14.") In Lee's case, (1) the Officer's went and produced new recordings knowing full well the old recordings were no longer available to impeach these new recordings;

7

(2) knowing full well they themselves do not remember most or all the details of the 2013 interviews due to it being almost two years later; (3) knowing the witness's recollection of the shooting was not as clear as the day after the shooting and that the witness's had a hard time themselves remembering what they had said in the first interview; and (4) went to these witnesses with the intent to obstruct in the defense preparing for trial. **See Dkt 26-12, pg 60-61.** It is not made more clearer when an officer of the law tells a witness, "when the defendant's investigator comes and talks to you you do not talk to them," this is deliberately interfering in the investigation for personal gains. **See id.** This was addressed in Court, but the Wisconsin Court of Appeals deliberate ignorance to the obstruction of Justice knows no bounds. They cited to their excuses as records they think as substantial amount of evidence that weighed heavily to find Lee's guilt, but most of those were false and misleading and Lee shall correct them now.

For the first issue, which was, that the above three interviews and all materials that came out of it, the State Court of Appeals deemed them not to be materialistic or potentially material exculpatory evidence enough for it to have an effect on a trier of fact. If this statement is to be believed by this Court then the whole State of Wisconsin's cases that has ever dealt with eye witnesses who can shed light to a suspect's clothing, weight, height, direction of travel, and even drew what they saw and such to the police should be overturned. This statement contradicts law in itself. When has the LAW in Wisconsin become so blind and obtuse as to admit when they are wrong or that their law enforcements may have bad officers on the force.

The Seventh Circuit Stated, "Our interpretation of *Trombetta* and *Youngblood* differs from that of Wisconsin courts. According to Wisconsin courts, these cases stand for the proposition that a defendant's due process rights are violated if the police (1) failed to preserve "apparently" exculpatory evidence, leaving the defendant with no ability to obtain comparable evidence by any other reasonable means (with this portion of rule deriving from *Trombetta* ); or (2) failed to preserve "potentially" exculpatory evidence in bad faith (with this portion of the rule deriving from *Youngblood* ). See, e.g., *State v. Greenwold*, 189 Wis.2d 59, 525 N.W.2d 294, 296-98 (Wis.Ct.App.1994). However, according to our precedent, *Trombetta* and *Youngblood* do not create two separate rules, with the former governing "apparently" exculpatory evidence and the latter governing "potentially" exculpatory evidence. We instead read both cases to stand for the same proposition: the destruction of potentially exculpatory evidence violates the defendant's right to due process if (1) the State acted in bad faith; (2) the exculpatory value of the evidence was apparent before it was destroyed; and (3) the evidence was of such a nature that the petitioner was unable to obtain comparable evidence by other reasonably available means. See, e.g., *Henry v. Page*, 223 F.3d 477, 481 (7th Cir.2000) (explaining that *Youngblood* used the word "potentially" to illustrate that the defendant failed the second prong—which requires the evidence's exculpatory value to be apparent—of *Trombetta's* test). Citing *McCarthy v. Pollard*, 656 F.3d 478, 486.

Unlike *McCarthy*, Lee has proved that it was exculpatory because the trial Court ruled and the

8

State conceded to this evidence being exculpatory material and it was proved pre-trial that police did destroy this evidence with bad-faith and that the evidence has met the other prongs of *Trombetta/Youngblood*. **See Dkt 26-16, pgs 9-13**. For obtaining other comparable evidence, we are starting to be repetitive because as Lee has previously stated, if the Officers testified at the hearing that they could not remember as to what was said in the 2013 interviews, or what was showed to the witnesses and nothing was retained and the witnesses memories were running parallel to these Officers, then there are no comparable evidence and without the 2013 interviews and recordings to use as impeachment evidence against the new 2015 interviews, those new interviews became *Jordan* material. Made specifically by these Officers with the intention to have the upper hand to secure an indictment. This was further shown through the testimony given by Sgt. Rabas at **Dkt. 26-12, pg. 60-61**. Thus, this violates due process. In this case the bad-faith done by the prosecution has already violated Lee's due process.

In *Youngblood*, the United States Supreme Court ruled that there need a showing of bad-faith to prove a due process violation. In Lee's case, everyone has agreed a due process violation occurred, but to what degree did it get to warrant a remedy of dismissal. Although *Youngblood* did not directly address the remedy for a violation, as it found no violation, the remedy contemplated by the Supreme Court was dismissal. *Youngblood*, 488 U.S. at 52 (reviewing the decision of the Arizona Court of Appeals in *State v. Youngblood*, 153 Ariz. 50, 734 P.2d 592, 596 (Ariz. Ct. App. 1986) concluding that dismissal is required). Here, the Trial Judge abused his discretion and denied Lee a proper remedy of dismissal by giving a remedy the was meaningless only to have face value for the public eye. This is seen from the record of the transcripts and in the words of the Judge when he stated, "That said, should the police or, rather, should the defense inquire into the police conduct of the destruction of the tapes, it may present cause to have the issue revisited." *See Dkt 26-16, pg 13*. The police destroying evidence in a criminal matter becomes a defendant's defense. How do I present it to the jury that these officers were also destroying other recordings and making threats to force witnesses to make statements against me and not present this evidence when the Judge himself used these inculpatory 2015 statements against me? ***See Witness Peter Moua's testimony to corroborate he was threatened by Two Appleton Police Officers to make a statement against Lee. Also See Sgt. Meyer testimony where he testified he either lost or destroyed the recordings done of Peter and others in Milwaukee. Dkt. 26-14, pg. 44, and Dkt 26-19, pgs.62-65***. In all, Lee's intention was to bring the constant destruction of evidence up to the jury's attention to attack the credibility of the officers, but Lee would not be able to have any impeachment evidence nor would he be able to confront the Officers on the stand on the subject because of the bias remedy. Misconduct or "Bad-faith" done at this degree can only mandate one remedy and that is dismissal.

The Wisconsin Courts have argued that these Officers did this to protect these witnesses and that there were overwhelming evidence to support guilt, but Lee has proved to this Court that the Wisconsin Courts are breaking their own laws and not following the witness or evidence

9

Case 2:22-cv-00620-WCG   Filed 01/24/23   Page 9 of 11   Document 31

procedures to protect both. It would also be believable if it were true that these witnesses knew Mr. Lee to be afraid of him, but through cross examinations of Officers at pre-trial hearings who had first hand knowledge of Lee and his family and of these three witnesses. Testimony came to light that Lee never had a violent history nor any gang connection with his brothers and that Lee was only a victim of a shooting. *See Dkt 26-15, pgs.31-41.* Now the Court, prosecutor, and police show criminals in a justice system that they are breaking the rules they set and are just as dirty as those they serve to punish, so what kind of example are they setting? We learn and do what we see who is in power, so if the 'JUSTICE' system holds power, who is going to lead by example?

### III. GROUND THREE CLAIM

### C. Every appeal warrants a full transcript that can shed full and meaningful light to a trial where controversial of an error may have taken place

The Respondent would like this Court to believe that *Perry* was made specifically to argue State law, but they could not be more wrong. In *Perry*, that Court broke it's fundamentals to its core. *Perry* clearly has federal Constitutional arguments imbedded into it so much so that most of it was built on it. *See Perry, 136 Wis.2d at 105.*

The usual remedy for lack or lost of transcripts is a new trial. *Id at* 99. In this case, that is what should have been given to Lee, a new trial. The Court is at fault here and not Lee. Instead, Lee has to pay the price for the crucial mistake the Court made. The Court at a **Machner** hearing along with Lee's trial counsel's, stated they could not recreate nor could they recollect what had happened during a certain period when the Jury had gone back to deliberate and the Judge had sent inadmissible evidence and had ex parte communications with the jury. At this point the Court reporter did not record any communications or transactions going on between the court and jury. What we all know was that the jury sent a question to the Judge and he sent inadmissible evidence back to the jury for deliberation. The Trial Court then can no longer recollect what the day or hours were like during that missing period other than what his normal procedure is when jurors contact him during deliberations.

The State Court of Appeals should have turned Lee's case over and gave him a new trial due to the fact that the missing portion of the trial was an essential and critical stage of trial. This Violates the Sixth Amendment of the United States Constitution. "An accused has the [constitutional] right to be represented by counsel at all critical stages of the trial." *Anderson,* 291 Wis.2d 673, ¶ 67, 717 N.W.2d 74. "A critical stage is any point in the criminal proceedings when a person may need counsel's assistance to assure a meaningful defense." *Id.*, ¶ 68. In addition, an accused has a "constitutional right to be present [, which] derives from the right to be heard and confront witnesses and from the accused's right to due process." *Anderson,* 291 Wis.2d 673, ¶ 38, 717 N.W.2d 74. This amounts to a "guaranteed ... right to be present at any stage of the criminal proceeding that is critical to its outcome if [the accused's] presence would

contribute to the fairness of the procedure." *Kentucky v. Stincer*, 482 U.S. 730, 745, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987). Both the right to be present and the right to have counsel present are guaranteed by *article I, section 7 of the Wisconsin Constitution* and the *Sixth* and *Fourteenth Amendments to the United States Constitution*. *Anderson*, 291 Wis.2d 673, ¶ 38, 717 N.W.2d 74. Lee's attorney had a right to be present at that time when the Judge had contact with the Jury to object and Lee has a right to a full transcript or an adequate one for an appellate attorney to have a fighting chance to give Lee a meaningful appeal. *See Hardy v. U.S., 375 U.S. 277, 288, 84 S.Ct. 424.* In Lee's case they did give their best shot at recreating the record but could not and in the end, come to that conclusion. Instead the trial court made a decision that went against law and contradicted all their case laws in Wisconsin such as *Perry and Deleon* and the United States Constitution. I was not put on stand because I certainly would have testified that I do not recall being called back at anytime during jury deliberations about the jury asking any questions, therefore I never waived my right to be present at any stage of the criminal proceeding. *Stincer, Id.* I was only brought back when they had a guilty verdict. I did not know of this evidence going to the jurors during deliberations until my appeal. A full two, almost three years later. The Courts should rather take *State v. DeFilippo*, 287 Wis.2d 193, 704 N.W.2d 410, into consideration and find Lee's facts similar to that case. If the trial and appellate courts had followed these procedures they had set forth they would have had to follow their own laws and gave Lee a new trial. The Court has violated Lee's Constitutional right when he was not present at a critical stage and that violated his sixth amendment. *Id. at 196-97.*

## CONCLUSION

Lee states that his Habeas should be granted and this Court should rule in favor of a dismissal due to the nature of the intentional violation of Lee's due process rights. Lee believes the level of degree of the destruction of the evidence is high enough to warrant a dismissal and a dismissal will deter any and all actions of police misconduct of that type of behavior in the future. Lee still believes in a fair Judicial system outside of the controlled political setting. In the alternative Lee should receive a new trial for all other violations of his constitutional rights.

Dated this 19th day of January, 2023.

Submitted By:

Chong Leng Lee #439266,

P.O. Box 351

Waupun, WI 53963

11